IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE COMPANY | § § § § § | |
| Plaintiff, | | |
| vs. | § § § | CIVIL ACTION NO. 4:11-cv-1846 |
| KB LONE STAR, INC. F/K/A LONE STAR AND L.P. F/K/A KAUFMAN & BROAD LONE STAR, L.P. | § § § § § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(7)

Defendants KB HOME Lone Star Inc., KB HOME Lone Star L.P., KB Lone Star, Inc., Lone Star, L.P., and Kaufman & Broad Lone Star, L.P. (collectively, "KB") file this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) (failure to join a party under Rule 19).

### I.   INTRODUCTION

Plaintiff Indian Harbor Insurance Company brought this declaratory judgment action ("DJA") against the KB defendants seeking a judicial determination of its rights, status and obligations owed to KB under a policy issued to its direct named insured, Innovative Concrete. KB moves to dismiss this matter based on Federal Rules of Civil Procedure 12(b)(7) (failure to join a party under Rule 19) and Indian Harbor's improper forum shopping.

### II.   MEET AND CONFER AVERMENT

Pursuant to Civil Rules LR7.1(D), counsel for KB met and conferred with counsel for Indian Harbor, Gary Schumann, on Friday, June 3, 2011 with regard to KB's 12(b)(7) motion. Counsel could not agree about the disposition of the motion and therefore KB files the instant motion.

1

### III.   FACTUAL BACKGROUND

Indian Harbor issued a policy of liability insurance to Innovative Concrete Construction with a single-year policy term of October 18, 2000 to October 18, 2001 (the "Policy"). Innovative performed work as a concrete subcontractor for KB at various times and on various projects spanning multiple years.

KB was sued in two lawsuits for construction defects relating to a project known as Mirasol Homes project, located in San Antonio, Texas. The two lawsuits were consolidated into a single action and styled: 1) *San Antonio Housing Authority v. Magi Realty, et al.,* Bexar County District Court Case No. 2007-CI-05258; and 2) *Arias, et al. v. KB Home, et al.*, Bexar Count District Court Case No. 2009-CI-08711 (collectively, "Lawsuits").

In the Lawsuits, the plaintiffs alleged, among other things, that KB and its subcontractors, including Indian Harbor's direct insured, Innovative Concrete, negligently built the homes and delivered the homes in a substandard condition. Plaintiffs specifically allege that Innovative's scope of work was performed negligently resulting in damages.

The Policy issued by Indian Harbor to Innovative Concrete contains an ISO form 2026 1185 (completed operations) additional insured endorsement naming all organizations "where required by contract." Indian Harbor and KB entered into multiple contracts, including from 2000-2002, with Innovative which required Innovative to name KB as an additional insured on all applicable policies. KB tendered its defense with regard to the Lawsuits to Indian Harbor on or around August 28, 2007.

Indian Harbor previously confirmed its participation in KB's defense and offered to make a good-faith payment. However, instead of payment, on April 23, 2010, KB received a letter from coverage counsel stating several defenses to coverage. Since that time, the parties have exchanged numerous letters and engaged in extensive communications with coverage counsel to defeat Indian Harbor's multiple defenses to coverage.

Since Indian Harbor has changed its position, seeks to withdraw coverage, and now seeks a declaration that it does not owe KB a defense, the nine other additional insuring carriers (for 11 subcontractor policies) included in KB's defense allocation should be joined to the action (the "non-joined carriers") since Indian Harbor will seek contribution from these carriers should they lose their coverage position. Various carriers have headquarters in Connecticut which would therefore defeat diversity.

Indian Harbor filed this DJA in the Southern District of Texas despite the fact that all events giving rise to this and the underlying Lawsuits occurred in San Antonio and KB's office is located in San Antonio. We believe Indian Harbor is simply "forum shopping" which is not proper for purposes of determining venue. The underlying Lawsuits are venued in the District Courts of the State of Texas, Bexar County. Since the damages at issue arise out of these underlying actions; the cause of action arose in Bexar County; and coverage is largely dependant upon the allegations in these underlying cases, it is most appropriate for the DJA to be heard by a Bexar County court – not the Southern District Court.

Further, a separate DJA (*Essex Insurance Company v. KB Home, Inc.*, KB Home Lone Star, Cause No.2010-CI-13281, 408th Judicial District, Bexar County, Texas), filed on August 13, 2010, by another carrier, Essex Insurance, also involving a coverage dispute over the same damages – the defense fees and costs sought by KB – is currently venued in State District Court for Bexar County. Since there is an existing action with similar subject matter, and the same damages at issue, it is likely that there will be contribution issues between the plaintiffs' insurance carriers in the separate federal and state actions. Therefore the Bexar County District Court provides a readily available – and more appropriate – forum for Indian Harbor's dispute.

### IV.   ISSUES PRESENTED

Indian Harbor alleges that there are dozens of other insurers for the subcontractors that will be relevant to this claim (hereinafter "non-joined carriers"). Indian Harbor is required to

join parties which are "materially interested in the subject matter of the action and which are needed for just adjudication." Federal Rules of Civil Procedure, Rule 19(a) operates to (1) ensure that any judgment rendered will provide relief to the named parties, and (2) prevent repeated lawsuits on the same subject matter. Since Indian Harbor will seek contribution from various carriers should they lose their coverage position, Indian Harbor will contend that the other parties should be joined in this matter.

Various carriers have headquarters in Connecticut therefore diversity would be defeated if these carriers Indian Harbors implicitly refers to as potentially owing at least part of KB's defense are joined in this litigation. Thus, we believe this matter should be heard in the Bexar County district court and not the Southern District.

Indian Harbor's DJA should be dismissed since the damages at issue arise out of the Lawsuits filed in Bexar County; the cause of action arose in Bexar County; and coverage is completely derivative of the allegations in the Lawsuits in Bexar County.

## V. STANDARDS OF REVIEW

**A.  Rule 12(b)(7)**

When determining whether a complaint may be dismissed for failure to join an indispensable party under Rule 12(b)(7), a court's primary concern is whether or not justice can be done and court's decree made effective without presence of unjoined party. *Morrell v McFarland* (1981, ND W Va) 527 F Supp 324. In order to grant a motion under Rule 12(b)(7) a court must find that under Rule 19(e) a defendant should be joined as party and that under the equity and good conscience test of Rule 19(b) the action cannot proceed if defendant is not so joined. *Heinrich v Goodyear Tire & Rubber Co*. (1982, DC Md) 532 F Supp 1348, 33 FR Serv 2d 1117.

Generally, a FRCP 12(b)(7) motion should be granted when there is an absent party without whom complete relief will not be possible or whose interest in the controversy is such

that to proceed without this party might prejudice it or parties already present in case. *Rojas v Loewen Group Int'l* (1998, DC Puerto Rico) 178 FRD 356. Dismissal for failure to join an indispensable party is granted where, if the indispensable party were joined, diversity jurisdiction would be defeated, and thus subject matter jurisdiction can no longer be asserted. *H & H International Corp. v J. Pellechia Trucking, Inc. (1988, SD NY) 119 FRD 352*.

### VI.   ARGUMENT

A.   **The Court Should Dismiss Indian Harbor's Claims in Their Entirety Pursuant to FRCP 12(b)(7) and based on Plaintiff's Improper Forum Shopping.**

   1.   **The DJA Should be Dismissed Pursuant to FRCP 12(b)(7).**

Dismissal for failure to join indispensable party is granted where, if an indispensable party was joined, diversity jurisdiction would be defeated, and thus subject matter jurisdiction can no longer be asserted. *H & H International Corp. v J. Pellechia Trucking, Inc. (1988, SD NY) 119 FRD 352*. Indian Harbor is required to join parties to the DJA which are "materially interested in the subject matter of the action and which are needed for just adjudication." Federal Rules of Civil Procedure, Rule 19(a) operates to (1) ensure that any judgment rendered will provide relief to the named parties, and (2) prevent repeated lawsuits on the same subject matter. Rule 19(a) sets forth the test to determine whether a party is "indispensable" (i.e., should have been named by plaintiff), stating that a party *must* be joined if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The purpose of Rule 19 is to ensure that, whenever feasible, persons materially interested in the subject of action should be joined as parties so that they may be heard and complete disposition made, and that when such joinder cannot be accomplished the case should be

examined pragmatically and choice made between alternatives of proceeding with action in absence of particular interested persons, and dismissing action. *Campbell v Triangle Corp.* (1972, ED Pa) 56 FRD 480, 16 FR Serv 2d 649. The three basic objectives of Rule 19 are: (1) avoidance of unnecessary multiple litigation; (2) providing complete relief to parties before court; and (3) protection of rights and interests of any absent parties. *Freeman v Marine Midland Bank-New York* (1976, ED NY) 419 F Supp 440, CCH Fed Secur L Rep P 95685.

Indian Harbor alleges that "the vast majority of the defense costs incurred by KB in its defense of the Lawsuits, were incurred defending wholly independent and separate claims and occurrences clearly segregable and distinct claims…for which there is no defense or coverage obligation." Texas law does not support the position that a carrier could owe less than a complete defense if a defense is owed; therefore Indian Harbor must be alluding to the fact that the non-joined carriers for other subcontractors to whom KB tendered its defense will be critical in the determination of this matter. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010); *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359 (5th Cir. 2008). Texas law is clear that Indian Harbor cannot simply parse or segregate the claims when it owes a duty to defend to defend only covered claims. *Id*. For Indian Harbor to argue it owes less than KB's entire defense, if one is owed, is to argue other insurers unnamed and unjoined owe KB a defense; therefore Indian Harbor implicitly acknowledges that the other carriers must be included in this action.

Since Indian Harbor seeks a declaration that it does not owe KB a defense and will seek contribution from the non-joined carriers should it lose its coverage position, Indian Harbor will ultimately require the carriers to be in this matter. The absence of the non-joined carriers will not allow the court to provide Indian Harbor with the "complete relief" it seeks which form the subject matter damages of the DJA. Moreover, the AI carriers, including the non-joined carriers, are individually *and* collectively responsible for the damages from which Indian Harbor seeks

relief. Indian Harbor has expressly mentioned these carriers as part of its facts supporting the complaint:

> KB … continues to demand a defense and indemnity under the Indian Harbor Policy and dozens of other of KB's subcontractors' insurers for the claims asserted in the [underlying] Lawsuits.

Based upon the above, Indian Harbor implicitly acknowledges that the participation of other AI carriers is necessary in order to fully allocate the respective shares and/or to determine if, in fact, there are other AI carriers which owe a defense.

Furthermore, the non-joined carriers have a clear interest in the dispute between KB and Indian Harbor, which interest is critically affected by the outcome of the DJA. If it is decided that Indian Harbor has no obligation based upon its policy language, and must not contribute any amount to KB's defense, then the non-joined carriers will be liable for Indian Harbor's "share." We believe Indian Harbor purposefully did not name the non-joined carriers for contribution (as would be expected in matters of this nature), because doing so would destroy the diversity jurisdiction held by the court it has selected to gain an advantage over KB.

Rule 19 adopts "equity and good conscience" test which rests upon application of four practical considerations: (1) assessment of prejudicial effect of judgment rendered in absence of party who cannot be joined; (2) consideration of extent to which prejudice may be minimized by limiting relief granted; (3) consideration of whether judgment rendered in party's absence will be adequate, and (4) consideration of presence of adequate forum if action is dismissed. *Doty v St. Mary Parish Land Co.* (1979, CA5 La) 598 F2d 885, 27 FR Serv 2d 978, 64 OGR 277.

Regarding the first consideration, prejudice to the joined and non-joined parties, the non-joined carriers would be prejudiced should Indian Harbor obtain judgment in its favor, since the non-joined carriers could very well be held liable for what would otherwise be Indian Harbor's "share" of KB's defense fees and costs.

If judgment was rendered that Indian Harbor owed a defense obligation to KB, then, following Indian Harbor's alternative argument that it owes less than a whole defense, additional perhaps duplicitous and/or multiple lawsuits due to diversity issues, will ensue regarding Indian Harbor's allocation theory. *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010).

As for the second consideration, whether the prejudice can be lessened by protective provisions in the judgment, the financial and procedural prejudices to Indian Harbor and KB clearly cannot be relieved by protective provisions.

The third consideration, whether a judgment in the absence of the non-joined carriers would provide an adequate remedy to the current parties, also indicates that the matter should not proceed. Again, the absence of the non-joined parties could very well constitute an "all-or-nothing" scenario for Indian Harbor, in that it has no claims for contribution from its co-carriers.

Lastly, Indian Harbor clearly has an adequate (if not more appropriate) remedy elsewhere -- in Bexar County District Court, which is where this matter actually belongs.  We believe that this matter can be dismissed "in equity and good conscience" given the lack of prejudice that Indian Harbor would suffer.  Indian Harbor would be not prejudiced by a dismissal; it would simply have to find a new forum (e.g. state court in Bexar County).

Judicial efficiency is not served by having this matter proceed without the non-joined parties. First, Indian Harbor contemplates in its own pleadings that these claims will involve contribution issues between the co-carriers. To suggest that the claims by and between Indian Harbor and the other additional insured carriers should be litigated in a separate action for each is simply not reasonable, and is wholly inefficient.  Further, it is certain that no matter the outcome of the Indian Harbor DJA, additional litigation will be necessary to have a full adjudication of all of the issues as to all of the parties. If Indian Harbor is found to have an obligation under its policy, there is little doubt that it will seek contribution from its co-carriers for the nearly $4.5

million in damages sought by KB. On the other hand, if it is found that Indian Harbor has no obligation to defend KB, then KB must pursue recovery of its defense payments from the co-carriers through separate litigation.

Judicial efficiency requires that the claims involving the same damages (defense fees and costs) owed by a group of additional insuring carriers, which damages arise out of the same underlying Lawsuits, be litigated once in a single forum in order to avoid multiplicity of lawsuits over what is in large part the same issue – additional insured coverage for KB Home.

### 2. The DJA Should be Dismissed as Indian Harbor is Improperly Forum Shopping.

Generally, forum-shopping occurs when a party attempts to obtain a perceived advantage over its adversary by choosing the most favorable venue. See, e.g., *Walker v. Packer,* 827 S.W.2d 833, 849 n.3 (Tex. 1992) (noting that forum-shopping includes trying "to obtain a trial judge more likely to provide a more favorable ruling"); BLACK'S LAW DICTIONARY 726 (9th ed. 2009) (defining forum-shopping as "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard"). Texas courts have recognized that there exist important public policy considerations against forum shopping. *Reliant Energy, Inc. v. Gonzalez*, 102 S.W.3d 868, 875 (Tex. App.--Houston [1st Dist.] 2003), aff'd, 159 S.W.3d 615 (Tex. 2005); *In re Houston Nw. Partners, Ltd.,* 98 S.W.3d 777, 780 (Tex. App.--Austin 2003, orig. proceeding [mand. dism'd]); *DB Entm't v. Windle*, 927 S.W.2d 283, 288 (Tex. App.--Fort Worth 1996, orig. proceeding [mand. dism'd]).

Indian Harbor improperly chose the United States District Court for the Southern District of Texas, Houston Division to gain a tactical advantage over its insured, KB – which is yet another act in a long line of bad-faith acts toward its insured. KB repeatedly pled for coverage from Indian Harbor over a period of nearly 3½ years. Following Indian Harbor's agreement to defend; the carrier's promise to pay; and its subsequent breach of that agreement, Indian Harbor

filed this DJA against its insured.  There is simply no other reason for Indian Harbor to choose this forum other than to prejudice KB.  There is no logical basis for this Court to hear this matter given that all claims have and continue to occur in San Antonio.

With respect to venue, the defendants named in the lawsuit were KB Home Lone Star, Inc., a signatory to the 2000 subcontract agreement with Innovative, and KB Home Lone Star, L.P. was a signatory to the 2001 subcontract agreement.  The other three entities named are entities that subsequently merged with KB Home Lone Star, Inc. or KB Home Lone Star, L.P.  The above entities are based in San Antonio for purposes of the underlying construction project.  Further all of the underlying construction, claims and litigation took place in San Antonio.  Thus, for purposes of jurisdiction within the four districts in the State of Texas, KB Home's most significant contacts are in San Antonio. Indian Harbor's selection of forum and venue apparently purport to depend upon KB's "minimum contacts" within Houston, which is situated in the United States District Court for the Southern District of Texas.

Further, this matter involves a state question, not a federal question. While under diversity jurisdiction, it is not a requirement that cases brought in federal court involve a federal question, the claims here (declaratory relief regarding obligations owed under an insurance policy) are simply limited to state issues.  The sole purpose of the federal court's personal jurisdiction over diverse parties is to protect from local prejudice. However, many scholars, judges, and practitioners challenge the assumption that the risk of local prejudice is reduced by having a dispute among diverse parties heard in federal court, and contend that **federal courts should not be burdened with what are essentially state court matters**.

Further, since Indian Harbor filed this action in the Texas federal district court (away from its states of citizenship) – it has essentially chosen to be geographically prejudiced in exchange for availing itself of a favorable decision in the Southern District, which thereby creates a substantive prejudice to KB and other potential non-joined carriers. Indian Harbor's

motives fly in the face of the purpose of diversity jurisdiction, which seeks to avoid prejudice to a non-local party. Here, by virtue of Indian Harbor's selection of forum, defendant KB is being prejudiced, albeit substantively as opposed to jurisdictionally. Thus, the purpose of the rule invoked by Indian Harbor is not served by having the case heard in federal court.

## VII. CONCLUSION

For the reasons set forth above, Defendants request that their 12(b) motion to dismiss be granted in whole or in part, and that Plaintiff's action be dismissed in whole or in part.

Respectfully submitted,

By: */s/ Erik D. Buzzard*
ERIK D. BUZZARD
*ATTORNEY-IN-CHARGE*
Texas State Bar No. 24067954
Southern District Bar No. *Pending*
PALUMBO BERGSTROM LLP
17902 Von Karman Ave., Suite 500
Irvine, CA 92614
Telephone: (877) 882-1979
Facsimile: (877) 251-1331
**ATTORNEYS FOR DEFENDANTS KB HOME Lone Star Inc., KB HOME Lone Star L.P., KB Lone Star, Inc., Lone Star, L.P., and Kaufman & Broad Lone Star, L.P.**

By: */s/ Robert Brown*
BY: /S/ ROBERT BROWN
ROBERT (BOB) BROWN
LOCAL COUNSEL
Texas State Bar No. 03164715
Southern District Bar No. 12854
DONATO, MINX, BROWN & POOL, P.C.
3200 SOUTHWEST FREEWAY, SUITE 2300
HOUSTON, TEXAS 77027
OFFICE 713-877-1112
DIRECT 713-871-1165

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2011, an electronic form of this motion and the proposed order was provided to counsel named below through the Court's electronic filing system.

Gary N. Schumann, Esq.
Camille Johnson, Esq.
Jessica Marcoux Hall, Esq.
Scott B. Herlihy, Esq.
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
*Attorneys for Plaintiff*
*Indian Harbor Insurance Company*

                                                          s/Robert D. Brown
                                                          _____
                                                          Robert Brown