**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **INDIAN HARBOR INSURANCE** | § | |
| **COMPANY** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:11-cv-1846** |
| | § | |
| **KB LONE STAR, INC. F/K/A** | § | |
| **LONE STAR L.P. F/K/A KAUFMAN** | § | |
| **& BROAD LONE STAR, L.P.,** | § | |
|     **Defendants.** | § | |

**PLAINTIFF, INDIAN HARBOR INSURANCE COMPANY'S,**
**MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................2

Index of Authorities ............................................................................................................4

I.   Introduction ...............................................................................................................6

II.  Undisputed Summary Judgment Facts....................................................................7

    A.      The Policy ..........................................................................................................7

    B.      The Underlying Lawsuit ...................................................................................8

        1.    The Arias Lawsuit ..................................................................................8

        2.    The SAHA Lawsuit .............................................................................10

III. Statement of the Issues ...........................................................................................12

IV. Argument and Authorities ......................................................................................12

    A.      Summary Judgment Standard of Review........................................................12

    B.      Duty to Defend ................................................................................................13

    C.      Duty to Indemnify............................................................................................14

    D.      The Policy does not provide defense or indemnity for KB ...................................14

        1.    There are no allegations of an "occurrence." ..................................14

        2.    There are no allegations of "property damage" occurring during the policy period ..............................................................................19

        3.    The Additional Insured Endorsement precludes coverage for KB.................20

        4.    The Expected or Intended Injury Exclusion Applies .....................22

        5.    The Policy is not a performance bond or guarantee of work and therefore the business risk exclusions apply ................................................23

            (a)  The Contractual Liability Exclusion applies ...........................25

        6.    No Duty to Indemnify .......................................................................27

V.    Conclusion ................................................................................................... 28

Certificate of Service ......................................................................................... 29

INDEX OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304, 313 (Tex. App.—Amarillo 2004, no pet.)............... 14

*Amerisure Mut. Ins. Co. v. Travelers Lloyds*, Civ. No. H-09-662, 2010 WL 1068087, * 6 (S.D.

  Tex. March 22, 2010)........................................................................................ 17, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ......................................... 11

*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ...................................................... 18

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740 (Tex. 2009)............ 12, 20

*David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*, 720 F. Supp. 2d 781, 785

  (N.D. Tex 2010) *aff'd*, 10-10432, 2011 WL 365279 (5th Cir. 2011) ................................. 21, 22

*DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999)................................... 18

*Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008) ................. 17

*Ebner v. Ohio Cas. Ins. Co.*, No. 04-94-00053-CV, 1995 WL 611878 at *5

  (Tex. App.—San Antonio 1995, writ denied)............................................................ 14

*Ewing Construction Co., Inc. v. Amerisure Insurance Company*;

  No. C-10-256, 2011 WL 1627047 (S.D. Tex. April 28, 2011).......................................... 24, 25

*Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997)................................. 25

*Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).......................... 12

*Freedman v. Cigna Ins. Co.*, 976 S.W.2d 776, 778

  (Tex. App.—Houston [1st Dist.] 1998, no pet.) ................................................... 14, 16

*Gilbert Texas Construction, L.P. v. Underwriters at Lloyds London*,

  327 S.W.3d 118, (Tex. 2010)......................................................................... 24, 25

*Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) ................................. 18

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)........ 11

*Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001)........... 12

*Huffhines v. State Farm Lloyds*, 167 S.W.3d 496 , 499

    (Tex. App.—Houston [14th Dist.] 2005, no pet.)..................................................... 14

*KB Home v. Employers Mutual Cas. Co.*, No. 2-06-383-CV, 2008 WL 281530 at *8

    (Tex. App.—Fort Worth Jan. 31, 2008, no pet.)................................................. 14, 16

*King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).................................................... 11

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex. 2007)....................... 13, 14

*Mary Kay Holding Corp. v. Fed. Ins. Co.,* 309 Fed App'x 843, 848 (5th Cir. 2009) ................. 17

*Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000)................................................... 11

*Nat'l Fire Ins. Co. v. Entertainment Specialty Ins. Svcs.*,

    485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007) ...................................................... 11

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*,

    939 S.W.2d 139, 141 (Tex. 1997)........................................................................ 11

*Pine Oak Builders*, 279 S.W.3d at 656)........................................................................................ 12

*Scott v. Harris*, 550 U.S. 372, 380 (2007) .................................................................................. 11

*T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,*

    784 S.W.2d 692, 694-95 (Tex. App.-Houston [14th Dist.] 1989, writ denied) ...................... 21

*Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 820 (Tex. 1997) ........................ 13, 14, 15

*Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) ................................ 25

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008)............................ 17, 22, 23

**Rules**

FED. R. CIV. P. 56(c) ............................................................................................................ 10, 12

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **INDIAN HARBOR INSURANCE** | § | |
| **COMPANY** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:11-cv-1846** |
| | § | |
| **KB LONE STAR, INC. F/K/A** | § | |
| **LONE STAR L.P. F/K/A KAUFMAN** | § | |
| **& BROAD LONE STAR, L.P.,** | § | |
|     **Defendants.** | § | |

**PLAINTIFF, INDIAN HARBOR INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF**

TO THE HONORABLE JUDGE MELINDA HARMON:

    Plaintiff, Indian Harbor Insurance Company, moves the Court for summary judgment and respectfully shows as follows:

**I.
INTRODUCTION**

    This is an insurance coverage case involving an underlying lawsuit against KB Homes (as the general contractor) and numerous other entities and subcontractors arising out of alleged design and construction defects of a government-subsidized residential housing development in San Antonio, Texas (the "Mirasol" project).

    Indian Harbor issued a commercial general liability ("CGL") insurance policy to one of the many subcontractors on the project, Innovative Concrete Construction, Inc. ("Innovative"), for a single policy year.  KB Homes ("KB") claimed additional insured status on the policy and demanded coverage for the claims against it in the underlying lawsuit.

    In this action, Indian Harbor seeks a declaration that it owes no duty to defend or indemnify KB for the claims against it in the underlying lawsuit.  Indian Harbor is entitled to

summary judgment on its declaratory claims of no coverage because there are no allegations of property damage caused by an occurrence that occurred during the policy period; further, if there were coverage, it is excluded by the Expected or Intended Injury exclusion and the Contractual Liability exclusion as a matter of law. Moreover, KB is not entitled to coverage as an additional insured because there are no allegations of liability arising out of Innovative's work, and therefore the additional insured endorsement is not triggered.

In the end, KB seeks to turn Innovative's commercial general liability policy into a performance bond guaranteeing KB's work. The underlying lawsuit is based solely on defects and deficiencies in the Mirasol project, which are the result of KB's failure to perform its contractual obligations. A commercial general liability policy is designed to provide coverage for liability arising from property damage caused by an accident. The CGL policy is not designed for, and does not cover, KB's construction deficiencies and subsequent contractual liability. Thus, KB's alleged liability is not covered by the commercial general insurance policy provided by Indian Harbor as a matter of law, making summary judgment appropriate.

## II.
## UNDISPUTED SUMMARY JUDGMENT FACTS

In support of this motion, Indian Harbor relies on an appendix, which is filed simultaneously with this motion. Citations herein to "IHIC App. ____" are to that appendix, which is incorporated herein by reference as though set out in full.

### A.    The Policy

Innovative Concrete Construction, Inc. was the Named Insured under a commercial general liability insurance policy number AIL022000044 issued by Indian Harbor (the "Policy"). (A true and correct copy of this policy is attached to the Declaration of Gary Schumann as Exhibit 1, IHIC App. 1-40.) The Policy was in effect for a single policy year from October 18,

2000 to October 18, 2001. (IHIC App. 2). Pursuant to KB's subcontract with Innovative, KB claimed additional insured status under a Blanket Additional Insured endorsement to Innovative's policy. (IHIC App. 19). KB subsequently sought defense and indemnity as an additional insured on the Policy.

**B.      The Underlying Lawsuit**

KB was the general contractor on the Mirasol project. KB was subsequently sued in two separate lawsuits arising out of the alleged design and construction defects in the Mirasol project. Although both lawsuits were eventually consolidated, the allegations in each lawsuit are discussed separately below.

**1.   The Arias Lawsuit**

The first lawsuit filed against KB was styled and numbered Cause No. 2009-CI-08711; *Jesse Arias and Mary Arias; Thomas Arispe, Jr. and Luis Cintron and Eloisa Cintron, et al v. KB Home; KB Home Lone Star, Inc. L.P. f/k/a Kaufman & Broad Lone Star, L.P.; and MAGI Realty, Inc. d/b/a Mirasol Joint Venture Team;* In the 408th Judicial District of Bexar County, Texas ("the *Arias* Suit"). (IHIC App. 41-64).

In their Eighth Amended Petition, Jesse Arias, et al. (the "Arias plaintiffs") alleged KB entered into a joint venture and subsequent construction contracts for 308 affordable single family homes for low income residents in San Antonio, Texas. (IHIC App. 47). The Arias plaintiffs allege the joint venture made numerous representations regarding the quality of the homes and the terms under which they would be constructed by KB. The Arias plaintiffs alleged after the construction was complete, numerous latent defects were discovered in homes.

The Arias plaintiffs alleged that KB made express and implied warranties regarding the quality and terms of its construction and that the conduct and latent defects constituted a breach

of those warranties. They further alleged that KB breached its contract, including the requirements that KB supervise and direct the subcontract work, that KB be responsible to plaintiffs for acts and omissions of its subcontractors and agents, that KB's subcontractors assume all obligations and responsibilities assumed by KB toward the San Antonio Housing Authority and the Plaintiffs, that each subcontract require all work be performed in a good and workmanlike manner and in accordance with the contract documents, and that KB correct all deficient work. The Arias plaintiffs alleged KB failed to comply with its contractual obligations by failing to construct the homes in a good and workmanlike manner, in compliance with the contract documents, and in conformity with warranties and applicable building codes. (IHIC App. 54-55).

The Arias plaintiffs also alleged KB committed knowing and intentional violations of the DTPA. They further alleged KB never intended to build the homes pursuant to the contracts and instead "intended from the outset to materially deviate from the Agreements and to build lower quality homes than required to maximize the profit generated by the project." (IHIC App. 56). The Arias plaintiffs also alleged KB engaged in fraudulent real estate transactions, fraud and conspiracy "to defraud Plaintiffs and to fraudulently induce SAHA to enter into the Agreements knowing that they had no intention of building the homes according to the terms of the Agreements, applicable building codes and other laws." (IHIC App. 57-58 ).

The Arias plaintiffs sought damages for the reasonable cost of repair necessary to cure the construction defects, the reasonable and necessary cost for the replacement or repair of any damaged goods, reasonable and necessary engineering and consulting fees, reasonable expenses for temporary housing and alternative living for residents displaced during the repair period, reduction in current market value, reasonable and necessary attorneys' fees and mental anguish

damages. (IHIC App. 59).

### 2. The SAHA Lawsuit

The second lawsuit filed against KB (and which was subsequently consolidated into the Arias lawsuit) was styled and numbered Cause No. 2007-CI-05258; *San Antonio Housing Authority v. MAGI Realty, Inc. d/b/a Mirasol Joint Venture Team v. KB Home Lone Star, L.P. f/k/a Kaufman & Broad Lone Star, L.P.*; in the 408th Judicial District Court of Bexar County, Texas ("the *SAHA* Suit"). (IHIC App. 65-96).

In its Ninth Amended Petition, the San Antonio Housing Authority ("SAHA") alleged that KB entered into a joint venture and subsequent construction contracts to act as the contractor to build 247 affordable single family homes as part of the Mirasol subdivisions in San Antonio, Texas. (IHIC App. 71). SAHA alleged KB made numerous representations regarding the quality of the homes and the terms under which they would be constructed. SAHA alleged KB used a process to conceal its true intent to build defective houses that did not conform to specifications and drawings and falsely presented specifications and drawings as building standards knowing KB would not use such specifications and drawings. SAHA alleged KB intended to use noncompliant materials and methodologies and to cheapen the houses and intentionally and/or knowingly failed to select and supervise subcontractors which created latent defects and substandard quality houses. (IHIC App. 70).

SAHA alleged KB made false representations, including that it would select experienced subcontractors and supervise and inspect subcontractors' construction, procedures and methodologies. SAHA alleges KB made express and implied warranties that the homes would be built in a good and workmanlike manner, would be suitable for human habitation, and would be constructed in accordance with applicable codes and under proper supervision. (IHIC App.

71).

SAHA alleged the defendants failed to comply with their contractual and legal obligations and failed to construct the homes in a good and workmanlike manner, in compliance with the contract documents, implied and express warranties, building codes, duty to cooperate, and with care, skill, reasonable experience and faithfulness. SAHA alleged the defendants failed to properly supervise and manage the work of their subcontractors and latent construction defects were discovered. SAHA alleged KB knowingly built the homes with numerous latent defects, knowingly delivered the homes in a substandard condition, built them with shoddy construction practices and left them with numerous construction defects. (IHIC App. 71).

SAHA alleged KB breached its express and implied warranties regarding the quality of the homes and breached its contracts regarding the quality and standard of the homes and the terms under which they were to be built. SAHA also alleged the defendants' actions constitute fraud in the inducement, constructive fraud, common law fraud, legal fraud and statutory fraud by building and selling the homes with knowing disregard of the fact that the homes were built with construction defects and contrary to the contract documents and building codes, and knowing they would be sold to Plaintiff, by concealment of the latent construction defects, and by failing to disclose the construction defects after the litigation was commenced. SAHA alleged KB committed fraud by concealing the latent construction defects. (HIIC App. 84).

SAHA sought damages for the cost of repair to cure the construction defects, costs for the replacement or repair of damaged goods associated with the repair of the defects, engineering and consulting fees, reasonable expenses for temporary housing and alternative living expenses for residents during the period of repair, reduction in market value, disgorgement of monies paid by SAHA, loss of revenue to SAHA, attorney's fees, amounts expended to repair and rehabilitate

the homes in excess of $6,678,033.00, exemplary damages, court costs, deposition copy costs, and interest. SAHA alternatively seeks rescission of the contract and damages associated with the rescission. (IHIC App. 89-91).

## III.
## STATEMENT OF THE ISSUES

Indian Harbor seeks summary judgment in its favor on its declaratory claims on the following grounds:

(1) There were no allegations of an "occurrence";

(2) There were no allegations of "property damage" occurring during the policy period;

(3) The additional insured endorsement precludes coverage;

(4) The "Expected or Intended Injury" exclusion applies to preclude coverage; and

(5) The alleged damages are based in contract and are excluded.

As shown below, the policy provides neither defense nor indemnity to KB as a matter of law.

## IV.
## ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusory allegations, speculation,

improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000). The Supreme Court recognizes that facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage only if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.    Duty to Defend**

An insurer's duty to defend under Texas law is determined under the eight-corners, or "complaint-allegation" rule, which derives its name from the fact that "only two documents are ordinarily relevant to the [coverage] determination . . : the policy and the pleadings of the [underlying lawsuit]." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy."). "Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the claims levied against it potentially fall within the insurance policy's scope of coverage." *Nat'l Fire Ins. Co. v. Entertainment Specialty Ins. Svcs.*, 485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007) (citing *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). An insurer, however, may establish that any number of exclusions to coverage apply to the facts of a particular case. Once an insurer demonstrates that an exclusion applies to the loss suffered by the insured, the burden then shifts back to the insured to show that the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *See, e.g.*, *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001).

C.      **Duty to Indemnify**

While the duty to defend is based on an analysis of the petition and the policy, the duty to indemnify is determined not based on pleadings but based on the facts proved at trial.  *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740 (Tex. 2009) ("While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" (quoting *Pine Oak Builders*, 279 S.W.3d at 656)).

Even though the duty to indemnify is determined by the actual facts at trial, it is nonetheless justiciable before a determination in the underlying action when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.  *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).  The duty to indemnify may thus be determined under the eight-corners rule in this case if the same reasons that negate the duty to defend negate any possibility that Indian Harbor will have a duty to indemnify.

D.      **The Policy does not provide defense or indemnity for KB**

As will be shown below, the Policy's conditions, limitations, and exclusions foreclose coverage to KB.  As such, Indian Harbor owes no duty to defend or indemnify KB as a matter of law.

1.   **There are no allegations of an "occurrence."**

The Policy does not provide coverage to KB because the alleged defective work was not caused by an "occurrence" as defined under the Policy.  The Policy applies only to "property damage" if that "property damage" is caused by an "occurrence" that takes place in the "coverage territory."  (IHIC App. 6).  The Policy defines "occurrence" to mean "an accident,

including continuous or repeated exposure to substantially the same general harmful conditions."

(IHIC App. 17).

When examining a commercial general liability policy with a definition of "occurrence" similar to that provided in the Indian Harbor Policy, the Texas Supreme Court has ruled that an insured's intentional tort that resulted in unintended injuries was not an "accident," and thus not an "occurrence." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 820 (Tex. 1997). In *Cowan*, the insured, a photo lab clerk, made extra prints of revealing photographs of Cowan which had been submitted for developing. *Id.* at 820. The clerk showed the prints to friends and left the photos with a friend with instructions to throw them away. Instead, the friend showed them to someone else, who told Cowan. *Id.* at 820-21. The Supreme Court held that the clerk's conduct was not an "accident" because he did exactly what he intended to do when he purposely copied the photographs and showed them to friends. *Id.* at 827-28. Because it made no difference that the clerk did not expect or intend for Cowan to learn of his actions, there was no "accident" and no coverage under the policy for damages caused as a result of the clerk's conduct. *Cowan*, 945 S.W.2d at 827-28.

The Texas Supreme Court further addressed covered occurrences in *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex. 2007) wherein it stated:

> [A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional torts) or circumstances confirm that the resulting damage was the natural and expected result of the insured's action, that is, was highly probable whether the insured was negligent or not.

*Id.*

As such, allegations of false and fraudulent statements and promises, misrepresentations, and intent to deceive are not accidental in nature and do not constitute an "occurrence." *See KB*

*Home v. Employers Mutual Cas. Co.*, No. 2-06-383-CV, 2008 WL 281530 at *8 (Tex. App.—

Fort Worth Jan. 31, 2008, no pet.); *Huffhines v. State Farm Lloyds*, 167 S.W.3d 496 , 499 (Tex.

App.—Houston [14th Dist.] 2005, no pet.); *Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304, 313 (Tex.

App.—Amarillo 2004, no pet.); *Freedman v. Cigna Ins. Co.*, 976 S.W.2d 776, 778 (Tex. App.—

Houston [1st Dist.] 1998, no pet.); *Ebner v. Ohio Cas. Ins. Co.*, No. 04-94-00053-CV, 1995 WL

611878 at *5 (Tex. App.—San Antonio 1995, writ denied).

As the Court stated in *Lamar Homes*, "[t]he determination of whether an insured's faulty

workmanship was intended or accidental is dependent on the facts and circumstances of the

particular case."  *Lamar Homes,* 242 S.W.3d at 9.  Although the Court ultimately held that

allegations of defective workmanship can constitute an occurrence if the property damage

resulted from the "'unexpected, unforeseen or undesigned happening or consequence' of the

insured's negligent behavior," in this case, the allegations against KB in the Underlying Lawsuit

are the very kind of allegations of intentional conduct and injury as described by the Court in

*Cowan* and *Lamar Homes* that fail to constitute an "occurrence."

The Arias and SAHA petitions in the Underlying Lawsuit are replete with factual

allegations of intentional and fraudulent intent to deceive and conspiracy on the part of KB,

including, by way of example, the following:

- "[KB] introduced a process to conceal their true intent to build typical KB houses and not to build the contract specifications and drawings."  (IHIC App. 69).

- "[KB] falsely presented specifications and drawings as building standards for KB's construction of the houses, knowing KB would not use such specifications and drawings."  (IHIC App. 70).

- "KB intended to use materials and methodologies not compliant with the express requirements of the applicable codes, the specifications and drawings submitted to SAHA."  (IHIC App. 70).

- "KB . . . intended to cheapen the houses and intentionally and or through knowingly failing to select and supervise subcontractors created latent defects, substandard quality houses which failed to meet applicable codes, manufacturer requirements or the contract specifications and drawings . . ." (IHIC App. 70).

- "[KB] knowingly delivered the homes in a substandard condition, built them with shoddy construction practices, and left them in numerous construction defects. . ." (IHIC App. 71).

- "[KB]'s conduct was undertaken intentionally and fraudulently to conceal their shoddy workmanship and to maximize their profits." (IHIC App. 71).

- "[KB] never intended to build the homes pursuant to the terms of the Design/Build Contract or the Contractor Agreement. Instead, [KB] intended from the outset to materially deviate from the Agreements and to build lower quality homes than required to maximize the profit generated by the project." (IHIC App. 56).

- "[KB] committed fraud by concealing and failing to disclose material within Defendants knowledge where Defendants knew that the Plaintiffs were ignorant of those facts, and did not have equal opportunity to discover the truth. Defendants intended to induce the Plaintiffs to purchase the homes in question by failing to disclose said facts . . ." (IHIC App. 57).

The factual allegations of fraud, conspiracy, misrepresentation, and breach of contract are extensive and pervasive throughout the SAHA and Arias petitions. Because KB is alleged to have purposely and intentionally built substandard housing in order to maximize profits, just as the clerk purposefully showed the photos to his friends in *Cowen*, there is no "accident" or "occurrence" alleged to trigger coverage under the Indian Harbor Policy. Thus, Indian Harbor owes no duty to defend or indemnify for the claims of property damage asserted against KB in the Underlying Lawsuit.

Furthermore, the fact that there are mere allegations of negligence does not put the claims against KB back within coverage. In a similar case against KB involving allegations by a multitude of homeowners asserting fraud, misrepresentation, etc., in *KB Home v. Employers Mutual Casualty Company*, *supra*, the Fort Worth Court of Appeals stated:

> [I]t is axiomatic that artful pleading cannot change the character of a lawsuit. In the vernacular, calling a duck a chicken does not make it so. The essence of the complaint made by the plaintiffs is that KB misrepresented and fraudulently concealed material facts surrounding the sales of its homes. The purported facts that give rise to the alleged actionable conduct, not the legal theory, control in determining the duty to defend.

*KB Home v. Employers Mutual Cas. Co.*, at \*6; *See also Freedman*, 976 S.W.2d at 778-79 (stating the mere allegation of negligence does not control the issue of the duty to defend and holding insurer had no duty to defend where facts alleged fraudulent statements and misrepresentations).

In this case, as in *Employers Mutual* and *Freedman*, the mere allegation of negligence does not control the duty to defend, and is nothing more than a reconstituted allegation of the same intentional conduct complained of throughout the Underlying Lawsuit. The duty to defend instead is controlled by the actual facts alleged, which in this case, as in *Employers Mutual* and *Freedman*, allege intentional misrepresentation, fraud, and breach of contract. In fact, "negligence" is only mentioned once throughout the entire SAHA petition where the plaintiffs allege "negligent misrepresentation"; however, no factual allegations are made that would suggest an accident. Instead the allegation of "negligent misrepresentation" is based on the <u>same factual allegations</u> of intentional deception and fraud. (IHIC App. 88). The same is true of the Arias petition, which only mentions "negligence" in its claim for damages. (IHIC App. 59). Accordingly, there are no allegations of accidental conduct that could constitute an "occurrence" that would trigger coverage. As such, there is no coverage for KB under the Policy.

2. **There are no allegations of "property damage" occurring during the policy period.**

The Policy provides coverage only for "property damage" which occurs during the policy period. The Policy provides in relevant part:

> b. ___This insurance applies to "bodily injury" and "property damage" only if:___
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) ___The "bodily injury" or "property damage" occurs during the policy period.___

(IHIC App. 6) (emphasis added).

"Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(IHIC App. 18).

Texas courts have held that coverage is triggered under a commercial general liability policy only when the underlying lawsuit alleges property damage that occurred during the relevant policy period. *See Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008) ("[T]he insurer's duty to defend [the insured] depends on whether the homeowner's pleading alleges property damage that occurred during the policy term.") Further, the Southern District has specifically held that when the underlying pleadings fail to mention the alleged date of actual harm, an insurance policy is not triggered as a matter of law. *See Amerisure Mut. Ins. Co. v. Travelers Lloyds*, Civ. No. H-09-662, 2010 WL 1068087, * 6 (S.D.

Tex. March 22, 2010) (holding that an insurance carrier's duty to defend was not triggered where the underlying pleadings failed to mention an alleged date of actual harm). Moreover, a court cannot look to extrinsic evidence to establish this date. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008) (stating that Texas has not recognized such an exception to the "eight-corners rule"); *see also Mary Kay Holding Corp. v. Fed. Ins. Co.,* 309 Fed App'x 843, 848 (5th Cir. 2009) (same).

In the present case, the Indian Harbor policy was in effect from October 18, 2000 to October 18, 2001. (IHIC App. 2). The live pleadings in the Underlying Lawsuit contain **no dates of alleged actual harm**. In fact, the petitions allege the damage was first discovered in 2007. (IHIC App. 49, IHIC App. 76). This is six years after the Indian Harbor policy term. Under *Amerisure*, not only is there no allegation of an occurrence during Indian Harbor's policy "year," but the only dates referenced fall far outside the Indian Harbor policy period.

Therefore, following the eight-corners rule and the *Amerisure* case discussed above, the analysis must conclude that KB is not entitled to coverage under the Policy because it cannot show that the alleged property damage occurred during the Indian Harbor policy period. Since the allegations in the Underlying Lawsuit do not trigger the Indian Harbor Policy, Indian Harbor owes no duty to defend or indemnify KB as a matter of law.

### 3. The Additional Insured Endorsement precludes coverage for KB.

Under Texas law, the general rules of contract construction govern insurance policy interpretation. *See, e.g.*, *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). As such, the language and policy terms in an agreement are to be given their "plain grammatical meaning unless to do so would defeat the parties' intent." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). If the language in a policy is worded so that

it can be given a certain or definite meaning or interpretation, the court will construe the policy as a matter of law. *See, e.g.*, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

In the present case, assuming for the purpose of this summary judgment motion that KB is an additional insured, it is only entitled to coverage to the extent of Innovative's operations. The Additional Insured endorsement under which KB seeks coverage provides that KB is an "insured" under Section II of the Policy, "*but only with respect to liability arising out of your operations or premises owned by or rented to you.*" (IHIC App. 19) (emphasis added). The Policy defines "you" and "your" as referring to the Named Insured shown in the declarations. (IHIC App. 6). The Policy declarations list one entity – Innovative Concrete Construction, Inc. – and no other entity qualifies as a Named Insured under the Policy.[1] (IHIC App. 2, 6). Therefore, where the Policy refers to "you," "your," or "Named Insured," the Policy only refers to Innovative. Pursuant to the language in the Additional Insured endorsement, KB simply qualifies as an "insured." (IHIC App. 19). The Policy defines "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured." Properly reading the express terms of the Additional Insured endorsement, KB is an insured under the Policy*, "but only with respect to liability arising out of* [Innovative's] *operations or premises owned by or rented to* [Innovative].*" (IHIC App. 19) (emphasis added). KB is thus only entitled to coverage **with respect to liability arising out of Innovative's operations.**

KB is now attempting to convert this limited additional insured endorsement into a much broader grant of coverage that finds no support under the specific terms of the Policy. Although

---

[1] Assuming, for the purpose of this summary judgment motion only, that KB is an Additional Insured under the Policy, it does not qualify as a Named Insured under the language of the Policy. The Additional Insured endorsement modifies the section of the Policy defining "Who is an Insured," (IHIC App. 19) but the provisions defining who is a Named Insured under the Policy are in an entirely different section (IHIC App. 6) and are not modified in any way by the Additional Insured endorsement. (IHIC App. 19).

the Underlying Lawsuit alleges numerous defects and deficiencies with the Mirasol project, it is completely devoid of allegations of or implications relating to Innovative's work. In fact, not only were there no allegations regarding Innovative's work, but both the SAHA and Arias plaintiffs ultimately dismissed Innovative from the lawsuit. Because KB is considered an insured only for liability arising from Innovative's work, and since the petitions in the Underlying Lawsuit contain no allegations of liability arising from Innovative's work, KB has no coverage under the Policy as a matter of law. *See D.R. Horton—Texas, Ltd. v. Markel Int'l. Ins. Co, Ltd.*, 300 S.W.3d 773, 778-81 (Tex. App. – Houston [14th Dist.] Jan. 26, 2006), *modified on other grounds*, 300 S.W.3d 740 (Tex. 2009) (holding that the insurer has no duty to defend the additional insured because the underlying petition did not allege that the work of the named insured caused the damage, nor was the named insured named as a party in the underlying lawsuit). Thus, Indian Harbor owes no duty to defend or indemnify KB as a matter of law under the plain and unambiguous language of the Additional Insured endorsement.

**4. The Expected or Intended Injury Exclusion Applies.**

The Policy's exclusion for Expected or Intended Injury precludes coverage as follows:

*a. Expected or Intended Injury*

> *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

The allegations in the Underlying Lawsuit, including those quoted above, allege KB intended the injury that is the subject of the Underlying Lawsuit in order to maximize its profits. There are no factual allegations of accidental conduct, as the allegations clearly state KB intended to misrepresent the quality of the homes to be built and intended to create substandard housing in order to make a higher profit. As it is alleged KB expected or intended the property

damage at issue in the underlying lawsuit, the Expected or Intended Injury exclusion applies to preclude coverage for KB as a matter of law.

5. **The Policy is not a performance bond or guarantee of work and therefore the business risk exclusions apply.**

Commercial general liability policies are designed to provide coverage for fortuitous accidents beyond the insured's control. As a general rule, CGL policies are not intended to cover risks relating to the repair or replacement of an insured's faulty or defective work, product, or to insure defects in the insured's work or product itself. The Policy's "business risk" exclusions— one of which is the "Contractual Liability" exclusion—are thus intended to have the policy provide coverage for tort liability, not for the contractual liability of the insured for loss occurring because the product or completed work was not that for which the other party had bargained. *See T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 694-95 (Tex. App.-Houston [14th Dist.] 1989, writ denied) (noting that "[t]he purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product."). They are not designed to cover intentional acts or claims arising out of contract.

The purpose and intent of a CGL policy in the context of faulty construction claims was succinctly summarized in a decision by the Northern District of Texas in *David Lewis Builders, Inc. v. Mid-Continent Casualty Company* and affirmed by the Fifth Circuit as follows:

> [A]s a general proposition, the purpose of liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product . . .[I]f an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to "enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own

work." Ordinarily, this is not the intended function of liability insurance. And, as the Fifth Circuit [has] explained. . . a case involving the scope of liability insurance coverage for a builder, "[a] comprehensive general liability policy does not cover [the] cost of doing business."

*David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*, 720 F. Supp. 2d 781, 785

(N.D. Tex 2010) *aff'd*, 10-10432, 2011 WL 365279 (5th Cir. 2011).

    As the Texas Supreme Court also recently made clear:

> Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained. Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

*Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 500 (Tex. 2008).

    Despite the clear intent and purpose of a CGL policy to provide coverage for fortuitous tort liability, KB seeks coverage under the Policy for its defective work. As is more fully set forth below, the Policy does not provide coverage for defective work because even if the allegations fell within the insuring agreement of the Policy, they are excluded by the business risk exclusions which are specifically designed to preclude coverage for the very type of nonfortuitous contract-based liability asserted against KB.

**(a) The Contractual Liability Exclusion applies**

KB is not entitled to coverage under the Indian Harbor policy because any coverage is precluded by the Contractual Liability Exclusion in the Policy. The Contractual Liability Exclusion provides as follows:

> **b.    Contractual Liability**
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*
> *(1) That the insured would have in the absence of the contract or agreement; or*
> *(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*
> *(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*
> *(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

In this case, the damages for which KB is sought to be held responsible are economic damages arising out of its contract and are not the type of damages for which a CGL policy is designed to cover. As made clear by the Texas Supreme Court, a CGL policy does <u>not</u> provide coverage for contractual liability of the insured for economic loss incurred because the product or work is not what was bargained for. *Nokia,* 268 S.W.3d at 500.

In *Gilbert Texas Construction, L.P. v. Underwriters at Lloyds London*, 327 S.W.3d 118, (Tex. 2010), the Texas Supreme Court considered whether the contractual liability exclusion applied to preclude coverage for breach of contract claims. *Id*. at 132. In holding that it did, the Court stated, "We hold that [the contractual liability exclusion] means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract or when the insured would be liable absent the contract or agreement." *Id*. at 128.

In *Ewing Construction Co., Inc. v. Amerisure Insurance Company*; No. C-10-256, 2011 WL 1627047 (S.D. Tex. April 28, 2011), the Southern District of Texas extended *Gilbert* to apply the contractual liability exclusion to both breach of contract claims *and* negligence claims where the nature of the damages arise out of contract. In that case, the insured Ewing Construction Company, Inc. had been sued in an underlying lawsuit for defectively constructing a tennis court pursuant to a contract with a school district. The insurer, Amerisure, denied coverage based on the contractual liability exclusion. The insured then brought a declaratory judgment action against Amerisure for a determination of coverage.

The court held that the contractual liability exclusion applied to preclude coverage for the claims against the insured because the defective construction claims arose out of the subject of the contract. In so holding, the court relied on *Gilbert Texas Construction Company v. Underwritings at Lloyds London*, 327 S.W.3d 118 (Tex. 2010), in which the Texas Supreme Court recently held that the contractual liability exclusion applied not only to indemnity claims (as the exclusion had previously been interpreted under Texas law), but also applied to preclude damages in breach of contract claims. *Id*. at 132.

The court in *Ewing* extended *Gilbert* by applying the economic loss rule. Under the

economic loss rule, a plaintiff's claims usually sound in contract, not tort, when the only loss or damage is to the subject matter of the contract. *Ewing*, 2011 WL 1627047 at *9. In applying the economic loss rule, the court determined that the damages, specifically those allegedly sustained as the result of negligence, were solely damage to the subject matter of the contract and therefore sounded in contract, not tort. *Ewing*, 2011 WL 1627047 at *12.

As in *Ewing*, the allegations against KB arise out of and are the subject of the construction contract. In fact, as explained above, all of the factual allegations against KB sound in contract[2] as the only allegations of negligence are based on the same factual allegations used by the plaintiffs to assert their breach of contract. Under *Gilbert* and *Ewing*, the damages would be excluded by the contractual liability exclusion, since there are no allegations outside the damage to the homes, all of which are the subject matter of the contract.

### 6.  No Duty to Indemnify

Indian Harbor thus neither owes a duty to defend nor a duty to indemnify KB under Texas law. The only underlying facts established go to the claims alleged in the Underlying Lawsuit. Since the allegations (and underlying facts established) do not trigger a duty to defend, there is no possibility that Indian Harbor will ever have a duty to defend. See *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) (when "the insurer has no duty to defend, the duty to indemnify is justiciable . . . [if] the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.") (quoting *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). Therefore, summary judgment in favor of Indian Harbor on the duty to defend and indemnify should be granted.

---

[2] The only claims that do not sound in contract are the intentional tort claims which are otherwise excluded.

# V.
# CONCLUSION

KB seeks coverage for its defective work which is not covered under the Indian Harbor Policy. The pleadings fail to allege an occurrence and fail to allege property damage within the policy period. Furthermore, there are no allegations of liability arising out of Innovative's work, which is required for any coverage as an additional insured under the Policy. Additionally, any potentially covered claim would be excluded by the Expected and Intended Injury Exclusion and Contractual Liability Exclusion. Indian Harbor thus has no duty to defend or indemnify KB and Indian Harbor is entitled to summary judgment on its declaratory claims as a matter of law.

WHEREFORE, Indian Harbor prays that the Court grant the foregoing motion and further prays for general relief.

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: ___s/ Gary N. Schumann_____
    Gary N. Schumann, Attorney-in-charge
    State Bar No. 17851930
    S.D. Tex. Bar No. 16415
    Camille Johnson
    State Bar No. 10686600
    S.D. Tex. Bar No. 16414
    Jessica Marcoux Hall
    State Bar No. 24046348
    S.D. Tex. Bar No. 581907
    Scott B. Herlihy
    State Bar No. 24002262
    S.D. Tex. Bar No. 22229
    4330 Gaines Ranch Loop, Suite 150
    Austin, Texas 78735
    Phone: (512) 347-1604
    Fax: (512) 347-1676

**ATTORNEYS FOR PLAINTIFF,
INDIAN HARBOR INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of September, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Erik D. Buzzard
PALUMBO BERGSTROM LLP
17902 Von Karman Ave., Suite 500
Irvine, CA 92614

___s/ Gary N. Schumann_____
Gary N. Schumann
