

**Atlantic Casualty Insurance Company**
A member of the Strickland Insurance Group, Inc.

November 05, 2009

I, Donna Lowry, Underwriting Supervisor, for Atlantic Casualty Insurance Company, do hereby certify that the enclosed policy, AIL022000044, issued to Innovative Concrete Construction, Inc. is a true and correct copy of the original document contained in our imaging system.

Donna Lowry, AU, ASLI, AIS, AIM    Date
Underwriting Supervisor



# INDIAN HARBOR INSURANCE COMPANY

## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

### COMMON POLICY DECLARATIONS

**PRODUCERS NAME:** U.S. RISK UNDERWRITERS, INC. (022)

**POLICY NO.** AIL022000044

**NAMED INSURED** INNOVATIVE CONCRETE CONSTRUCTION, INC.

**U.S. Risk Underwriters, Inc.**
**U.S. Risk Brokers, Inc.**
9433 Bee Caves Road, Bldg. 1, Suite 200
Austin, Texas 78733

**MAILING ADDRESS** 11110 OSGOOD
SAN ANTONIO      TX 78233

**POLICY PERIOD: From:** 10/18/00 **to** 10/18/01 **at**
12:01 A.M. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION:** CONCRETE CONTRACTOR

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Boiler and Machinery Coverage Part | $ |
| Commercial Auto Coverage Part | $ |
| Commercial Crime Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 27,473.00 |
| Commercial Inland Marine Coverage Part | $ |
| Commercial Property Coverage Part | $ |

RECEIVED

JAN 08 2001

STRICKLAND INSURANCE GROUP

Surplus Lines Tax $1,344.57
STAMPING FEE $69.31          $ 1,413.88

Policy Fee and Inspection Fee          $ 250.00

**TOTAL** $ 29,136.88

Forms applicable to all Coverage Parts

### SEE SCHEDULE OF FORMS AND ENDORSEMENTS

**COUNTERSIGNED** 01/03/01          **BY**
(Date)          (Authorized Representative)

IN WITNESS WHEREOF, this Company has caused the Policy to be signed by its President and its Secretary and countersigned by a duly authorized representative.

President          Secretary
This form includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1984

CPPDEC (3-97)-I

COMPANY

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>AIL022000044 | NAMED INSURED<br>INNOVATIVE CONCRETE CONSTRUCTION, INC. |
|---|---|

| Form/Endorsement No./Edition Date | Form/Endorsement No./Edition Date |
|---|---|

Forms Applicable - **INDIAN HARBOR PACKAGE**

Forms Applicable - **GENERAL LIABILITY**

| | |
|---|---|
| CPPDEC 3-97 | COMM GL DECLARATIONS |
| JDL 190(2)-0-1 11-85 | COMM GL DEC |
| CG0001 1-96 | COMM GL COV FORM |
| CG2026 11-85 | ADD INS - DESIGNATED PERSON OR |
| IL0017 11-85 | COMMON POLICY CONDITIONS |
| IL0021 11-85 | NUCLEAR ENERGY EXCLUSION |
| IHGND-003 9-98 | GENERAL PURPOSE ENDT |
| IHGL-C-4 9-98 | CONTRACTORS COMBO ENDT |
| IHGL-002 9-98 | EXCL-LEAD BEARING SUBSTANCE |
| IHGL-004 9-98 | EXCL-ASBESTOS,SILICA DUST, SUB |
| IHGL-011 9-98 | EXCL-SUBSIDENCE |
| IHGL-012 9-98 | PREMIUM AUDIT DEPOSIT PREMIUM |
| IHGL-045 9-98 | MINIMUM EARNED PREMIUM |
| IHGL-048 9-98 | EXCL-CLAIMS IN PROGRESS |
| IHGL-049 9-98 | EXCL-YEAR 2000 EXPOSURE |

| POLICY NUMBER:<br>AIL022000044 | NAMED INSURED<br>INNOVATIVE CONCRETE CONSTRUCTION, INC. |
|---|---|

### ADDITIONAL FORMS AND ENDORSEMENTS

Form/Endorsement No./Edition Date      Title

| | |
|---|---|
| USR-1 | IMPORTANT NOTICE |
| USR-4 | GUARANTY FUND DISCLOSURE |
| CG2136(11/85) | NEW ENTITIES EXCLUSION |
| CG2147(10/93) | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| CG2149(10/93) | TOTAL POLLUTION EXCLUSION |

# INDIAN HARBOR INSURANCE COMPANY

## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

NEW
Renewal of Number*

**Policy No.** AIL022000044

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)*
INNOVATIVE CONCRETE CONSTRUCTION, INC.
11110 OSGOOD
SAN ANTONIO    TX  78233
Policy Period *: From   10/18/00         to   10/18/01          at 12:01 A.M. Standard Time at your mailing
                    address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
|---|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $ 2,000,000 | |
| Products—Completed Operations Aggregate Limit | $ 1,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ 5,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if
any, shown here: _____
                  (Enter Date or "None" if no Retroactive Date applies)

**DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES**

Form of Business:
[ ] Individual   [ ] Joint Venture   [ ] Partnership     [X] Organization (Other than Partnership or Joint Venture)
Business Description*: CONCRETE CONTRACTOR

Location of All Premises You Own, Rent or Occupy:1110 OSGOOD, SAN ANTONIO, TX 78233

**PREMIUM**

| Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| CONCRETE CONSTRUCTION | 91560 | p 1,223,500 | 4.594 | 17.574 | $5,621. | $21,502. |
| | | | | | $ | $ |
| CONTRACTORS -SUBCONT. WORK-- | 91583 | c IF ANY | 1.922 | 0.527 | $INCL. | $INCL. |
| IN CONNECT. W/BLDG CONST, | | | | | $ | $ |
| RECONSTRUCTION, REPAIR OR | | | | | $ | $ |
| ERECTION -ONE OR TWO FAMILY | | | | | $ | $ |
| DWELLINGS | | | | | $ | $ |
| | | | | | $ | $ |
| BLANKET ADD'L INSURED-CG2026 | | | FLAT | CHARGE | $ | $300. |

**(a) area    (c) total cost    (m) admission    (p) payroll    (s) gross sales    (u) units(o) other

**FORMS AND ENDORSEMENTS** applying to this Coverage Part and made part of this policy at time of issue†:
SEE SCHEDULE OF FORMS AND ENDORSEMENTS

Countersigned:*

                                        By _____     *
                                              Authorized Representative
*Entry optional if shown in Common Policy Declarations.
†Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED
POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

JDL 190 (2)-0 (11-85) —I          Copyright, Insurance Services Office, Inc., 1982, 1984

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES
## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any occurrence" and settle any claim or "suit" that may result. But:

1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III ); and
2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

b.  This insurance applies to "bodily injury" and "property damage" only if:
(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2)  The "bodily injury" or "property damage" occurs during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a.  **Expected or Intended Injury**
    "Bodily injury" or "property damage" expected o intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**
    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or
(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

IHIC App. 6

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:
**(1)** An "employee" of the insured arising out of and in the course of:
    **(a)** Employment by the insured; or
    **(b)** Performing duties related to the conduct of the insured's business; or
**(2)** The spouse, child , parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:
**(1)** Whether the insured may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or
        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:
**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:
    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft, or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured, or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:
1) Property you own, rent, or occupy;
2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
3) Property loaned to you;
4) Personal property in the care, custody or control of the insured;
5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

IHIC App. 8

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:
(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period

### 2. Exclusions

This insurance does not apply to:
a. "Personal injury" or "advertising injury":
(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

IHIC App. 9

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

**1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**2)** The failure of goods, products or services to conform with advertised quality or performance;

**3)** The wrong description of the price of goods, products or services; or

**4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, reating, cletoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

IHIC App. 10

## SUPPLEMENTARY PAYMENTS COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:
   (1) Agrees in writing to:
      a) Cooperate with us in the investigation, settlement or defense of the "suit";
      b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the " suit";
      c) Notify any other insurer whose coverage is available to the indemnitee; and
      d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      a) Obtain records and other information related to the "suit"; and
      b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or
b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

IHIC App. 11

# SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your, "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury":

   a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

   b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

   c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

   d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   a. Owned, occupied or used by,

   b. Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

IHIC App. 12

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
  **a.** Insureds;
  **b.** Claims made or "suits" brought; or
  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:
  **a.** Medical expenses under Coverage C;
  **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
  **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
  **a.** Damages under Coverage A; and
  **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**
Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
    **(1)** How, when and where the "occurrence" or offense took place;
    **(2)** The names and addresses of any injured persons and witnesses; and
    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
  **b.** If a claim is made or "suit is brought against any insured, you must:
    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
    **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

IHIC App. 13

c. You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

  **a. Primary Insurance**

    This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

    This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

    **(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

IHIC App. 14

**5. Premium Audit**

    a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at times as we may request.

**6. Representations**

By accepting this policy, you agree:

    a. The statements in the Declarations are accurate and complete;

    b. Those statements are based upon representations you made to us; and

    c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c. All parts of the world if:

        (1) The injury or damage arises out of:

           a) Goods or products made or sold by you in the territory described in a. above; or

IHIC App. 15

**b.** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:
   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
   **b.** A sidetrack agreement;
   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;
**f.** That part of any other contract or agreement pertaining to your business (including an idemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person of organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:
   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
   **b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:
   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

IHIC App. 16

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

      **a)** Snow removal;

      **b)** Road maintenance, but not construction or resurfacing; or

      **c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **a)** When all of the work called for in your contract has been completed.

      **b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

IHIC App. 17

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a)** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

  **(1)** You;

  **(2)** Others trading under your name; or

  **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf, and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

IHIC App. 18

　　　　　　　　　　**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**

ALL PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT
BETWEEN SUCH PERSON OR ORGANIZATION AND THE NAMED INSURED.

$300.00 FULLY EARNED PREMIUM

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IHIC App. 20

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage:"

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

Copyright, Insurance Services Office, Inc., 1983, 1984

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# INDIAN HARBOR INSURANCE COMPANY
## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## CONTRACTORS COMBINATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

## ROOFING LIMITATION ENDORSEMENT

We do not cover claims, loss, costs or expense due to "property damage" arising out of wind, hail, rain, ice or any combination of these if (1) prudent steps have not been taken to determine any approaching adverse weather and (2) a suitable temporary covering, able to withstand the normal elements has not been secured in place. (This cover is to be put into place any time the contractor leaves the job site.)

Further, we do not cover claims, loss, costs or expense arising out of "bodily injury", "personal injury", or "property damage" as a result of any operations involving any hot tar, wand, torch or heat applications or membrane roofing.

IHGL-009 9/98

## EXCLUSION - DESIGNATED OPERATIONS (ALL HAZARDS IN CONNECTION WITH SUBWAY, SEWER, TUNNEL, BRIDGE AND DAM CONSTRUCTION OR OPERATION)

We do not cover claims, loss, costs or expense for "bodily injury", "property damage", "personal injury", or "advertising injury," arising out of pile driving, caisson, cofferdam, subway, sewer, tunnel, dam, subaqueous, or dredging construction or operations.

IHGL-010 9/98

## EXCLUSION - SUBSIDENCE

We do not cover claims, loss, costs or expense for "bodily injury", "personal injury", disease or illness, including: death, or to loss of, damage to, or loss of use of property for past, present or future claims caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking, shift or shrinking, resulting from your operations or any contractor or subcontractor regardless of whether the first manifestation of same occurs prior to, or during the policy period, or subsequent thereto.

IHGL-011 9/98

# INDIAN HARBOR INSURANCE COMPANY
## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

### PREMIUM AUDIT DEPOSIT PREMIUM

*Conditions (Section IV), Commercial General Liability is amended as follows:*

Premium Audit

Paragraph b. is deleted and replaced by the following;

b) Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. It shall be determined based on an estimate of your exposures for the policy year. At the close of each audit period we may, at our discretion, compute earned premium based on your actual records. If we do this computation and the premium developed is greater than the advance premium, the additional premium is due and payable on notice to the first Named Insured. If the total earned premium for the policy period is less than the advance premium, then the advance premium is the minimum premium and not subject to further adjustment.

IHGL-012 9/98

### SUBCONTRACTORS - DEFINITION OF ADEQUATELY INSURED

#### (Possible Additional Premium Charges)

The classifications used in this policy containing the words "Contractors - Subcontracted Work" apply to that portion of the operations performed for the insured by "adequately insured" subcontractors.

"Adequately insured" means that a subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:

| | |
|---|---|
| General Aggregate Limit (Other than Products - Completed Operations) | $300,000 |
| Products - Completed Operations Aggregate Limit | $300,000 |
| Each Occurrence Limit | $300,000 |

Any subcontractor not "adequately insured" and whose work is not excluded by the policy, will be considered an employee of the insured for the sole purpose of computing premium.

Such subcontractors will be rated under the most appropriate classification and a premium charge will be made using the company rates effective at the inception of the policy.

**For any subcontractor not "adequately insured," you must maintain records showing the labor cost of that subcontractor separate from the material cost or total cost.**

**If the labor cost of any subcontractor is not available at audit time, it will be determined in the following manner to satisfy the terms of this endorsement:**

Sixty percent of the subcontractor's total cost will be considered labor cost (payroll).

IHGL-051 9/98

IHGL-C-4 Edition 09/98 This document contains copyrighted material of the Insurance Services Office, Inc., Page 2 of 4

# INDIAN HARBOR INSURANCE COMPANY
## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

## EXCLUSION - EXPLOSION, COLLAPSE AND UNDERGROUND PROPERTY DAMAGE HAZARD (SPECIFIED OPERATIONS)

### SCHEDULE

All locations, operations and Classifications without exception:

> Excluded hazard(s)
> "Explosion Hazard"
> "Collapse Hazard"
> "Underground Property Hazard"

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. *The following exclusion is added to paragraph 2., Exclusion in Section I Coverages:*

This insurance does not apply to "property damage" included within the "explosion hazard", the "collapse hazard" or the "underground property damage hazard" if any of these hazards is entered as an excluded hazard on the Schedule.

This exclusion does not apply to:

    a) Operations performed for you by others; or

    b) "Property damage" included within the "products-completed operations hazard".

B. The following definitions are added to the DEFINITIONS SECTIONS:

1. "Collapse hazard" includes "structural property damage" and any resulting "property damage" to any other property at any time.

2. "Explosion hazard" includes "property damage" arising out of blasting or explosion. The "explosion hazard" does not include "property damage" arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

3. "Structural property damage" means the collapse or structural injury to any building or structure due to:

    a) Grading of land, excavating, borrowing, filling, backfilling, tunneling, pile driving, cofferdam work or caisson work; or:

    b) Moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

4. "Underground property damage hazard" includes "underground property damage" and any resulting "property damage" to any property at any time.

5. "Underground property damage" means "property damage" to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus used with them beneath the surface or the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, backfilling, or pile driving.

CG 21 42 01 96

IHIC App. 25

# INDIAN HARBOR INSURANCE COMPANY
### One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

## EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

The following exclusion is added to Paragraph 2., Exclusions of COVERAGES A  BODILY INJURY AND  PROPERTY DAMAGE LIABILITY (Section I Coverages) and Paragraph 2., Exclusions of COVERAGE B  PERSONAL AND ADVERTISING INJURY LIABILITY (Section I  Coverages).

This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of:

1. The preparing, approval, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications by an architect, engineer or surveyor performing services on a project on which you serve as a construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as a construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or "employees" or your contractors.

CG 22 34 01 96

IHIC App. 26

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### EXCLUSION - LEAD BEARING SUBSTANCE

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

We do not cover any claim, loss, costs or expense for "bodily injury", "personal injury" or "advertising injury" caused by plumbism (lead poisoning) or any disease or ailment caused by, or aggravated by exposure, consumption or absorption of lead.

We do not cover any claim, loss, costs or expense for "property damage" arising out of the actual or alleged presence of lead in any form, including the costs of remedial investigations or feasibility studies, or to the cost of testing, monitoring, cleaning up or removal of any lead-bearing substance.

IHGL-002 Edition 09/98

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EXCLUSION - ASBESTOS, SILICA DUST, TOXIC SUBSTANCE

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

We do not cover any claim, loss, costs or expense for "bodily injury" "personal injury" or "advertising injury" caused by asbestosis, silicosis, mesothelioma, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any lung disease or any ailment caused by, or aggravated by exposure, inhalation, consumption or absorption of asbestos fibers or silica dust.

We do not cover any claim, loss, costs or expense for "property damage" due to or arising out of the actual or alleged presence of asbestos or silica dust in any form, including the cost of remedial investigations or feasibility studies, or to the cost of testing, monitoring, cleaning or removal of any property or substance.

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EXCLUSION - SUBSIDENCE

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

We do not cover claims, loss, costs or expense for "Bodily Injury", "Personal Injury", disease or illness, including death, or to loss of, damage to, or loss of use of property, for past, present or future claims caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking, shift or shrinking, resulting from your operations or any contractor or subcontractor regardless of whether the first manifestation of same occurs prior to or during the policy period or subsequent thereto.

IHGL-011 Edition 09/98

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### PREMIUM AUDIT-DEPOSIT PREMIUM

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Conditions ( Section IV), Commercial General Liability is amended as follows:

5. Premium Audit

Paragraph " b." is deleted and replaced by the following:

b) Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. It shall be determined based on an estimate of your exposures for the policy year. At the close of each audit period we may, at our discretion, compute earned premium based on your actual records. If we do this computation and the premium developed is greater than the advance premium, the additional premium is due and payable on notice to the first Named Insured. If the total earned premium for the policy period is less than the advance premium, then the advance premium is the minimum premium and not subject to further adjustment.

IHGL-012 Edition 09/98

IHIC App. 30

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### MINIMUM EARNED PREMIUM

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE

If this policy is cancelled at your request, you agree with us:

1. that the minimum earned premium for this policy is 25 % of the Total Premium;

2. that such minimum earned premium is not subject to short rate or pro-rate adjustment; and

3. that cancellation for non-payment of premium, after the effective date of the policy, shall be deemed a request by you for cancellation of this policy and will activate this minimum earned premium provision.

IHGL-045 Edition 09/98

# INDIAN HARBOR INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EXCLUSION - CLAIMS IN PROGRESS

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy does not apply to "Bodily Injury" or "Property Damage", including any obligation to indemnify or to defend, which first occurs or is discovered before the inception date of this policy but continues to occur during the policy period, if such "Bodily Injury" and/or "Property Damage" is known to any insured or any insured has reason to know or believe to exist prior to the inception of this policy.

IHGL-048 Edition 09/98



## IMPORTANCE NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

> P.O. Box 149104
> Austin, TX 78714-9104
> FAX # (512) 475-1771

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companieas, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departmento de Serguros de Texas:

> P.O. Box 149104
> Austin, TX 78714-9104
> FAX # (512) 475-1771

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comuicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVIS_ A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

USR—1

# TEXAS REQUIRED NOTICE

"THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A SURPLUS LINE COVERAGE PURSUANT TO THE TEXAS INSURANCE STATUTES. THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE, AND THIS INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER ARTICLE 21.28-C, INSURANCE CODE. ARTICLE 1.14-2, INSURANCE CODE REQUIRES PAYMENT OF 4.85% TAX ON GROSS PREMIUM."

*USR-4*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Part 4. of WHO IS AN INSURED (Section II) does not apply.

## EMPLOYMENT – RELATED PRACTICE EXCLUSION

A.   The following exclusion is added to paragraph 2., Exclusions of Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to:
   "Bodily Injury" to:

1)   A person arising out of any:

   (a) Refusal to employ that person;
   (b) Termination of that person's employment; or
   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2)   The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

1)   Whether the insured may be liable as an employer or in any other capacity; and
2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B.   The following exclusion is added to paragraph 2., Exclusions of coverage B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to:
"Personal Injury" to:

1)   A person arising out of any:

   a)  Refusal to employ that person;
   b)  Termination of that person's employment; or
   c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person or

2)   The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

1)   Whether the insured may be liable as an employer or in any other capacity; or

2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 10 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion **f.** under paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

f.(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

IHIC App. 38

# INDIAN HARBOR INSURANCE COMPANY
## One Greenwich Plaza, P.O. Box 2568, Greenwich, CT 06836-2568

### ENDORSEMENT # 1

This endorsement, effective 12:01 A.M., 10/18/00 ,forms a part of

Policy No. AIL022000044 issued to INNOVATIVE CONCRETE CONSTRUCTION, INC.

By **Indian Harbor Insurance Company.**

IT IS HEREBY AGREED THAT THE FOLLOWING EXCLUSION IS DELETED FROM
FORM IHGL-C4(9/98) AS IT DOES NOT APPLY UNDER THIS POLICY:

1) EXPLOSION, COLLAPSE & UNDERGROUND PROPERTY DAMAGE HAZARDS

ENDT. #1

IHGND-003 09/98

216712

*THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

POLICY CHANGE NUMBER: 2
COMPANY: Indian Harbor Insurance Co.
POLICY NBR: AIL022000044
POLICY CHANGE EFFECTIVE: 10-18-00

NAMED INSURED: Innovative Concrete Construction Inc.

---

***CHANGES***

FOR NO CHANGE IN TOTAL PREMIUM IT IS HEREBY AGREED THAT THE FLAT CHARGE FOR
BLANKET ADDITIONAL INSURED ON COMMERCIAL GENERAL LIABILITY COVERAGE PART
JDL190(2)-0(LL/85)-I IS CORRECTED TO READ $350.00 IN LIEU OF $300.  TOTAL
PREMIUM FOR COMMERCIAL GENERAL LIABILITY COVERAGE PART IS $27,473.00 AS
SHOWN ON COMMON POLICY DECLARATIONS.

STRICKLAND INSURANCE
GROUP

FEB 5 2001

ENDT. NO. 2

**32**
RANDALL G. GOSS, CHAIRMAN/CEO

01-29-01

db

IHIC App. 40

CAUSE NO. 2009-CI-08711

| | | |
|---|---|---|
| JESSE ARIAS and MARY ARIAS; THOMAS ARISPE, JR.; and LUIS CINTRON and ELOISA CINTRON [Additional Plaintiffs named in Exhibit "A"] | § § § § § § | IN THE DISTRICT COURT |
| v. | § § | OF BEXAR COUNTY, TEXAS |
| K B HOME d/b/a KAUFMAN AND BROAD HOME CORP. and a/k/a KB HOME, INC.; KB HOME LONE STAR, INC.; KB HOME LONE STAR L.P. f/k/a KAUFMAN AND BROAD LONE STAR, L.P.; MAGI REALTY, INC. d/b/a MIRASOL JOINT VENTURE TEAM, KBSA, INC. f/k/a KAUFMAN AND BROAD OF SAN ANTONIO, INC.; et al. | § § § § § § § § § § | 37TH JUDICIAL DISTRICT |

## PLAINTIFFS' EIGHTH AMENDED PETITION

NOW COME JESSE ARIAS and MARY ARIAS; THOMAS ARISPE, JR.; and LUIS

CINTRON and ELOISA CINTRON (hereinafter referred to by name or as "Plaintiffs", along

with the other additional Plaintiffs listed on Attachment "A") and file this their Plaintiffs'

EIGHTH Amended Petition and Requests for Disclosure complaining of KB Home d/b/a

Kaufman And Broad Home Corp. and a/k/a KB Home, Inc.;  KB Home Lone Star, Inc.; KB

Home Lone Star, L.P. f/k/a Kaufman And Broad Lone Star, L.P.; Magi Realty, Inc. d/b/a

Mirasol Joint Venture Team; The Mirasol Joint Venture Team; KBSA, Inc., f/k/a Kaufman And

Broad Of San Antonio, Inc.; KB Home Greater Los Angeles, Inc.; KB Home Holdings, Inc.;

Complete Construction Management LLC; Rick Rodriguez; Gillette Holdings Ltd; Ozuna &

Associates Engineering, Inc.; Texas V&J Construction, Inc.; Concrete Pumps Of Texas Inc.;

Ashley Plumbing Co., Ltd.; Ramos Construction; Innovative Concrete Construction, Inc.; James

1

R. Plotts d/b/a American Trimworks; David Sada d/b/a Sada Roofing; Heery International, Inc.; Vincent Maranto III d/b/a Alamo Stoneworks; Gavin Morrison d/b/a Morrison & Sons; N Zapata & Monarch Paint Co.; Antonio Garcia, Jr. d/b/a TG Construction, LLC; Rennie Truss d/b/a Truss Construction; Annette Estrella Construction; L&B Roofing, Inc.; Bill Embrey Heating And Air Conditioning Company; Williams Consolidated I, Inc. named herein as Williams Insulation Company of Texas; Jeld-Wen, Inc. d/b/a Wenco Distributors; Champion Window, Inc.; Bexar Electric Company; And Integrated Electrical Services, Inc.; and for such cause of action, would respectfully show unto the court as follows:

I.    Discovery Level

   a) Plaintiffs intend to conduct discovery under Level 3 of Texas Civil Procedure Rule 190.4.

II.   Parties

   a) Plaintiffs are residents of Bexar County, Texas. See Exhibit "A" for a list of Plaintiffs.

   b) Defendant, KB Home d/b/a Kaufman and Broad Home Corp. and a/k/a KB Home, Inc. ("KB Home"), is a Delaware Corporation, publicly traded on the NYSE, who at all times material to this action has engaged in business in Texas, as more specifically described below. Defendant does not presently maintain a place of regular business in Texas and has no designated agent on whom service of citation may be made in this action. The causes of action asserted herein arose from, or are connected with purposeful acts committed by Defendant KB Home in Bexar County, Texas because said Defendant operated and managed a business from which the causes of action asserted herein arose. Defendant has answered and appeared herein. No additional service is necessary at this time.

2

IHIC App. 42

c) Defendant, KB Home Lone Star, Inc. ("KB Lone Star Inc"), is a Texas corporation authorized and doing business in Bexar County, Texas. Defendant has answered and appeared herein. No additional service is necessary at this time.

d) KB Home Lone Star, L.P., f/k/a Kaufman And Broad Lone Star, L.P. ("KB Lone Star LP"), is a Texas limited partnership authorized and doing business in Bexar County, Texas. Defendant has answered and appeared herein. No additional service is necessary at this time.

e) Defendant, Magi Realty, Inc., individually, doing business as Magi Construction, and doing business as "Magi Group" ("Magi"), is a Texas corporation authorized and doing business in Bexar County, Texas. Defendant has answered and appeared herein. No additional service is necessary at this time. The action against Magi is alleged as the prime contracting party and, in the alternative, against Magi as a part of the joint venture with the other defendants named herein.

f) Defendant, Mirasol Joint Venture Team ("Mirasol JV" or "Joint Venture") is a joint venture of several entities, including Magi and other defendants named below. Defendant has answered and appeared herein. No additional service is necessary at this time.

g) Defendant, KBSA, Inc., f/k/a Kaufman And Broad Of San Antonio, Inc. ("KBSA"), is a Texas corporation and is the general partner of KB Lone Star, L.P. KBSA, Inc. has answered and appeared herein. No additional service is necessary at this time.

h) Defendant, KB Home Greater Los Angeles, Inc. ("KB Los Angeles"), a California corporation, who has not yet appeared in this litigation. No additional service is necessary at this time.

3

IHIC App. 43

i) Defendant, KB Home Holdings, Inc. ("KB Holdings"), a California corporation, who has not yet appeared in this litigation. No additional service is necessary at this time.

j) Defendant, Complete Construction Management LLC ("Complete") is a Texas limited liability company. Defendant has answered and appeared herein. No additional service is necessary at this time.

k) Defendant, Rick Rodriguez ("Rodriguez") is a Texas resident. Defendant has answered and appeared herein. No additional service is necessary at this time.

l) Defendant, Gillette Holdings LTD ("Gillette") is a Texas limited partnership. Defendant has answered and appeared herein. No additional service is necessary at this time.

m) Defendant, Ozuna & Associates Engineering, Inc. ("Ozuna") is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

n) Defendant, Texas V&J Construction, Inc., is a Texas corporation. No additional service is necessary at this time.

o) Defendant, Concrete Pumps of Texas Inc., is a Texas corporation. No additional service is necessary at this time.

p) Defendant, Ashley Plumbing Co., Ltd., is a Texas limited partnership. Defendant has answered and appeared herein. No additional service is necessary at this time.

q) Defendant, Ramos Construction, is a Texas corporation. Defendant has been served with process. No additional service is necessary at this time.

r) Defendant, Innovative Concrete Construction, Inc., is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

IHIC App. 44

s) Defendant, James R. Plotts d/b/a American Trimworks, is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

t) Defendant, David Sada d/b/a Sada Roofing, is a Texas resident. Defendant has been served with process and as appeared herein. No additional service is necessary at this time.

u) Defendant, Heery International, Inc., is a Georgia corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

v) Defendant, Vincent Maranto III d/b/a Alamo Stoneworks, is a Texas resident. No additional service is necessary at this time.

w) Defendant, Gavin Morrison d/b/a Morrison & Sons, is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

x) Defendant, N Zapata & Monarch Paint Co., is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

y) Defendant, Antonio Garcia, Jr. d/b/a TG Construction, LLC, is a Texas corporation. Defendant has been served with process. No additional service is necessary at this time.

z) Defendant, Rennie Truss d/b/a Truss Construction, is a Texas resident. Defendant has answered and appeared herein. No additional service is necessary at this time.

aa) Defendant, Annette Estrella Construction is a Texas business. Defendant has answered and appeared herein. No additional service is necessary at this time.

bb) Defendant, L&B Roofing, Inc. is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

5

cc) Defendant, Bill Embrey Heating and Air Conditioning Company, is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

dd) Defendant, Williams Consolidated I, Inc. named herein as Williams Insulation Company of Texas, is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

ee) Defendant, Jeld-Wen, Inc. d/b/a Wenco Distributors, is a Oregon corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

ff) Defendant, Champion Window, Inc., is a Delaware corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

gg) Defendant, Bexar Electric Company, is a Texas corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

hh) Defendant, Integrated Electrical Services, Inc. is a Delaware corporation. Defendant has answered and appeared herein. No additional service is necessary at this time.

III.   Jurisdiction and Venue

a) The amount in controversy is in excess of the minimum jurisdictional limits of the District Court of the State of Texas. This Court has jurisdiction over the parties to this case, and the controversy made the basis of this case.

b) The events made the basis of this lawsuit occurred in whole, or in part, in Bexar County, and Magi's principal office is located in Bexar County. Thus, pursuant to section 15.002 of the Texas Civil Practice & Remedies Code, venue is proper in Bexar County, Texas.

IV.   Background

IHIC App. 46

a) In May 7, 1999 the San Antonio Housing Authority ("SAHA") began the process for awarding contract(s) to one or more developers/contractors to design and build 308 affordable single family homes for low income residents in the Mirasol subdivision in San Antonio, Texas ("Project"). The Project was part of the federally funded Mirasol Hope VI Revitalization Program.

b) As part of an effort to procure a contract to design and build all 308 homes, KB Home (acting as Kaufman and Broad Home Corp.), Magi, Gillette, Ozuna, and Complete entered into a joint venture arrangement by which these entities agreed to collectively pursue the contract as the "Magi Realty, Inc. d/b/a Mirasol Joint Venture Team" (referred to herein as the "Mirasol JV" or the "Joint Venture

c) During the negotiations and bidding process, the Magi and the other defendants represented to SAHA that:

   i) KB Home was a national homebuilder with the financial capability to finance the entire project;

   ii) the homes would be built by KB Home under the management and supervision of their joint venture entity; and

   iii) Magi would provide the principal oversight and supervision because it had project management experience.

d) On December 9, 1999, SAHA signed a "Lump Sum Agreement Between Owner and Design/Builder" ("Design/Build Contract") with the Mirasol Joint Venture under which the Joint Venture agreed to assume responsibility for designing and building the homes for the Project. Thereafter, on February 24, 2000, the Joint Venture entered into an agreement with KB Lone Star LP known as the "Contract Between Design/Builder and Contractor" ("Contractor Agreement"). Under this second agreement, KB Lone Star LP assumed the responsibility for actually constructing the homes for the project. The

7

Design/Build Contract and the Contractor Agreement are collectively referred to as the "Agreements."

e) On January 7, 1999, Defendant Heery entered into a Construction and Project Management Services Agreement with SAHA ("Heery Contract") to provide management services in relation to the project for the design and construction of the Mirasol Homes.

f) Pursuant to the Contractor Agreement, KB Lone Star LP hired numerous subcontractors to perform particular portions of construction. These subcontractors include the following defendants, who are collectively referred to herein as "Subcontractors":

i) Texas V&J Construction, Inc., which performed carpentry work at the Project;

ii) Concrete Pumps of Texas Inc., which performed foundation work at the Project;

iii) Ashley Plumbing Co., Ltd., which performed plumbing work at the Project;

iv) Ramos Construction, which performed carpentry work at the Project;

v) Innovative Concrete Construction, Inc., which performed flatwork and foundation work at the Project;

vi) James R. Plotts d/b/a American Trimworks, which performed finish carpentry work at the Project;

vii) David Sada d/b/a Sada Roofing, which performed roof work at the Project;

viii)    Vincent Maranto III d/b/a Alamo Stoneworks, which performed brick work at the Project;

ix) Morrison & Sons, which performed masonry work at the Project;

x) N Zapata & Monarch Paint Co., which performed paint work at the Project;

xi) Antonio Garcia, Jr. d/b/a TG Construction, LLC, which performed work on the interior and exterior doors at the Project;

xii) Rennie Truss d/b/a Truss Construction, which performed concrete work at the Project;

IHIC App. 48

xiii)   Annette Estrella Construction, was a KB subcontractor that performed carpentry and framing work at the Project;

xiv)   L&B Roofing, Inc., which performed roofing work at the Project;

xv) Bill Embrey Heating and Air Conditioning Company, which performed heating and air conditioning work at the Project;

xvi)   Williams Consolidated I, Inc. named herein as Williams Insulation Company of Texas, which performed insulation work at the Project;

xvii)   Jeld-Wen, Inc. d/b/a Wenco Distributors, which performed work at the Project;

xviii)   Champion Window, Inc., which performed work at the Project;

xix)   Bexar Electric Company, which performed electrical work at the Project; and

xx) Integrated Electrical Services, Inc. which performed work at the Project.

g)   After completion of the Project, and as a result of investigations undertaken in connection with this litigation, Plaintiffs and SAHA have discovered numerous latent, including the following:

i)   the exterior doors to the kitchens and the windows were improperly installed with insufficient nails, flashing, and caulking to guard against moisture intrusion, which instruction defect was discovered in 2007;

ii)   the temperature and pressure release valve drains used to protect against excessive build up of pressure from the hot water heaters were not plumbed out above grade as required by the building code, which construction defect was discovered in 2007;

iii)   insufficient numbers of roofing nails were used and/or were placed incorrectly to secure the shingles to the roofs, which construction defect was discovered in October and November of 2008;

iv)   the incorrect gauge and length of roofing staples were used to affix the roof sheathing to the trusses, which construction defect was discovered in October and November of 2008;

v)   the framing lumber used as bottom plates for the exterior walls was not made of pressure-preservative treated lumber and the framing lumber used for the bottom plates of the interior and exterior walls was not properly affixed to the foundation, which construction defect was discovered in October and November of 2008;

9

IHIC App. 49

vi) the black felt membrane beneath the exterior siding was installed improperly, failing to establish an effective moisture barrier, which construction defect was discovered in October and November of 2008;

vii) the exterior brick veneers were improperly constructed to prevent their collapse and their entrapment of moisture, which construction defect was discovered in October and November of 2008; and

viii)  the driveways and sidewalks were not properly constructed, and the rebar embedded within them was not placed at the proper depth, which construction defect was discovered in October and November of 2008;

h)  A more detailed listing and description of the defects for which Plaintiffs seeks damages are included in numerous expert reports that have been made available to the Defendants. Defendants have been given proper notice of these construction defects.

i)  Based on the number of homes examined and the consistent presence of the construction defects described above, there is a reasonable probability that these construction defects are present in all of the homes.

j)  In 2007, the Mayor of San Antonio, the Honorable Phil Hardberger, directed SAHA to establish and participate in a task force comprised of representatives of SAHA, KB Home, and some of the Mirasol residents who lived in the homes. This task force was known as the "Mirasol Task Force" (the "Task Force") and it was created to investigate and resolve once and for all the construction defects in the homes. Defendant KB Home had a representative on the Task Force who participated on behalf of KB Home, the Mirasol JV, and the other Joint Venture members. KB Home's corporate representative, Carlos Contreras, attended and fully participated in the Task Force's efforts to investigate, inspect, repair and rehabilitate the homes in the Project. The Task Force's costs to repair and rehabilitate the homes were borne by SAHA. In support of the Task Force's efforts, and as a result of independent inspections performed for the Task Force

10