(which failed to reveal the latent construction defects discovered in October and November of 2008), SAHA expended Six Million, Six Hundred and Seventy Eight Thousand and Thirty Three Dollars ($6,678,033), to repair and rehabilitate the homes in the Mirasol Project.

## V.   CAUSES OF ACTION

### a) Breach of Express and Implied Warranties

i) The Mirasol JV, it's members, and KB Lone Star LP expressly and impliedly warranted that the homes would:

(1) be built in a good and workmanlike manner;

(2) be built to a condition suitable for human habitation;

(3) comply with all applicable building codes;

(4) be constructed according to the terms of the Agreements; and

(5) be constructed under proper supervision. .

ii) The Subcontractors expressly and impliedly warranted that all work would be performed:

(1) in a good and workmanlike manner;

(2) in accordance with all terms of the Agreements;

(3) under proper supervision; and

(4) in accordance with all applicable building codes.

iii) The conduct and latent defects described above constitute a breach of the express and implied warranties identified above, which proximately caused Plaintiffs damages.

### b) Breach of Contract

i) Based on the foregoing facts, the Mirasol JV breached the following provisions of the Design/Build Contract:

(1) Paragraph 3.2.9, requiring that all construction will be free from faults and defects and conform to the requirements of the contract documents;

(2) Paragraph 3.2.15.3, requiring that the Joint Venture was to give SAHA access and the right to examine pertinent books, documents, papers or other records;

(3) Paragraph 3.2.19, requiring that the Joint Venture was to verify that the work performed under the Contract would be done in a good and workmanlike manner;

(4) Paragraph 3.2.6, requiring that the Joint Venture was to be responsible for all construction means, methods, techniques, sequences, procedures and to coordinate all portions of the work under the agreement;

(5) Paragraph 3.2.2, requiring that the Joint Venture was to transfer certain written warranties to SAHA;

(6) Paragraph 3.6.1, requiring that the Joint Venture was to protect Plaintiffs through its warranty to SAHA against defects and deficiencies in the execution and performance of the work. The Defendants would administer the work required by the Contract Documents, review and approve shop drawings and other submittals for conformance to the requirements of the Contract documents and promptly notify SAHA in writing of any defects or deficiencies in the work.

(7) Paragraph 4.1, requiring that the Joint Venture was to perform their obligations consistent with reasonable skill and care.

(8) Paragraph 3.2.8, requiring that the Joint Venture was to be responsible for correcting non-conforming work.

12

ii) Based on the foregoing facts, KB Lone Star LP breached the following provisions of the Contractor Agreement:

(1) Paragraph 3.3.1, requiring KB Lone Star LP to competently supervise and direct the Subcontract Work;

(2) Paragraph 3.3.2, requiring KB Lone Star LP to be responsible to SAHA and ultimately to Plaintiffs for acts and omissions of its employees, subcontractors, the subcontractors' agents and employees, and other persons or entities performing portions of the subcontracted work;

(3) Paragraph 3.5, requiring KB Lone Star LP to issue the following warranties to SAHA and ultimately to Plaintiffs, who were subsequent purchasers and the intended third-party beneficiaries of said contract:

(a) The homes would be of good quality;

(b) The homes would be of the quality of subdivisions in San Antonio for similarly priced homes;

(c) The quality of the homes would not be less than what is usual and customary within other subdivisions KB had developed in Texas (Subcontract, ¶ 3.5.);

(4) Paragraph 5.3.1, requiring each of KB Lone Star LP's subcontractors to assume all obligations and responsibilities assumed by KB Lone Star LP toward SAHA and ultimately to Plaintiffs;

(5) Paragraph 5.3.2, requiring each subcontract between KB Lone Star LP and subcontractors to require that all work be performed in a good and workmanlike manner and in accordance with the contract documents; and

(6) Paragraph 12.1, requiring KB Lone Star LP to promptly correct defective work.

13

c) Based on the foregoing facts, Heery breached the following provisions of the Heery

Contract by failing to:

i) monitor the performance of other contractors, controlling schedules, and overseeing financial accounts. (§6.1.1);

ii) identify and reporting to SAHA defects and omissions in the design. (§6.1.2.);

iii) review the design for defects, errors and omission (§6.1.2.);

iv) provide a minimum of a full-time (40 hours per week) on-site experienced general inspector to inspect all construction work of the general construction contractor and his subcontractors to ensure full compliance with the contract requirements (§9.9.1);

v) provide additional technically qualified inspectors for specific disciplines on a temporary basis as needed to inspect civil, architectural, structural, mechanical, plumbing, electrical, fire safety, hazardous material, and other specialized construction. Inspection shall include, but is not limited to, assuring surfaces, materials, procedures and conditions are in compliance with contract requirements and testing performed by the contractor or consultants indicate compliance with the contract requirement. (§9.9.1);

vi) promptly notify the construction contractor of any material, process, or workmanship that does not meet requirements of the construction contract, advising if the contractor fails to promptly correct defects and omissions, or fails to promptly remove, replace or correct unsatisfactory work. (§9.9.2);

vii) establish the substantial completion date, preparing a draft substantial completion letter, and forwarding it for processing. (§9.9.4);

viii) accomplish formal inspections with personnel from the construction contractor, SAHA, and other parties as appropriate. (§9.9.5);

ix) inspect and testing all systems pertaining to each phase of the project as the work progresses. (§9.9.6);

x) after final inspection, insist that the construction contractor immediately correct the final defects and omissions, and maintaining a strong follow-up until all items are resolved. (§9.9.9.); and

xi) verify the qualifications of specialists employed by the construction contractor and subcontractors. (§9.18).

d) Additionally, Defendants failed to comply with the contractual obligations listed above

by failing to construct the homes in a good and workmanlike manner, in compliance with

14

the contract documents, in conformity with the implied and expressed warranties identified in this pleading, and in compliance with all applicable building codes.

i) With respect to the Design/Build Contract, Contractor Agreement, Heery Contract, and all agreements with the Subcontractors:

(1) each is a valid and enforceable agreement;

(2) Plaintiffs are intended and/or express third party beneficiaries;

(3) Plaintiffs and SAHA fully performed all obligations;

(4) the breaches described above were material; and

(5) the breaches described above proximately caused Plaintiffs' injuries.

e) **Deceptive Trade Practices Act**

i) Further and in the alternative, Plaintiffs would show that all Defendants except Heery engaged in deceptive trade practices in violation of Texas Business and Commerce Code, Deceptive Trade Practices Act § 17.46 et seq. ("DTPA"). Because these violations were committed knowingly or intentionally the violations are tantamount to fraud and this cause of action is not subject to the Residential Construction Liability Act. Specifically, the following provisions of the DTPA were violated:

(1) Section 17.46(b)(5) because these defendants represented that the properties had sponsorship, approval, characteristics, uses or benefits in which they did not have.

(2) Section 17.46(b)(7) because these defendants represented that the properties were of a particular standard, quality, or grade, but were of another;

(3) Section 17.46(b)(23) because these defendants concealed and/or failed to disclose information concerning the homes which was known to the Defendants at the

15

time Plaintiffs entered into transactions to purchase their homes.  Failure to disclose such information was intended to induce Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed.

ii) Defendants also breached warranties and acted unconscionably in violation of Section 17.50 (a)(2) and (3) of the DTPA.

iii) These violations were committed knowingly and/or intentionally and were a producing and proximate cause of the damages sustained by Plaintiffs.

f) **Fraud**

i) Upon information and belief, the Mirasol Joint Venture and KB Lone Star never intended to build the homes pursuant to the terms of the Design/Build Contract or the Contractor Agreement. Instead, these co-conspirators intended from the outset to materially deviate from the Agreements and to build lower quality homes than required to maximize the profit generated by the project. Additionally, upon information and belief, the Subcontractors agreed to participate in the deception in exchange for being awarded subcontract work by agreeing to perform the construction work in a manner below that required by the Agreements.

(1) SAHA materially relied on the representations that the construction would be performed in accordance with the terms of the Agreements and would not have executed the Agreements but for these false representations.

(2) As a result of this intentional deception, Plaintiffs were injured because the homes constructed in the Mirasol subdivision universally contained latent defects in construction as described above.

16

IHIC App. 56

ii) Further and in the alternative, Defendants committed fraud by concealing and failing to disclose material within Defendants knowledge where Defendants knew that the Plaintiffs were ignorant of those facts, and did not have equal opportunity to discover the truth. Defendants intended to induce the Plaintiffs to purchase the homes in question by failing to disclose said facts, and the Plaintiffs suffered damages as a result of acting without knowledge of the undisclosed facts. These acts and omissions of the Defendants were a producing and proximate cause of the damages sustained by Plaintiffs.

iii) Further and in the alternative, Plaintiffs would show that Defendants engaged in fraudulent real estate transactions in violation of the Tex. Bus. & Com. Code § 27.01 et. seq. Defendants made intentional misrepresentations in an effort to entice Plaintiffs into purchasing the Homes. As a direct, proximate, and producing result of said misrepresentations, failure to disclose and concealment, Plaintiffs entered into contracts for the purchase of the homes and as a result, suffered damages as described below. Plaintiffs would further show that Defendants are liable for securing execution of a document by fraud, and are therefore subject to exemplary damages in excess of any statutory punitive damages cap, pursuant to Texas law.

g) Conspiracy

i) The Mirasol JV (both collectively and its members individually), KB Lone Star LP, Rodriguez, and the other Defendants conspired to defraud Plaintiffs and to fraudulently induce SAHA to enter into the Agreements knowing that they had no intention of building the homes according to the terms of the Agreements, applicable building codes and other laws. Additionally, the Subcontractors purposefully acted

17

to further the conspiracy by agreeing to perform the work in a substandard manner in exchange for being awarded the subcontracts. As a result, these defendants engaged in a combination of two or more to accomplish an unlawful purpose. These defendants had a meeting of the minds and one or more acted in furtherance of the agreed course of action. As a proximate result, Plaintiffs were injured.

ii) Wherever herein it is alleged that a Defendants did or failed to do any act or thing, it is meant that the Defendants performed or failed to perform such act or thing, individually, through each other, its partners, directors, officers, agents, representatives, servants and/or its employees in the course of their employment and that Defendants were engaged in a joint venture, joint enterprise, common purpose, with the aid, assistance, encouragement, participation, and concert of action of each other, were authorized to act or were the agent of each other, and Defendants were authorized to and did in fact act on behalf of each Defendant and/or ratified the conduct of the other. Defendants were also engaged in a partnership and/or conspiracy:

(1) Defendants assisted and participated with each other in causing the breach of duties alleged in this pleading;

(2) Each Defendant's assistance and participation, separate from the other's acts, breached Defendant's duty to Plaintiffs;

(3) Defendants' assistance and participation was a substantial factor in causing the breach of the duties alleged in this pleading;

(4) Defendant agreed to construct and sell the Homes in a manner which was likely to cause serious damage to Plaintiff and certain harm to a large number of people.

iii) Defendants' own acts in carrying out the agreement with each other were intentional;

18

## VI.   Vicarious Liability

a)  KB Lone Star Inc. is jointly and severally liable for all liability of KB Lone L.P. because KB Lone Star Inc. is the general partner of KB Lone Star L.P.

b)  Each member of the Mirasol JV are jointly and severally liable for the liability of the Mirasol JV, including Magi, KB Home, Gillette, Ozuna, and Complete.

c)  The Subcontractors are jointly and severally liable for all damages because each is a co-conspirator in the fraud described above.

## VII.   Damages

a)  Plaintiffs seek judgment against Defendants, jointly and severally, for the damages resulting from or proximately caused by the conduct described above in an amount within the jurisdictional limits of this court, including damages for:

i)   the reasonable cost of repairs necessary to cure the construction defects;

ii)  the reasonable and necessary cost for the replacement or repair of any damaged goods;

iii) reasonable and necessary engineering and consulting fees;

iv)  the reasonable expenses of temporary housing and alternative living expenses reasonably necessary for residents of the homes displaced during the   repair period;

v)   the reduction in current market value;

vi)  reasonable and necessary attorneys' fees; and

vii) mental anguish damages resulting from the fraud and all other damages allowed by law.

b)  Furthermore, Plaintiffs assert that the acts and/or omissions of the Defendants constitute malice/gross negligence. There was a specific intent by Defendants and their agents and employees to cause substantial injury to the Plaintiffs; or an act or omission by the Defendants employees (i) which when viewed objectively from the standpoint of

19

Defendants agents, servants and employees at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others; and (ii) of which Defendants agents, servants, employees had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Plaintiffs, therefore, plead for an amount of punitive and/or exemplary damages the jury deems reasonable under the circumstances which is sufficient to deter similar conduct in the future by Defendants, and those similarly situated, which is in excess of the minimum jurisdictional requirements of the Court.

## VIII.  Felonious Conduct

a) Plaintiffs would further show that Defendants allowed their Vice Principals to engage in harm to Plaintiffs resulting from criminal acts as provided for in Texas Civil Practices & Remedies Code § 41.008.

b) Accordingly, the Plaintiffs are not limited to the amount of punitive recovery from the Defendants.

## IX.  Attorney Fees

a) As to Defendants, Plaintiffs are entitled to recover reasonable and necessary attorney fees under Paragraph 11.8 of the Design/Build Contract, paragraph 3.15.1 of the subcontracts, under Chapter 38 of Texas Civil Practice and Remedies Code and Chapter 27 of the Texas Property Code.

## X.  Demand for Jury

a) Plaintiffs demand a jury trial and tenders the appropriate fee with this petition.

## XI.  Conditions Precedent

IHIC App. 60

a) All conditions precedent to the relief requested in this petition have occurred, been performed, been waived or are excused by law.

## XII. Statute of Limitations

a) If the statute of limitations applies to any claims, Plaintiffs would show that the discovery rule as that term is understood in the law is applicable to this case. Until Plaintiffs or other homeowners knew or by exercising reasonable diligence should have known of the specific facts giving rise to the claims and injuries governed by the discovery rule, the injury was difficult to discover or alternatively inherently undiscoverable and objectively verifiable.

b) Plaintiffs in the alternative would show that limitations was tolled because of Defendants' fraud.

## XIII. Prayer

WHEREFORE, Plaintiffs request that on final hearing Plaintiffs have judgment against Defendants, jointly and severally, for the following:

a) Actual and compensatory damages in an amount in excess of the Court's minimal jurisdiction to be determined by the jury;

b) Exemplary damages;

c) Reasonable and necessary attorney fees;

d) Prejudgment and postjudgment interest as provided by law;

e) Costs of suit;

f) Such other and further relief, in law and in equity, to which Plaintiffs may be justly entitled.

IHIC App. 61

Respectfully submitted,

**THE HERRERA LAW FIRM, INC.**
111 Soledad Street, Suite 1900
San Antonio, Texas 78205
Telephone:     (210) 224-1054
Facsimile:     (210) 228-0887

By: _____
    FRANK HERRERA, JR.
    State Bar No. 09531000
    LAURA E. GUTIERREZ TAMEZ
    State Bar No. 00793869

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the above and foregoing document to all counsel of record on this the 10th day of February 2011, pursuant to T.R.C.P. 21a.

_____
FRANK HERRERA, JR.

22

## PLAINTIFFS

| Homeowner Names | Address | City, State, Zip |
|---|---|---|
| 1 Jesse Arias and Mary Arias | 1102 NW 27th Street | San Antonio, Texas 78228 |
| 2 Thomas Arispe | 1615 NW 28th Street | San Antonio, Texas 78228 |
| 3 Simon Arriaga and Lilia Arriaga | 403 Precious Drive | San Antonio, Texas 78237 |
| 4 Luis Cintron and Eloisa Cintron | 432 Precious Drive | San Antonio, Texas 78237 |
| 5 Maria Cisneros | 1519 NW 26th Street | San Antonio, Texas 78228 |
| 6 Jesse DeHoyos and Marie DeHoyos | 138 Villa Grande | San Antonio, Texas 78228 |
| 7 Mike Diaz and Michelle Diaz | 1706 Villa Placer | San Antonio, Texas 78237 |
| 8 Jose Garcia and Janet Garcia | 406 Precious Drive | San Antonio, Texas 78237 |
| 9 Virginia Garza | 1110 NW 27th Street | San Antonio, Texas 78228 |
| 10 Brenda Gonzales | 2819 Villa Norte | San Antonio, Texas 78228 |
| 11 Flor Sanchez-Guerra | 1603 NW 26th Street | San Antonio, Texas 78228 |
| 12 Vincente Gutierrez and Sonia Gutierrez | 1503 NW 26th Street | San Antonio, Texas 78228 |
| 13 Louie Hernandez and Rebeca Hernandez | 451 Precious Drive | San Antonio, Texas 78237 |
| 14 Jessie Kirby | 131 Villa Grande | San Antonio, Texas 78228 |
| 15 Tony Lopez and Edna Lopez | 142 Villa Grande | San Antonio, Texas 78228 |
| 16 Janie Martinez | 1210 NW 27th Street | San Antonio, Texas 78228 |
| 17 Edith Melendez | 466 Precious Drive | San Antonio, Texas 78237 |
| 18 Sonia Montalvo | 1522 Villa Flores | San Antonio, Texas 78237 |
| 19 Francisco Morales | 123 Villa Grande | San Antonio, Texas 78228 |
| 20 Ruben Morales and Orfilia Morales | 431 Precious Drive | San Antonio, Texas 78237 |
| 21 Jose Luis Navejar and Peggy Navejar | 1114 NW 27th Street | San Antonio, Texas 78228 |
| 22 Julia Pena | 1623 NW 26th Street | San Antonio, Texas 78228 |
| 23 Adriana Perez | 2607 Villa Norte | San Antonio, Texas 78228 |
| 24 Juan Ramirez and Mary Ramirez | 2815 Villa Norte | San Antonio, Texas 78228 |
| 25 Irma Ramos | 1514 Villa Flores | San Antonio, Texas 78237 |
| 26 Juan Rodriguez and Alisa Rodriguez | 103 Villa Arboles | San Antonio, Texas 78228 |
| 27 Mary Rodriguez | 1503 Villa Flores | San Antonio, Texas 78237 |
| 28 Steve Salazar and Mary Salazar | 139 Villa Grande | San Antonio, Texas 78228 |
| 29 Albert Sanchez and Norma Sanchez | 1018 NW 27th Street | San Antonio, Texas 78228 |
| 30 Jesus Soto and Rosalinda Soto | 127 Villa Grande | San Antonio, Texas 78228 |
| 31 Esther Vazquez | 1510 Villa Flores | San Antonio, Texas 78237 |
| 32 Randy Zaragoza and Carol Zaragoza | 1607 NW 26th Street | San Antonio, Texas 78228 |

EXHIBIT "A"

| Homeowner Names | Address | City, State, Zip |
|---|---|---|
| | 8-Jun-09 | |
| 33 Jerry Benavides and Yolanda Benavides | 515 Precious Drive | San Antonio, Texas 78237 |
| 34 David Garcia and Maria Garcia | 426 Precious Drive | San Antonio, Texas 78237 |
| 35 Linda Garcia | 118 Villa Grande | San Antonio, Texas 78228 |
| 36 Guadalupe Travieso and Sylvia Garcia | 414 Precious Drive | San Antonio, Texas 78237 |
| 37 Petra Maldonado and Lila Maldonado | 1527 NW 26th Street | San Antonio, Texas 78228 |
| 38 Agapito Oviedo and Raquel Oviedo | 511 Precious Drive | San Antonio, Texas 78237 |
| 39 Marcos Quinones and Gloria Quinones | 419 Precious Drive | San Antonio, Texas 78237 |
| 40 Edward Ramos and Anna Ramos | 143 Villa Grande | San Antonio, Texas 78228 |
| 41 Ray Sambrano and Paula Sambrano | 2603 Villa Norte | San Antonio, Texas 78228 |
| 42 Esmeralda Sanchez | 415 Precious Drive | San Antonio, Texas 78237 |
| 43 Stella Wise | 119 Villa Grande | San Antonio, Texas 78228 |
| 44 Adelita Vadillo | 2611 Villa Norte | San Antonio, Texas 78228 |
| 45 Jose Flores and Maria Flores | 436 Precious Drive | San Antonio, Texas 78237 |
| | 28-August-09 | |
| 46 Lewis Caballero and Maria Caballero | 142 Villa Arboles | San Antonio, Texas 78228 |
| 47 Yolanda Castro | 2623 Villa Norte | San Antonio, Texas 78228 |
| 48 Eliseo Cuevas and Naomi Caelano | 435 Precious Drive | San Antonio, Texas 78237 |
| 49 Bernice Martinez | 422 Precious Drive | San Antonio, Texas 78237 |
| 50 Julia Rodriguez | 303 Villa Rosa | San Antonio, Texas 78237 |
| | 16-October-09 | |
| 51 Jorge Lopez and Gloria Lopez | 1122 NW 27th Street | San Antonio, Texas 78228 |
| 52 James McIntyre and Andrea McIntyre | 135 Villa Grande | San Antonio, Texas 78228 |
| 53 Amelia Sanchez | 407 Precious Drive | San Antonio, Texas 78237 |
| 54 James Hansler and Michelle Hansler | 1511 Villa Flores | San Antonio, Texas 78237 |
| 55 Fernando Cruz and Marlene Cruz | 106 Villa Grande | San Antonio, Texas 78228 |
| | 18-December-09 | |
| 56 Denise Sotello | 1118 NW 27th Street | San Antonio, Texas 78228 |
| 57 Eric Garcia and Jennifer Juarez | 115 Villa Grande | San Antonio, Texas 78228 |
| 58 Juan Ahumada and Maria Ahumada | 107 Villa Grande | San Antonio, Texas 78228 |
| 59 Nicholas Trevino and Rebecca Trevino | 146 Villa Grande | San Antonio, Texas 78228 |
| 60 Francisco Martinez and Sonia Martinez | 502 Precious Drive | San Antonio, Texas 78237 |
| | May-10 | |
| 61 Martin C. Gonzales, Jr. | 1627 NW 26th Street | San Antonio, Texas 78228 |
| 62 Marcio Castillo and Rebeca Santos | 114 Villa Arboles | San Antonio, Texas 78228 |
| 63 Jacob San Miguel and Dolores San Miguel | 1702 Villa Placer | San Antonio, Texas 78237 |
| 64 Jose Sauceda and Joyce Sauceda | 607 Villa Linda | San Antonio, Texas 78237 |
| 65 Adolfo Salas and Laura Salas | 1202 NW 27th Street | San Antonio, Texas 78228 |
| 66 Lamar Garcia | 1526 Villa Flores | San Antonio, Texas 78237 |

**EXHIBIT "A"**

Filed
11 February 10 A11:59
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Jennifer Contreras

CAUSE NO. 2009-CI-08711

| | | |
|---|---|---|
| JESSE ARIAS and MARY ARIAS; THOMAS ARISPE, JR.; and LUIS CINTRON and ELOISA CINTRON, et al. | § § § § | IN THE DISTRICT COURT |
| v. | § § | BEXAR COUNTY, TEXAS |
| K B HOME; KB HOME LONE STAR, INC. F/K/A KAUFMAN & BROAD LONE STAR, L.P.; and MAGI REALTY, INC. d/b/a MIRASOL JOINT VENTURE TEAM | § § § § § § | 37Th JUDICIAL DISTRICT |

## SAN ANTONIO HOUSING AUTHORITY'S NINTH AMENDED PETITION AND FIRST AMENDED COUNTERCLAIM

San Antonio Housing Authority ("SAHA") complains of the defendant parties named below.

### CONSOLIDATION

By order of the Honorable Judge David Berchelmann, Jr. on January 7, 2010 Cause No. 2007-CI-05258 and all cases listed in Exhibit "A" of that Order which were pending in the 408th Judicial District Court of Bexar County, Texas were transferred to the docket of the 37th Judicial Court of Bexar County, Texas and consolidated into Cause No. 2009-08711 (merging all of SAHA's claims, however named, into SAHA's claims as Plaintiff against the defendant parties named in this pleading).

### I. DISCOVERY LEVEL

1. SAHA intends to conduct discovery under a tailored discovery control plan under Texas Civil Procedure Rule 190.4.

IHIC App. 65

## II. PARTIES

The Plaintiffs are:

2.      SAHA is a public body corporate and politically organized under the laws of the State of Texas.

3.      The homeowner plaintiffs named in their petition who are identified on Exhibit "A".

The Defendants are:

4.      Mirasol Joint Venture or Mirasol Joint Venture Team is a joint venture duly organized in the State of Texas ("Defendants Joint Venture") which includes Defendants MAGI and KB Home a/k/a KB Home, Inc. among its members.  Mirasol Joint Venture is before the Court for all purposes.

5.      MAGI Realty, Inc., individually and doing business as "MAGI Construction" and doing business as "MAGI Group", a Texas corporation authorized and doing business in Bexar County, Texas, are before the Court for all purposes.  The action against MAGI is alleged as the prime contracting party and, in the alternative, against MAGI as a part of the joint venture with the other defendants named herein.

6.      KB Home a/k/a KB Home Inc., a/k/a KB Home, Inc., a Delaware Corporation is before the Court for all purposes.

7.      KB Home Lone Star, Inc., a Texas corporation and the successor to KB Home Lone Star L.P. f/k/a Kaufman & Broad Lone Star, L.P., a Texas limited partnership, is before the Court for all purposes.

2

IHIC App. 66

8.     KBSA, Inc. f/k/a Kaufman and Broad of San Antonio, Inc., a Texas corporation, is before the Court for all purposes

9.     KB Home Greater Los Angeles, Inc., a California corporation who has not been served and has not yet appeared in this litigation and may be served with service of process at the following address: KB Home Greater Los Angeles, Inc., David B. Simons, 10990 Wilshire Blvd., 7th Floor, Los Angeles, CA 90024.

10.    KB Home Holdings, Inc., a California corporation, who has not yet appeared in this litigation, and may be served with service of process at the following address:  KB Home Holdings, Inc., Corporation Service Co. d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

11.    Gillette Holdings Ltd. a Texas corporation, is a member of the Defendants Joint Venture and is before the Court for all purposes.

SAHA does not complain specifically of any acts or omissions on the part of Gillette Holdings, Ltd., but looks to this Defendant only to the extent that it is vicariously, jointly and severally liable for the liabilities of the Defendants Joint Venture as one of its members as a result of the acts and omissions of MAGI and KB.

12.    Complete Construction Management, LLC a Texas Limited Liability company is a member of the Defendants Joint Venture and is before the Court for all purposes

SAHA does not complain specifically of any acts or omissions on the part of Complete Construction Management LLC, but looks to this Defendant only to the extent

3

that it is vicariously, jointly and severally liable for the liabilities of the Defendants Joint Venture as one of its members as a result of the acts and omissions of MAGI and KB.

13.     J. Rick Rodriguez, Jr., an individual is the principal owner of MAGI Realty, Inc. and Gillette Holdings LTD, members of the Defendants Joint Venture and Complete Construction Management LLC, is before the Court for all purposes

14.     All of the KB related entities identified above are collectively referred to herein as "KB." The Defendants Joint Venture, MAGI, the KB related entities, the other members of Defendants Joint Venture, and Defendant J. Rick Rodriguez, Jr. are collectively referred to herein as the "Defendant Parties."

15.     Heery International, Inc. ("Defendant Heery") a Georgia corporation and is before the Court for all purposes.

### III. JURISDICTION

16.     The amount in controversy is within the jurisdictional limits of this Court. This Court has jurisdiction over the parties to this case, and the controversy made the basis of this case.

### IV. VENUE

17.     The events made the basis of this lawsuit occurred in whole, or in part, in Bexar County, Texas. MAGI's principal office is located in Bexar County, Texas. Venue is proper in Bexar County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.002.

### V. FACTS

18.     On or about May 7, 1999, SAHA issued a request for qualifications seeking qualified persons or entities to propose to design and build 270 affordable single family

4

homes in San Antonio, Texas. These homes were to be built as the very first affordable housing project to be constructed under the Federal government's new Hope VI Revitalization Program.

19.    As part of an effort to procure a contract, the Defendant Parties, acting through the Defendants Joint Venture, responded to SAHA's request for qualifications stating that KB Home and MAGI, among the other joint venture members, had entered into joint venture known as the "Marisol [sic] Joint Venture Team" to pursue SAHA's award of a contract (the "Contract") for the development of the Mirasol subdivisions and the design and construction of the homes in the subdivisions (the "Project"). The Magi and other defendants represented to SAHA: (a) that KB Home, as a member of the Defendants Joint Venture, was a national homebuilder with the financial capability to finance the entire Project; (b) that the homes would be built by KB Home based on the Contract documents to be specifically prepared for the Project; (c) that the homes would be built by KB Home under the management and supervision of their joint venture entity, and specifically MAGI as a principal member of their joint venture who had project management experience; (d) the homes would be built under the specification attached to the RFQ (Kaufman and Broad Corp. is identified in the RFQ and Lump Sum Agreement with MAGI, a member of the Joint Venture and general contractor and participate in the Lump Sum Agreement); (e) introduced a process to conceal their true intent to build typical KB houses and not to build to contract specifications and drawings. This "value engineering" series of meetings in 1999 and presentation of documents, specifications and drawings, was used to conceal their true intent to build typical KB houses. They falsely presented specifications and drawings as

5

building standards for KB's construction of the houses, knowing KB would not use such specifications and drawings. KB intended to use materials and methodologies not compliant with the express requirements of the applicable codes, the specifications and drawings submitted to SAHA. KB and the MJV collectively and its members individually, intended to cheapen the houses and intentionally and or through knowingly failing to select and supervise subcontractors created latent defects, substandard quality and houses which failed to meet applicable codes, manufacturer requirements or the contract specifications and drawings (even add again not good and workman like quality); (f) falsely represented 1) prior to entering into the Lump Sum Agreement, that a licensed architect would prepare specifications and drawings and that those documents would be used to construct the houses, 2) during construction and upon substantial completion and thereafter falsely represented that the houses KB built were constructed in compliance with the architect's required specifications and drawings, the express requirements of the applicable codes and manufacturers' requirements; and (g) falsely represented that they would select experienced subcontractors and supervise and inspect construction and the procedures and methodologies used by subcontractors to ensure compliance with the contract documents, the express requirements of the applicable codes, the architects specifications and drawings and the requirements of the manufacturers of the products used in the construction.

20.     However, MAGI had little or no project management experience, and only acted as a front for KB. MAGI never did, and never intended to do, anything to manage or supervise the work of KB. MAGI became a mere tool of KB to get the Contract for the Project. The Defendant Parties, acting through the Defendants Joint Venture, knowingly

built the homes with numerous latent defects described below. The Defendant Parties knowingly delivered the homes in a substandard condition, built them with shoddy construction practices, and left in them numerous construction defects that resulted from their lack of proper supervision of the construction work and their substantial deviations from the Contract documents, applicable building codes, good and workmanlike building practices, and the customary standards of quality in the building industry. The Defendant Parties' conduct was undertaken intentionally and fraudulently to conceal their shoddy workmanship and to maximize their profits.

21. The Defendant Parties expressly and impliedly warranted that the Project homes would be built in a good and workmanlike manner, that they would be suitable for human habitation, and that they would be constructed according to applicable building codes and under proper supervision.

22. On or about December 10, 1999, SAHA and the Defendants Joint Venture executed the Contract for the Defendants Joint Venture to develop the Project and to design and build the homes in the Project. By subsequent change order, the parties to the Contract agreed that only 247 homes, instead of 270, would be designed and built for the Project. Of these 247 homes, 246 remain in the Project after one of the homes was destroyed by fire.

23. The Contract is incorporated herein by reference. Under the Contract, the Defendant Parties, through the Defendants Joint Venture, agreed, among other things:

> (a) The Defendant Parties were responsible to SAHA for their acts and omissions as well as those of their subcontractors, and their agents and employees, including the Design Professionals, in performing the work under the Contract. (Contract ¶ 1.2.6, 7.6, 11.12.)

1575771.1\006783.000001

(b)    SAHA was the intended third-party beneficiary of "all contracts for design or engineering services, all subcontracts, purchase orders, and other agreements between the Design Builder and third parties," including that one "Contract Between Design-Builder and Contractor," executed on March 2, 2000, by J. Rick Rodriguez on behalf of MAGI Realty Inc., d/b/a Mirasol Joint Venture Team, and executed on February 24, 2000 by Robert F. Buthod on behalf of Kaufman and Broad Lone Star, L.P., which contract the Defendant Parties awarded to KB Lone Star to perform the work, as well as all other contracts for design or engineering services, all subcontracts, purchase orders and other agreements between the Defendant Parties and others. (Contract ¶ 1.3.3.)

(c)    The Defendant Parties were responsible for correcting non-conforming work. (Contract, ¶ 3.2.8.)

(d)    All construction would be free from faults and defects and conform to the requirements of the contract documents. (Contract, ¶ 3.2.9.)

(e)    SAHA would have access to and the right to examine all pertinent books, documents, papers or other records. (Contract, ¶ 3.2.15.3.)

(f)    The Defendant Parties would verify that the work was performed in a good and workmanlike manner. (Contract, ¶ 3.2.19.)

(g)    The Defendant Parties would be responsible for all construction means, methods, techniques, sequences, procedures and to coordinate all portions of the work under the Contract. (Contract, ¶ 3.2.6.)

(h)    The Defendant Parties' written warranty to SAHA would be assignable. (Contract, ¶ 3.5.3.)

(i)    The Defendant Parties would protect SAHA against defects and deficiencies in the execution and performance of the work, administer the work required by the Contract Documents, review and approve shop drawings and other submittals for conformance to the requirements of the Contract Documents and promptly notify SAHA in writing of any defects or deficiencies in the Work. (Contract, ¶ 3.6.1.)

(j)    The Defendant Parties would perform the obligations of the Defendants Joint Venture consistent with reasonable skill and care. (Contract, ¶ 4.1.)

(k)    The Defendant Parties would indemnify and hold SAHA harmless from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the work ... to the extent caused by their negligent acts or omissions. (Contract, ¶ 11.12.1.)

8

24.   After the Contract was executed, the Defendants Joint Venture, acting through MAGI on behalf of and doing business as the "Mirasol Joint Venture Team," entered into the "Contract Between Design-Builder and Contractor" with KB's local Texas subsidiary, Kaufman and Broad Lone Star, L.P. to construct the Project and the homes. The "Contract Between Design-Builder and Contractor" was executed on or about February 24, 2000.

25.   The "Contract Between Design-Builder and Contractor" is incorporated herein by reference. Under the "Contract Between Design-Builder and Contractor", Third Party Defendant KB Lone Star, Inc. (f/k/a Kaufman and Broad Lone Star, L.P.) agreed with the Defendants Joint Venture that, among other things, it would build the homes as the "Contractor" and as such it would be responsible for each of the following obligations:

(a)   To perform the Contract Work in accordance with the Contract Documents. (Subcontract ¶ 3.1.2.)

(b)   To assure that the Contract Documents "are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations." (Subcontract, ¶ 3.2.2.)

(c)   To competently supervise and direct the Contract Work. (Subcontract, ¶ 3.3.1.)

(d)   To be responsible to SAHA for acts and omissions of its employees, subcontractors and their agents and employees, and other persons or entities performing portions of the Contract Work "for or on behalf of KB Lone Star or any of its subcontractors." (Subcontract, ¶ 3.3.2.)

(e)   To issue certain warranties to SAHA as follows: (1) The homes would be of good quality; (2) The homes would be of the quality of subdivisions in San Antonio for similarly priced homes; (3) The quality of the homes would not be less than what is usual and customary within other subdivisions KB had developed in Texas. (Subcontract, ¶ 3.5.)

(f)   To indemnify, protect, defend and hold harmless SAHA from and against certain matters, including but not limited to claims, damages,

9

losses, liens, causes of action, suits, judgment and expenses, including attorneys' fees directly or indirectly arising out of, caused by or resulting from (in whole or in part) (1) the Contract Work or (2) any act or omission of Contractor, any Subcontractor, anyone directly or indirectly employed by them or anyone they control or exercise control over and other matters. (Subcontract, ¶ 3.15.1.)

(g)   To require each of KB's subcontractors, to assume all obligations and responsibilities assumed by KB toward SAHA. (Subcontract, ¶ 5.3.1.)

(h)   To require in each subcontract between KB and its subcontractors that all work would be performed in a good and workmanlike manner and in accordance with the contract documents. (Subcontract, ¶ 5.3.2.)

(i)    To promptly correct defective work. (Subcontract, ¶ 12.1.)

26.    KB also issued and extended an express warranty for each of the homes in the Project, which warranty is incorporated herein by this reference.

27.    KB hired various subcontractors to perform work at the Project, the nature of which involved one or more the construction defects complained of herein. SAHA alleges that the following subcontractors who acted under the direction and control of the Defendants' Joint Venture, over whom the Defendants' Joint Venture had the right to control, and for whose conduct the Defendants' Joint Venture are liable, improperly performed portions of the work on the homes that resulted in the construction defects and resulting damages complained of herein:

(a)   Vincent Maranto d/b/a Alamo Stoneworks was a subcontractor that performed brick work at the Project;

(b)   James R. Plotts d/b/a American Trimworks was a subcontractor that performed finish carpentry work at the Project;

(c)   Annette Estrella Construction was a subcontractor that performed carpentry and framing work at the Project;

(d)   L&B Roofing, Inc. was a subcontractor that perform roofing work at the Project;

(e)     Ashley Plumbing Company, Ltd. was a subcontractor that performed plumbing work at the Project;

(f)     Concrete Pumps of Texas, Inc. was a subcontractor that performed foundation work at the Project;

(g)     Innovative Concrete Construction, Inc. was a subcontractor that performed flatwork and foundation work at the Project;

(h)     Gavin Morrison d/b/a Morrison & Sons was a subcontractor that performed masonry work at the Project;

(i)     N Zapata & Monarch Paint Co. was a subcontractor that performed paint work at the Project;

(j)     Ramos Construction was a subcontractor that performed carpentry work at the Project;

(k)     David Sada d/b/a Sada Roofing was a subcontractor that performed roof work at the Project;

(l)     Texas V&J Construction, Inc. was a subcontractor that performed carpentry work at the Project;

(m)     TG Construction was a subcontractor that performed work on the interior and exterior doors at the Project;

(n)     Rennie Truss d/b/a Truss Construction was a subcontractor that performed concrete work at the Project.

28.     SAHA paid a total of Nineteen Million Eighty-Seven Thousand Four Hundred Sixty-Six Dollars and 55/100 ($19,087,466.55) to acquire and develop the land for the Project, and to design and build the 247 homes in the Project. Of this sum, SAHA expended One Million Seven Hundred Ninety-Five Thousand Six Hundred Fifty-One Dollars ($1,795,651.00) to acquire and develop the land for the Project, and Seventeen Million Two Hundred Nine-One Thousand Seven Hundred Seventy-Five Dollars and 55/100 ($17,291,775.55) to design and build the 247 homes in the Project. Two of the homes no longer exist because they were destroyed by fire.

11

29.    The Defendant Parties failed to comply with their contractual and legal obligations. They failed to construct the homes:

    (a)    in a good and workmanlike manner;

    (b)    in compliance with the contract documents;

    (c)    in conformity with the implied and express warranties identified in this pleading;

    (d)    in compliance with all applicable building codes;

    (e)    with care, skill, reasonable experience and faithfulness;

    (f)    in compliance with their duty to cooperate.

30.    The Defendant Parties failed to properly supervise and manage the work of their subcontractors.

31.    The Defendant Parties failed to properly install correct construction materials.

32.    The unsupervised subcontractors to comply with the Contract plans, specifications, and other contract documents, and the applicable standard of care.

33.    More specifically, and as a result of investigations undertaken in connection with this litigation, SAHA has discovered the following latent construction defects for which proper notice has been provided to the Defendant Parties:

    (a)    the exterior doors to the kitchens and the windows were improperly installed with insufficient nails, flashing, and caulking to guard against moisture intrusion, which construction defect was discovered in 2007;

    (b)    the temperature and pressure release valve drains used to protect against excessive build up of pressure from the hot water heaters were not plumbed out above grade as required by the building code, which construction defect was discovered in 2007;

    (c)    insufficient numbers of roofing nails were used and/or were placed incorrectly to secure the shingles to the roofs, which construction defect was discovered in October 2008 and November 2008;

1575771.1\006783.000001

(d)     the incorrect gauge and length of roofing staples were used to affix the
        roof sheathing to the trusses, which construction defect was discovered
        in October 2008 and November 2008;

(e)     the framing lumber used as bottom plates for the exterior walls was not
        made of pressure-preservative treated lumber and the framing lumber
        used for the bottom plates of the interior and exterior walls was not
        properly affixed to the foundation, which construction defect was
        discovered in October 2008 and November 2008;

(f)     the black felt membrane beneath the exterior siding was installed
        improperly, failing to establish an effective moisture barrier, which
        construction defect was discovered in October 2008 and November
        2008;

(g)     the exterior brick veneers were improperly constructed to prevent their
        collapse and their entrapment of moisture, which construction defect
        was discovered in October 2008 November 2008; and

(h)     the driveways and sidewalks were not properly constructed, and the
        rebar embedded within them was not placed at the proper depth,
        which construction defect was discovered in October 2008 and
        November 2008.

34.     As of the filing of this pleading, the homes which have been the subject of this

suit and their owners are listed below in three separate categories, according to whether they

are owned by SAHA, owned by third parties, or owned by third parties who have asserted

claims for the above construction defects in separate litigation, as described below.

(a)     SAHA presently owns 174 or 70 percent of the original 247 homes it
        paid the Defendant Parties to build. The homes owned by SAHA as of
        the filing of this pleading include:

| | | |
|---|---|---|
| 4010 El Paso | 4014 El Paso | 4018 El Paso |
| 4022 El Paso | 4026 El Paso | 4030 El Paso |
| 4034 El Paso | 4100 El Paso | 4110 El Paso |
| 4116 El Paso | 4120 El Paso | 4124 El Paso |
| 4128 El Paso | 4132 El Paso | 4136 El Paso |
| 4140 El Paso | 4142 El Paso | 4206 El Paso |
| 4214 El Paso | 4218 El Paso | 428 Mathews |
| 430 Mathews | 432 Mathews | 434 Mathews |
| 436 Mathews | 438 Mathews | 442 Mathews |
| 502 Mathews | 506 Mathews | 510 Mathews |
| 514 Mathews | 518 Mathews | 522 Mathews |

13

| | | |
|---|---|---|
| 602 Mathews | 606 Mathews | 610 Mathews |
| 614 Mathews | 615 Mathews | 618 Mathews |
| 619 Mathews | 622 Mathews | 623 Mathews |
| 626 Mathews | 627 Mathews | 630 Mathews |
| 631 Mathews | 634 Mathews | 635 Mathews |
| 638 Mathews | 639 Mathews | 642 Mathews |
| 702 Mathews | 706 Mathews | 707 Mathews |
| 710 Mathews | 711 Mathews | 714 Mathews |
| 715 Mathews | 718 Mathews | 719 Mathews |
| 722 Mathews | 723 Mathews | 726 Mathews |
| 727 Mathews | 730 Mathews | 731 Mathews |
| 734 Mathews | 735 Mathews | 738 Mathews |
| 739 Mathews | 742 Mathews | 743 Mathews |
| 746 Mathews | 747 Mathews | 750 Mathews |
| 751 Mathews | 754 Mathews | 755 Mathews |
| 758 Mathews | 1507 NW 26th Street | 1511 NW 26th Street |
| 1515 NW 26th Street | 1523 NW 26th Street | 1611 NW 26th Street |
| 1002 NW 27th Street | 1006 NW 27th Street | 1010 NW 27th Street |
| 1014 NW 27th Street | 1022 NW 27th Street | 1206 NW 27th Street |
| 402 Precious** | 410 Precious | 411 Precious |
| 418 Precious | 423 Precious | 427 Precious |
| 439 Precious | 440 Precious | 443 Precious** |
| 444 Precious | 447 Precious | 448 Precious** |
| 452 Precious** | 455 Precious | 458 Precious** |
| 459 Precious | 462 Precious | 463 Precious** |
| 467 Precious** | 470 Precious | 471 Precious |
| 475 Precious** | 503 Precious | 506 Precious** |
| 507 Precious | 514 Precious** | 518 Precious |
| 519 Precious | 4003 San Luis | 4007 San Luis |
| 4011 San Luis | 4015 San Luis | 4019 San Luis |
| 4023 San Luis | 4027 San Luis | 4031 San Luis |
| 102 Villa Arboles | 107 Villa Arboles | 110 Villa Arboles |
| 111 Villa Arboles | 115 Villa Arboles | 118 Villa Arboles |
| 119 Villa Arboles | 122 Villa Arboles | 123 Villa Arboles |
| 126 Villa Arboles | 127 Villa Arboles | 130 Villa Arboles |
| 131 Villa Arboles | 135 Villa Arboles | 138 Villa Arboles |
| 139 Villa Arboles | 143 Villa Arboles | 147 Villa Arboles |
| 1502 Villa Flores | 1506 Villa Flores | 1507 Villa Flores |
| 1515 Villa Flores | 1518 Villa Flores | 1519 Villa Flores |
| 1523 Villa Flores | 102 Villa Grande | 103 Villa Grande |
| 110 Villa Grande | 111 Villa Grande** | 114 Villa Grande |
| 122 Villa Grande | 126 Villa Grande** | 130 Villa Grande** |
| 134 Villa Grande | 602 Villa Linda | 606 Villa Linda |
| 610 Villa Linda | 611 Villa Linda | 614 Villa Linda |

14

| | | |
|---|---|---|
| 615 Villa Linda | 618 Villa Linda | 619 Villa Linda |
| 623 Villa Linda | 2631 Villa Norte | 1710 Villa Placer |
| 1714 Villa Placer | 311 Villa Rosa | 315 Villa Rosa |

The thirteen (13) homes above marked with two asterisks (**) are among seventeen (17) homes as to which SAHA stipulated on January 18, 2008, that it would seek no damages in order to expedite certain repairs of previously discovered defects without awaiting inspections, which repairs had already been scheduled prior to such date. However, such stipulation pre-dated the October 2008-November 2008 discovery of those latent defects identified in Paragraphs 34(c) through 34(h), for which SAHA does seek recovery as to these thirteen (13) homes that were the subject of such prior stipulation. Such stipulation should be disregarded because it predated discovery of these defects, and because it was fraudulently induced (as further stated below).

(b)   SAHA does not own the following nine (9) homes, but SAHA possesses as to these homes a legal and/or equitable right to claim damages for some or all of the defects complained of above, or as to which claims SAHA is subrogated:

| | | |
|---|---|---|
| 1619 NW 26th Street | 1627 NW 26th Street | 1106 NW 27th Street |
| 1118 NW 27th Street | 1202 NW 27th Street | 510 Precious* |
| 307 Villa Rosa* | 134 Villa Arboles* | 106 Villa Arboles* |

Those homes marked with a single asterisk (*) in this Subparagraph (b) above are the homes for which SAHA, as of the date of this pleading, has obtained from the applicable homeowners a written assignment of the right to assert claims for construction defects that are owned by such homeowners. As to all of these twenty-two (22) homes, SAHA is legally, conventionally and/or equitably subrogated to the claims and causes of action of the individual homeowners of these homes because of SAHA's rights under its Deeds and Deeds of Trust, Assignments, Contracts, and the Local Government Code. SAHA has legal and/or equitable rights by way of assignments and/or contracts and/or the right to assignments to assert claims for the defects to the homes in this suit. SAHA has claims by virtue of subrogation or assignment for claims against the Defendant Parties. SAHA also has standing to assert claims as to these homes as a third party beneficiary to the warranties and contracts of the KB Subcontractors.

(c)   Except for SAHA's claims to recover the Task Force damages, SAHA has transferred and assigned all of its claims as to the following sixty-six (66) homes to enable the homeowners (identified in Exhibit "A") of

15

these homes to assert such claims in their own names, and as to which claims such homeowners have separately sued some or all of the Defendant Parties in this case:

| | | |
|---|---|---|
| 1503 NW 26th Street | 1519 NW 26th Street | 1527 NW 26th Street |
| 1603 NW 26th Street | 1607 NW 26th Street | 1615 NW 26th Street |
| 1623 NW 26th Street | 1018 NW 27th Street | 1102 NW 27th Street |
| 1110 NW 27th Street | 1114 NW 27th Street | 1210 NW 27th Street |
| 403 Precious Drive | 406 Precious Drive | 414 Precious Drive |
| 415 Precious Drive | 419 Precious Drive | 422 Precious Drive |
| 426 Precious Drive | 431 Precious Drive | 432 Precious Drive |
| 435 Precious Drive | 436 Precious Drive | 451 Precious Drive |
| 466 Precious Drive | 511 Precious Drive | 515 Precious Drive |
| 103 Villa Arboles | 142 Villa Arboles | 1503 Villa Flores |
| 1510 Villa Flores | 1514 Villa Flores | 1522 Villa Flores |
| 118 Villa Grande | 119 Villa Grande | 123 Villa Grande |
| 127 Villa Grande | 131 Villa Grande | 138 Villa Grande |
| 139 Villa Grande | 142 Villa Grande | 143 Villa Grande |
| 2603 Villa Norte | 2607 Villa Norte | 2611 Villa Norte |
| 2615 Villa Norte | 2619 Villa Norte | 2623 Villa Norte |
| 1706 Villa Placer | 303 Villa Rosa | 1122 NW 27th Street |
| 135 Villa Grande | 407 Precious Drive | 1511 Villa Flores |
| 106 Villa Grande | 1118 NW 27th Street | 115 Villa Grande |
| 107 Villa Grande | 146 Villa Grande | 502 Precious Drive |
| 1627 NW 26th Street | 114 Villa Arboles | 1702 Villa Placer |
| 607 Villa Linda | 1201 NW 27th Street | 1526 Villa Flores |

35.    Based on the number of homes examined and the consistent presence of the construction defects described in Subparagraphs 34(a) through 34(f), above, there is a reasonable probability that these construction defects are present in all of the homes SAHA paid the Defendant Parties to design and construct. Based on past examinations of the homes, the defects described in Paragraphs 34(g) and 34(h), above, exist in most or a majority of the homes.

36.    More detailed listings and descriptions of the defects for which SAHA seeks damages are included in separate pleadings for each of the severed cases as to each of the

homes, which pleadings are incorporated by reference herein, as well as in numerous expert reports that have been made available to the Defendant Parties.

37.   In 2007, the Mayor of San Antonio, the Honorable Phil Hardberger, directed SAHA to establish and participate in a task force comprised of representatives of SAHA, KB, and some of the Mirasol residents who lived in the homes. This task force was known as the "Mirasol Task Force" (the "Task Force") and it was created to investigate and resolve once and for all the construction defects in the homes left by Defendant Parties' shoddy home building practices. Defendant KB had a representative on the Task Force who participated on behalf of KB and the Defendants Joint Venture. KB corporate representative Carlos Contreras attended and fully participated in the Task Force's efforts to investigate, inspect, repair and rehabilitate the homes in the Project. The Task Force's costs to repair and rehabilitate the homes were borne by SAHA. In support of the Task Force's efforts, and as a result of independent inspections performed for the Task Force (which failed to reveal the latent construction defects discovered in October 2008 and November 2008), SAHA expended Six Million Six Hundred Seventy-Eight Thousand Thirty-Three Dollars ($6,678,033.00), to repair and rehabilitate the homes in the Mirasol Project.

38.   On January 7, 1999, Defendant Heery entered into a Construction and Project Management Services Agreement with SAHA (the "Heery Contract") to provide management services in relation to the project for the design and construction of the Mirasol Homes. Heery's responsibilities included, but were not limited to, the following:

>    (a)   to control, direct, coordinate and evaluate the work performed during each phase (§ 5.1)

17

(b)   to perform services in a manner solely consistent with the best interests of SAHA (§ 6.1);

(c)   ....monitoring the performance of other contractors, controlling schedules, and overseeing financial accounts. (§ 6.1.1);

(d)   ...identifying and reporting to SAHA defects and omissions in the design. (§ 6.1.2);

(e)   making certain that the construction is performed in conformity with construction plans and specifications (§ 6.1.3)

(f)   Not authorize deviations from the contract documents (§ 6.11)

(g)   Comply with the approved scope of work and SAHA standards, applicable codes...§ 7.3.1)

(h)   assure that as built drawings were available and at substantial completion provide the as built plans to SAHA... (§ 9.2)

(i)   ...reviewing the design for defects, errors and omission. (§ 6.1.2);

(j)   ...providing a minimum of a full-time (40 hours per week) on-site experienced general inspector to inspect all construction work of the general construction contractor and his subcontractors to ensure full compliance with the contract requirements. (§ 9.9.1);

(k)   ...providing additional technically qualified inspectors for specific disciplines on a temporary basis as needed to inspect civil, architectural, structural, mechanical, plumbing, electrical, fir safety, hazardous material, and other specialized construction. Inspection shall include, but is not limited to, assuring surfaces, materials, procedures and conditions are in compliance with contract requirements and testing performed by the contractor or consultants indicate compliance with the contract requirements. (§ 9.9.1);

(l)   ...promptly notifying the construction contractor of any material process, or workmanship that does not meet requirements of the construction contract, advising if the contractor fails to promptly correct defects and omissions, or fails to promptly remove, replace or correct unsatisfactory work. (§ 9.9.2);

(m)   ...establishing the substantial completion date, preparing a draft substantial completion letter, and forwarding it for processing. (§ 9.9.4);

(n)   ...accomplishing formal inspections with personnel from the construction contractor, SAHA, and other parties as appropriate. (§ 9.9.5);

1575771.1\006783.000001

(o)    ...inspecting and testing all systems pertaining to each phase of the project as the work progresses. (§ 9.9.6);

(p)    ...after final inspection, insisting that the construction contractor immediately correct the final defects and omissions, and maintaining a strong follow-up until all items are resolved. (§ 9.9.9);

(q)    ...verifying the qualifications of specialists employed by the construction contractor and subcontractors. (§ 9.18); and

(r)    ...responsible for the overall controls and procedures during design and construction for the single family homes project (RFQ, page 1).

39.    Defendant Heery was required but failed to act in the best interest of SAHA. Defendant Heery failed to adequately disclose to SAHA the multiple design changes and value engineering concepts Heery agreed to until KB. Defendant Heery also owed SAHA a fiduciary duty which it breached. These failures breached multiple legal duties imposed by law and was a proximate cause of damages to SAHA .

40.    SAHA attaches as Exhibit "B" the Certificate of Merit of David Tenant, a registered architect actively engaged in the practice of architecture. Mr. Tenant concludes that Heery failed to meet the accepted standard of reasonable care because, in the performance of its construction management and inspection services under the Heery Contract, Heery enabled the Defendant Parties to perform construction of the homes contrary to the architectural drawings, industry standard and/or the building code, causing the homes to be completed with construction defects.

## VI.  CAUSES OF ACTION

41.    The Defendant Parties' conduct described above constitutes a breach of the Defendant Joint Venture's Contract with SAHA, and negligence, which resulted in and/or proximately caused damages to SAHA.

19

42.    The Defendant Parties' conduct described above constitutes a breach of the Defendants Joint Venture indemnity obligations for negligence under Paragraph 11.12.1 of the Contract, which resulted in damages to SAHA.

43.    The Defendant Parties' conduct described above constitutes a breach of their express and implied warranties described in this pleading, which caused SAHA damages.

44.    The conduct of Third Party Defendant KB Home Lone Star, Inc., f/k/a Kaufman & Broad Lone Star, L.P., constitutes a breach of its Subcontract, and a breach of its express and implied warranties, and negligence, which caused SAHA, damages as those legal terms are understood in the law.

45.    The Defendant Parties' conduct described above constitutes fraud in the inducement, constructive fraud, common law fraud, legal fraud (irrespective of intent) and also statutory fraud under Section 27.01 of the Texas Business and Commerce Code. The Defendant Parties, acting individually and in concert with one another, built and sold the homes knowing, or with conscious and/or reckless disregard of the fact that the homes were built with the construction defects described above, and contrary to the contract documents, applicable building codes and other laws, and knowing they would be sold to Plaintiff and occupied by persons who would come into possession of the homes by, through, or under Plaintiff, either as subsequent purchasers or as tenants.

46.    The Defendants Joint Venture and one or more of the Defendant Parties also committed fraud by their concealment of the latent construction defects complained of in Paragraph 34, above.

47. The Defendants Joint Venture and one or more of the Defendant Parties also committed fraud by their continuing refusal and failure to disclose to SAHA after this litigation was commenced the existence of the construction defects that SAHA ultimately discovered in October 2008 and November 2008 during and throughout the efforts of the Task Force. The Defendant Parties, through a corporate representative of KB, Mr. Carlos Contreras, knowingly participated in the deliberations and decisions of the Mirasol Task Force to repair and rehabilitate the homes in the Mirasol Project. As such the Defendant Parties had actual and constructive knowledge of the deliberations and decisions of the Task Force. The Defendant Parties had a continuing duty to disclose the construction defects in the homes, but they did not do so at any time during the Task Force's evaluations of the homes or the deliberation and decision making process, as a result of which SAHA funded the repair and rehabilitation of the homes, and also stipulated that it would not seek damages in this litigation as to thirteen (13) of its homes. The existence of these defects constituted a material fact known to the Defendant Parties, the continuing concealment and non-disclosure of which fraudulently induced SAHA to proceed with its expenditures to repair and rehabilitate the homes and to enter into the stipulation not to seek damages as to thirteen (13) of its homes. The Defendant Parties withheld disclosure of these construction defects, which were latent, with the intention that SAHA would never discover such defects. The presence of these undisclosed defects rendered SAHA's repair and rehabilitation of the homes of meaningless or dubious value.

48. If the Defendant Parties had caused the KB representative on the Mirasol Task Force to disclose during its deliberations, prior to their discovery in October 2008 and

21

November 2008, SAHA and the Task Force would not have undertaken the repair and rehabilitation of the homes in 2007 and 2008 until the concealed construction defects could have been evaluated and repaired at the same time. If Defendant Parties had made such disclosure to SAHA, SAHA would not have entered into the stipulation as to the initial thirteen (13) homes it repaired. The Defendant Parties knew that SAHA was unaware of the presence of the latent construction defects later discovered in October 2008 and November 2008, none of which were noted by the independent inspections commissioned by the Task Force to identify defects in the homes. Despite the fact that these latent construction defects escaped the attention of the Task Force's independent inspectors, the Defendant Parties continued to disregard their duty to speak up, intending that SAHA rely on the silence of the Defendant Parties to presume that all defects that needed correction had been revealed. The Defendant Parties' silence was committed by and through KB, including KB's representative on the Task Force. SAHA did in fact rely on the Defendant Parties' silence, which reliance was at the time reasonable under the circumstances. The Defendant Parties' continuing fraudulent non-disclosure of the latent defects later discovered in October 2008 and November 2008 caused SAHA injury in an amount no less than Six Million Six Hundred Seventy-Eight Thousand Thirty-Three Dollars ($6,678,033.00).

49. As a consequence of the Defendant Parties' and Defendant Heery's conduct and the construction defects described in Paragraph 34, SAHA has been precluded by law from continuing to sell the homes that SAHA owns. SAHA has lost revenue, as well as the use of such lost revenue, that it could have derived from the sale of SAHA's homes. The homes have become vacant and subject to vandalism, fire, and theft which have increased

1575771.1\006783.000001

costs to SAHA to secure the homes from these perils. SAHA has also secure boards on some of the homes to protect them from peril at cost of at least $35,000.00.

50.    Wherever SAHA has asserted the Defendants Joint Venture or one of the Defendant Parties did or failed to do any act or thing, it is meant that such Defendant Parties performed or failed to perform such act or thing, individually, through each other, and/or each of their respective partners, directors, officers, agents, representatives, servants and/or employees in the course of their employment and that such Defendant Parties were engaged in a joint venture, joint enterprise, common purpose, with the aid, assistance, encouragement, participation, and concert of action of each other, and were authorized to act or were the agent of each other, and that such Defendant Parties were authorized to and did in fact act on behalf of the Defendants Joint Venture and each of the Defendant Parties and/or ratified their conduct. Further:

(a)    The Defendant Parties assisted and participated with each other in causing the breach of duties alleged in this pleading.

(b)    Each of the Defendant Parties' assistance and participation, separate from the other's acts, breached their respective duties to SAHA.

(c)    The Defendant Parties' assistance and participation was a substantial factor in causing the breach of the duties alleged in this pleading.

(d)    The Defendant Parties agreed to construct the homes in a manner which was likely to cause:

(i)    serious damage to SAHA, and

(ii)    certain harm to a large number of people.

(e)    The Defendant Parties' acts in carrying out their agreement with each other were committed intentionally.

(f)    The Defendant Parties' acts in carrying out their agreement caused injury to SAHA.

23

51.   As a result of the latent construction defects described above, SAHA is unable under the regulations of the Department of Housing and Urban Development, to sell the homes to future residents who might occupy them as the homes because the homes fail to meet local code requirements and cannot qualify as being in good repair with the major components having a remaining useful life that is sufficient to justify a reasonable expectation that homeownership will be affordable by the purchasers. As such, SAHA is unable to realize the benefit of its bargain with respect to the homes that SAHA owns and the land upon which they are constructed.

52.   Defendant Heery failed to perform under the Heery Contract, failed to perform the Heery Contract with care, skill, reasonable expedience and faithfulness, failed to comply with their duty to cooperate, and breached its duty to adhere to the standard of care by which it should have performed such services, in that it, among other things, failed to perform inspections at the appropriate time and in an appropriate manner so as to identify, report and require the correction of defects in the manner of installation and construction of the homes in the Mirasol Project and breached the legal duties imposed by law. Defendant Heery's conduct complained of herein resulted in and/or proximately caused SAHA's damages.

53.   The conduct of the Defendant Parties and Defendant Heery constitutes negligent misrepresentation because representations were made to SAHA in the course of these defendants' business or in a transaction in which these defendants had an interest; these defendants supplied false information for the guidance of others; these defendants did not exercise reasonable care or competence in obtaining or communicating the information;

1575771.1\006783.000001

IHIC App. 88

SAHA justifiably relied on the representations and these defendants' negligent misrepresentations proximately caused SAHA's injury.

## VII. DAMAGES

54. SAHA seeks judgment against the Defendant Parties and Defendant Heery, jointly and severally, for the damages resulting from and/or proximately caused by their conduct described above in an amount within the jurisdictional limits of this Court, including damages for:

(a) the reasonable cost of repairs necessary to cure the construction defects; except that, as to the seventeen (17) homes that were the subject of the January 14, 2008 stipulation, SAHA claims damages for only those defects described in latent defects identified in Paragraphs 34(c) through 34(h), above);

(b) the reasonable and necessary cost for the replacement or repair of any damaged goods associated with the repair of such defects;

(c) reasonable and necessary engineering and consulting fees;

(d) the reasonable expenses of temporary housing and alternative living expenses reasonably necessary for residents of the homes displaced during the period of repair of such defects;

(e) the reduction in current market value, if any, after the construction defects are repaired, to the extent the construction defects are found to constitute a structural failure;

(f) disgorgement of all money paid by SAHA;

(g) the loss of revenue to SAHA, and the loss of use of such lost revenue, as a consequence of lost sales of homes due to the Defendant Parties' conduct and the construction defects described in this pleading;

(h) reasonable and necessary attorneys' fees;

(i) all amounts SAHA expended through the efforts of the Mirasol Task Force to repair and rehabilitate the homes, in the amount of Six Million Six Hundred Seventy-Eight Thousand Thirty-Three Dollars ($6,678,033.00);

(j) exemplary damages;

(k) court costs;

1575771.1\006783.000001

(l)    deposition copy costs;

(m)    pre-judgment and post-judgment interest allowed by law; and

(n)    all other damages allowed by law.

55.    In the alternative, if the Court determines that monetary damages for the cost to repair the latent construction defects in SAHA's 174 homes will be insufficient to redress the harm that SAHA has suffered as a result of the Defendant Parties' fraudulent conduct and SAHA's inability as a public housing authority to now legally sell the homes it still owns, SAHA requests that the Court exercise its equitable powers to order the rescission of the Contract with the Defendant Parties as to such homes. In such event, SAHA asks that, in lieu of awarding the damages against the Defendant Parties, the Court separately award as against the Defendant Parties, and require the Defendant Parties to:

(a)    accept SAHA's transfer and conveyance to the Defendant Parties of SAHA's unsold 174 homes in their present condition, as is, with all faults;

(b)    return to SAHA all consideration received by the Defendant Parties applicable to the design and construction of SAHA's unsold 174 homes, which amount for SAHA's 174 homes is Nine Million Six Hundred Eighty-One Thousand Six Hundred Twenty-Five Dollars ($9,681,625.00);

(c)    pay to SAHA an amount equal to its cost of investment in the land upon which SAHA's unsold 174 homes are located, which amount for SAHA's 174 homes is One Million Six Hundred Thousand Eight Hundred Forty-Five Dollars and Eighty Cents ($1,006,845.80) and

(d)    pay to SAHA as additional damages the following:

(i)    the sum of the Six Million Six Hundred Seventy-Eight Thousand Thirty-Three Dollars ($6,678,033.00) as damages due SAHA to recover the sums expended through the Mirasol Task Force effort to repair and rehabilitate the homes while the Defendant Parties continued to fraudulently conceal the latent construction defects later discovered in October 2008 and November 2008;

26

(ii)    the loss of revenue to SAHA, and the loss of use of such lost revenue, as a consequence of lost sales of homes due to the Defendant Parties' conduct and the construction defects described in this pleading;

(iii)    all reasonable and necessary engineering and consulting fees incurred by SAHA in connection with this litigation;

(iv)    exemplary damages;

(v)    court costs;

(vi)    deposition copy costs;

(vii)    pre-judgment and post-judgment interest allowed by law; and

(viii)    all other damages allowed by law.

56.    In the further alternative, SAHA is entitled to recover damages under quantum valebant for the difference between the amount paid by SAHA and the value SAHA received for the payments it made.

### VIII. ATTORNEY FEES

57.    As to the Defendant Parties and Defendant Heery, SAHA is entitled to recover reasonable and necessary attorney fees under Paragraph 11.8 of the Contract, Paragraph 3.15.1 of the "Contract Between Design-Builder and Contractor," under Chapter 38 of Texas Civil Practice and Remedies Code, Chapter 27 of the Texas Property Code and Chapter 27 of the Texas Business and Commerce Code.

### IX. DEMAND FOR JURY

58.    SAHA has already demanded a jury trial and tendered the appropriate fee.

### X. CONDITIONS PRECEDENT

59.    All conditions precedent to the relief requested in this pleading have occurred, been performed, been waived or are excused by law.

### XI. LIMITATIONS AND THE DISCOVERY RULE

1575771.1\006783.000001

IHIC App. 91

60.     Pursuant to Texas Civil Practice and Remedies Code section 16.061, SAHA, as a division of an incorporated city, is not barred by limitations from making any claims in this case. In the alternative, if limitations apply to any of SAHA's claims, SAHA would show that the discovery rule as that term is understood in the law is applicable to this case as to those claims for latent defects described in Paragraphs 34(c) through 34(h), which were not discovered until October 2008-November 2008. SAHA and the homeowners neither knew, nor, by exercising reasonable diligence should have known, of the specific facts giving rise to these claims, which are governed by the discovery rule. Such claims were difficult to discover (indeed, not even the Task Force's independent inspections resulted in their discovery). As such, these claims were inherently undiscoverable and objectively verifiable. SAHA in the alternative would show that MAGI and KB knew or should have known of the defects that have been discovered and had a duty to disclose information about defects and potential defects and such silence, alternatively, constitutes fraudulent concealment.

## XII. PRAYER

*WHEREFORE PREMISES CONSIDERED*, SAHA requests that on final hearing SAHA have judgment against the Defendant Parties and Defendant Heery, jointly and severally, for the following:

1.      Damages in an amount not to exceed Twenty-Five Million Dollars ($25,000,000.00).

2.      In the alternative, if the Court orders rescission of the Contract as to SAHA's homes, the sum of Seventeen Million Two Hundred Nine-One Thousand Seven Hundred Seventy-Five Dollars and 55/100 ($17,291,775.55);

3.      In the alternative, the amount representing the difference between the amount paid by SAHA and the value received by SAHA for the payments it made;

4.      Additional and special damages and expenses in the amounts stated in this pleading;

28

5.    Exemplary damages;

6.    Reasonable and necessary attorney fees through trial and all levels of appeal;

7.    Prejudgment and post-judgment interest as provided by law;

8.    Costs of suit;

9.    Such other and further relief, in law and in equity, to which SAHA may be justly entitled.

Respectfully submitted,

**COATS | ROSE**
*A Professional Corporation*

By: _____
    Chris E. Ryman (SBN 17496600)
    3 Greenway Plaza, Suite 2000
    Houston, TX 77046
    Telephone: (713) 651-0111
    Facsimile: (713) 651-0220

    David L. Ylitalo (SBN 22155500)
    Mason P. Hester (SBN 24055659)
    1020 NE Loop 410, Suite 800
    San Antonio, TX 78209
    Telephone: (210) 224-7098
    Fax: (210) 212-5698

    Timothy E. Alcott (SBN 00796112)
    San Antonio Housing Authority
    818 S. Flores Street
    San Antonio, Texas 78204
    Telephone: (210) 477-6633
    Facsimile: (210) 477-6260

**ATTORNEYS FOR SAN ANTONIO
HOUSING AUTHORITY**

1575771.1\006783.000001

IHIC App. 94

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served pursuant to the Texas Rules of Civil Procedure on this _10th_ day of _Feb_____, 2010, as follows:

VIA FAX (210) 472-1110
Marc E. Gravely/ Matthew R. Pearson
Gravely & Pearson
425 Soledad, Ste 600
San Antonio, TX 78205

VIA FAX (210) 228-0887
Frank Herrera, Jr./ Laura Gutierrez Tamez/
Jorge A. Herrera
The Herrera Law Firm
111 Soledad St., Suite 1900
San Antonio, TX 78205

VIA FAX (210) 735-6889
Roger D. Kirstein/ Stephen Waltraven
Langley & Banack
745 East Mulberry, Suite 900
San Antonio, TX 78212

VIA FAX (866) 489-7657
Brian Judis
Law Offices of Brian J. Judis
9500 Arboretum Blvd., Suite 145
Austin, TX 78759

VIA FAX (210) 377-1065
Jeffrey G. House
Curney, Garcia, Farmer, Pickering & House
411 Heimer Road
San Antonio, TX 78232-4854

VIA FAX (210) 979-7810
John A. Guerra/ Jason L. West
Brock Person Guerra Reyna
17339 Redland Road
San Antonio, TX 78247-2304

VIA FAX (210) 223-5007
Paul A. Smith, Jr./ Carlos Solis
Solis and Smith
1925 N. New Braunfels
San Antonio, TX 78208

VIA FAX (210) 979-7810
Ricardo R. Reyna/ Thomas Mailloux II
Brock Person Guerra Reyna
17339 Redland Road
San Antonio, TX 78247-2304

VIA FAX (512) 590-8680
Richard F. Jacobs
Wilson Grosenheider & Jacobs
P.O. BOX 1584
Austin, TX 78767

VIA FAX (210) 341-8819
Warren Weir
Attorney at Law
726 Patricia
San Antonio, TX 78216

VIA FAX (214) 777-4299
Michael A. Logan/ Jeffrey S. Seeburger
Kane Russell Coleman & Logan
1601 Elm Street, Suite 3700
Dallas, TX 75201

VIA FAX (210) 485-2106
Ronald Smeberg/ Maribel Lopez
Law Office of Victor W. Luke
12002 Bandera Road, Suite 102
Helotes, TX 78023

1575771.1\006783.000001

IHIC App. 95

VIA EMAIL blopez@e-h-law.com
John Engvall, Jr./ Brian Lopez
Engvall & Hlavinka
1900 St. James Place, Suite 210
Houston, TX 77056

VIA FAX (210) 524-9811
Will W. Pierson/ Scott Taylor
Royston, Razor, Vickery & Williams
8200 IH 10 West, Suite 610
San Antonio, TX 78230

VIA FAX (210) 250-6100
Alex Huddleston
Strasburger & Price
300 Convent St., Suite 900
San Antonio, TX 78205

VIA FAX (303) 244-1879
Bryan D. Cross/ Julie Walker
Wheeler Trigg O'Donnell
1801 California St., Suite 3600
Denver, CO 80202

VIA FAX (210) 824-9429
Keith O'Connell/ Dan Vana/ Valerie Cantu
O'Connell & Benjamin
153 Treeline Park, Suite 200
San Antonio, TX 78209

VIA FAX (214) 946-8433
Kirk L. Pittard/ F. Leighton Durham III
Durham & Pittard
PO Box 224626
Dallas, TX 75222

VIA FAX (210) 342-1266
Chris Heinemeyer
Krenek & Heinemeyer
9601 McAllister Freeway, Ste 1110
San Antonio, TX 78216

VIA FAX: (210) 226-1544
N. Mark Ralls
Gonzales Hoblit Ferguson
300 Convent Street, Suite 1450
San Antonio, TX 78205

VIA FAX (972) 991-2678
William E. Reid/ Lisa G. Chastain
Reid & Dennis
15660 Dallas Parkway, Suite 1400
Dallas, TX 75248

VIA FAX (210) 820-2609
Gershon D. Cohen
Law Office of Gershon D. Cohen
1777 NE Loop 410, Suite 600
San Antonio, TX 78217

VIA US MAIL
Juan Gonzalez, Pro Se
330 Vine Street
San Antonio, TX 78210

David L. Ylitalo

1575771.1\006783.000001

IHIC App. 96