# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **INDIAN HARBOR INSURANCE** | § | |
| **COMPANY** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | **CIVIL ACTION NO. 4:11-cv-1846** |
| **KB LONE STAR, INC. F/K/A LONE** | § | |
| **STAR and L.P. F/K/A KAUFMAN &** | § | |
| **BROAD LONE STAR, L.P.** | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## DEFENDANT KB'S OPPOSITION TO INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ................................................................. 1

      A.    The Mirasol Project ................................................................. 1

      B.    The Indian Harbor Policy ................................................................. 2

      C.    The Underlying Litigation ................................................................. 2

      D.    Indian Harbor's Federal Declaratory Judgment Action Again ........................... 3

II.   LEGAL STANDARDS ................................................................. 4

      A.    The Summary Judgment Standard ................................................................. 4

      B.    Texas Law Applies to this Case ................................................................. 5

      C.    The Duty to Defend ................................................................. 5

III.  ARGUMENTS AND AUTHORITIES ................................................................. 6

      A.    A Simple Reading of the Allegations in the Underlying Action Shows Claims Which
            Are Covered by the Policy ................................................................. 6

            1.    The *Lamar Homes* Decision Requires Indian Harbor to Defend ........................... 8

            2.    Indian Harbor Ignores the Fact That There Are 17 Relevant Petitions, Not
                  Just the Two Discussed in Its Motion. ................................................................. 9

            3.    All of the Underlying Petitions Assert Negligence Allegations ........................... 10

                  (a)    The Allegations in the *SAHA* Third to Fifth-Amended Petitions Assert
                         Claims of Negligence Which Indian Harbor Was Obligated to
                         Defend ................................................................. 11

                  (b)    The Allegations in SAHA's Sixth and Seventh-Amended Petitions
                         Assert Claims of Negligence Which Indian Harbor Is Obligated to
                         Defend ................................................................. 12

                  (c)    The Allegations in SAHA's Eighth and Ninth-Amended Petitions
                         Assert Claims of Negligence Which Indian Harbor Is Obligated to
                         Defend ................................................................. 13

                  (d)    The Allegations in the *Arias* Petitions Evolved from the *SAHA*
                         Actions and Contain Claims of Negligence Which Indian Harbor Is
                         Obligated to Defend ................................................................. 13

4.  The Intentional conduct Claims Were Dismissed from the *SAHA* and *Arias* Petitions ................................................................................ 15

5.  The Cases Cited by Indian Harbor Only Support KB's Position that Indian Harbor Was Legally Obligated to Defend KB ...................................... 16

    (a)  In *Employers Mutual,* All of the Claims Involved Intentional Concealment of a Dangerous Condition .................................... 16

    (b)  *Freedman v. Cigna Ins. Co. of Tex* Did Not Involve "Mixed Claims" of Negligence and Intentional Conduct ..................................... 18

    (c)  In the Present Case, the Underlying Claims All Derive from Allegations of Negligent Workmanship .................................. 18

6.  Despite the Addition of the Intentional Conduct Claims, an Insurer Has a Duty to Defend Against Mixed Claims ............................................. 19

B.  Specific Allegations That "Property Damage" Occurred During the Policy Period Are Not Required to Trigger Indian Harbor's Defense Obligation ................................. 20

    1.  The *SAHA* and *Arias* Petitions Do Not Allege That the Property Damage Occurred Outside of the Policy Period ................................ 20

    2.  The Applicable Texas Authority Holds That KB Was Entitled to a Defense ..... 22

    3.  The Authority Cited by Indian Harbor Is Inapplicable ....................... 24

        (a)  *Don's Building Supply v. OneBeacon Ins. Co.* .......................... 24

        (b)  *Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.* ............... 26

C.  The Additional Insured Endorsement Provides Coverage to KB ...................... 27

D.  The Contractual Liability Exclusion Does not Apply to KB's Claim ............... 30

    1.  The *Gilbert* and *Ewing* Holdings Do Not Support Indian Harbor's Disclaimer of Coverage ............................................. 30

        (a)  *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) .......................................... 30

            (i)  The Question Before the *Gilbert* Court Involved the Duty to Indemnify, Which Standard for Coverage Is Much Higher Than the Duty to Defend ............................................. 32

| | (ii) | The Supreme Court of Texas Has Held That the Contractual Liability Exclusion Is not a "Breach of Contract" Exclusion ...................................................................................... 33 |
|---|---|---|
| | (iii) | KB Faced Liability Which Was Not Based on the Contract with MAGI ................................................................................. 34 |
| | (iv) | KB Defended Claims of Vicarious Liability for Innovative's Work .......................................................................................... 34 |
| (b) | | *Ewing Constr. Co. v. Amerisure Ins. Co.*, 2011 U.S. Dist. LEXIS 45827, (S.D. Tex. Apr. 28, 2011) ............................................ 36 |
| | (i) | The *Ewing* Decision Contradicts Texas Case Law ...................... 37 |
| | (ii) | A Court Is Not Permitted to Make Determinations on Liability Claims and Defenses Pending Before A Different Court ............. 38 |
| | (iii) | The Authority Upon Which *Ewing* Relies Is Also Factually Distinguishable ............................................................................. 39 |
| | (iv) | *Ewing* Improperly Applies the Rule for Determining the Duty to Defend to the Duty to Indemnify ............................................... 40 |
| E. | | The "Duty to Defend" and "Duty to Indemnify" Are Separate and Independent Obligations ............................................................................................... 41 |
| IV. | CONCLUSION | .................................................................................................................... 42 |

**CASE**                                                                                           **PAGE NUMBER**

*Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.,*
2010 U.S. Dist. LEXIS 27066 (S.D. Tex. Mar. 22, 2010) ...................................................22, 26, 27

*Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.,*
99 F. 3d 695 (5th Cr. Tex. 1996) ...........................................................................................19

*Century Surety Co. v. Hardscape Construction Specialties, Inc.,*
578 F.3d 262 (5th Cir. 2009) ................................................................................................39

*Crisalli v. ARX Holding Corp.,*
177 Fed. Appx. 417 (5th Cir. Tex. 2006) ..............................................................................37

*D.R. Horton-Texas, Ltd. v. Markel Int'l. Ins. Co, Ltd.,*
300 S.W.3d 740 (Tex. 2009) .......................................................................................28, 29, 33, 42

*David Lewis Builders, Inc. v. Mid-Continent Cas. Co.,*
720 F. Supp. 2d 781 (N.D. Tex 2010) ...................................................................................40

*Don's Building Supply, Inc. v. OneBeacon Ins. Co.,*
267 S.W.3d 20 (Tex. 2008) ...........................................................................................24, 25, 26, 27

*Employers Ins. of Wausau v. Burlington N. & Santa Fe Ry. Co.,*
336 F. Supp. 2d 637 (E.D. Tex. 2003) ..................................................................................38

*Ewing Constr. Co. v. Amerisure Ins. Co.,*
2011 U.S. Dist. LEXIS 45827, (S.D. Tex. Apr. 28, 2011).....30, 31, 32, 33, 36, 37, 38, 39, 40, 41, 42

*Farmers Tex. County Mut. Ins. Co. v. Grifin,*
955 S.W.2d 81 (Tex. 1997) ...................................................................................................42

*Freedman v. Cigna Ins. Co. of Tex.,*
976 S.W.2d 776 (1998) ................................................................................................16, 18, 19

*Gehan Homes, Ltd. v. Emplrs Mut. Cas. Co.,*
146 S.W.3d 833 (Tex. App. Dallas 2004, pet. denied) ..............................................22, 23, 24 27, 38

*GEICO Gen. Ins. Co. v. Austin Power Inc.,*
2012 Tex. App. LEXIS 60 (Tex. App. Houston 14th Dist. Jan. 5, 2012) .......................22, 23, 24, 27

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,*
327 S.W.3d 118 (Tex. 2010) ..........................................................................................30, 33, 34, 36

*Great Am. Lloyds Ins. Co. v. Mittlestadt,*
109 S.W.3d 784 (Tex. App.--Fort Worth 2003, no pet.)....................................................15

*Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.,*
188 S.W.3d 805 (Tex. App. Fort Worth 2006) ...............................................................35

*Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,*
387 S.W.3d 22 (Tex. 1965) .................................................................................................5

*Huffhines v. State Farm Lloyds,*
167 S.W. 3d 493 (Tex. App. - Houston [14th Dist.] 2005, no pet…. ...............................17

*KB Home v. Employers Mutual Casualty Co.*
(2008 WL 281530, 2008 Tex. App. LEXIS 771).......................................16, 17, 18, 19

*King v. Dallas Fire Ins. Co.,*
85 S.W.3d 185 (Tex. 2002) .................................................................................................6

*Lamar Homes, Inc. v. Mid Continent Cas. Co.,*
242 S.W.3d 1 (Tex. 2007) ...................................................................................5, 8, 15, 33

*Lincoln General Ins. Co. v. Reyna,*
401 F.3d 347 (5th Cir. 2005).......................................................................................... 5-6

*Little v. Liquid Air Corp.,*
37 F.3d 1069 (5th Cir. 1994) (en banc) ..............................................................................4

*Lowe v. Hearst Communs., Inc.,*
487 F.3d 246 (5th Cir. Tex. 2007)......................................................................................5

*Nat'l. Union Fire Ins. Co. v Merchants Fast Motor Lines,*
939 S.W.2d 139 (Tex. 1997) .............................................................................5, 19, 22, 23

*New York Life Ins. Co. v. Travelers Ins. Co.,*
92 F.3d 336 (5th Cir. 1996)................................................................................................6

*Reeves v. Sanderson Plumbing Prods.,*
530 U.S. 133 (2000) ............................................................................................................5

*Sanders v. Casa View Baptist Church,*
134 F.3d 331 (5th Cir.), cert. denied, 119 S. Ct. 161 (1998) ............................................4

*St. Paul Ins. Co. v. Texas Dep't of Transp.,*
999 S.W.2d 881 (Tex. App.--Austin 1999, pet. denied) ..................................................19

*State Farm Lloyds v. Kessler,*
932 S.W.2d 732 (Tex. App.-Fort Worth 1996, writ denied)................................................5

*Stumph v. Dallas Fire Ins. Co.,*
34 S.W.3d 722 (Tex.App.—Austin 2000, no pet.)......................................................20

*Texas Manufactured Housing Ass'n v. Nederland,*
101 F.3d 1095 (5th Cir. 1996), cert. denied, 521 U.S. 1112, 117 S. Ct. 2497 (1997) ........................4

*Texas Prop. & Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc.,*
982 S.W.2d 600 (Tex. App. Austin 1998) ................................................................6

*Trinity Universal Ins. Co. v. Cowan,*
945 S.W.2d 819 (Tex. 1997) ........................................................................5, 15

*Utica Nat'l Ins. Co. v. Am. Indem. Co.,*
141 S.W.3d 198 (Tex. 2004) ...................................................................33, 41-42

*W. Heritage Ins. Co. v. River Entm't,*
998 F.2d 311 (5th Cir. 1993)........................................................................38

*Wingfoot Enters. v. Alvarado,*
111 S.W.3d 134 (Tex. 2003) ........................................................................35

*Zurich Am. Ins. Co. v. Nokia, Inc,.*
268 S.W.3d 487 (Tex. 2008) .....................................................................17, 18

## STATUTES

Tex. Civ. Prac. & Rem. Code Ann. § 37.009...............................................................44

Tex. Ins. Code § 542.051 *et seq.* ......................................................................44

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INDIAN HARBOR INSURANCE | § | |
| COMPANY | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. 4:11-cv-1846 |
| KB LONE STAR, INC. F/K/A LONE | § | |
| STAR and L.P. F/K/A KAUFMAN & | § | |
| BROAD LONE STAR, L.P. | § | |
|     Defendants. | § | |
| | § | |
| | § | |

## DEFENDANT KB'S OPPOSITION TO INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE MELINDA HARMON:

COMES NOW, KB Home, Inc. also known as KB Home; KB Home Lone Star, Inc.; KB Home of San Antonio; and KB Home Lone Star LP (hereinafter collectively referred to as "KB"), Defendants in the above-styled and numbered cause, and files this Opposition to Plaintiff Indian Harbor Insurance Company's Motion for Summary Judgment and Cross-Motion for Summary Judgment, and in support thereof responds as follows:

## I.  INTRODUCTION AND BACKGROUND

### A.  The Mirasol Project

KB is a builder which was involved in the construction of a residential community comprised of approximately 246 single-family homes, located in San Antonio, Bexar County, Texas and known as Mirasol. KB built the Mirasol homes pursuant to a contract between San Antonio Housing Authority (hereinafter referred to as "SAHA"), a public agency, and Magi Realty, Inc., the Mirasol project manager; and a joint venture agreement between Magi Realty, Inc. and KB.   KB contracted with Indian Harbor's named insured Innovative Concrete, Inc. (hereinafter referred to as

"Innovative") for work at Mirasol. KB and Indian Harbor's named insured Innovative Concrete, Inc. (hereinafter referred to as "Innovative") entered into subcontract agreements dated January 18, 2000 and February 12, 2001, which applied to Innovative's flatwork and concrete foundation work at Mirasol.[1] Under the terms of the subcontract, Innovative agreed to add KB as an additional insured to its commercial general liability policies.

**B.**      **The Indian Harbor Policy**

Indian Harbor Insurance Company (hereinafter referred to as "Indian Harbor") issued a commercial general liability policy effective October 18, 2000 to October 18, 2001 (hereinafter "Policy") to named insured Innovative, which Policy provides KB with insured status under an ISO form no. 2026 1185 "blanket" Additional Insured Endorsement (hereinafter "AIE"). The AIE provides coverage to KB Home for "liability arising out of [Innovative's] operations" as one of "all persons or organizations where required by written contract between such person or organization and the named insured."[2]

**C.**      **The Underlying Litigation**

KB and its subcontractors, including Innovative, were sued for alleged construction defects and property damage at the Mirasol homes in the matters styled *San Antonio Housing Authority v. Magi Realty, et al.,* Bexar County District Court Case No. 2007-CI-05258, filed on April 9, 2007 (hereinafter "the *SAHA* Action");[3] and *Arias, et al. v. KB Home, et al.,* Bexar County District Court Case No. 2009-CI-05175, filed on May 28, 2009 (hereinafter "the *Arias* Action")[4] (collectively referred to as "Underlying Action"). On January 7, 2010 the cases were consolidated[5] and in mid-2011, the parties reached a settlement. On December 14, 2011, the Underlying Action was

---

[1] See Declaration of Travis W. Cope concurrently filed herewith.
[2] See Exhibit "A" hereto, a true and correct copy of the Indian Harbor policy disclosed by Indian Harbor in this action, identified by Bates nos. IHIC 1 to IHIC 40, at IHIC 19.
[3] See concurrently filed Request for Judicial Notice (hereinafter "RJN"), Exhibit No. 1 thereto.
[4] See concurrently filed RJN, Exhibit No. 11 thereto.
[5] See concurrently filed RJN, Exhibit No. 9 thereto (SAHA's Eighth-Amended Petition which indicates the January 7, 2010 consolidation).

dismissed.[6]

KB was first named as a defendant in SAHA's Third-Amended Petition, filed on July 1, 2008, which alleged that KB was responsible for latent construction defects and property damage in the Mirasol homes. Six subsequently amended petitions were filed by SAHA, ending with the Ninth-Amended Petition filed on February 10, 2011.[7]

Midway into the *SAHA* litigation, separate counsel assumed representation of the individual owners of 33 homes which SAHA had previously sold.[8]  On May 28, 2009, these homeowners filed a separate petition with respect to the 33 homes (the *Arias* Action).[9]  Thereafter, the *Arias* claimants filed nine amended petitions, ending with the Ninth-Amended Petition filed on October 17, 2011.[10]

As KB will demonstrate herein below, the basis of the claims in the *Arias* and *SAHA* suits is that KB and its various subcontractors, including Indian Harbor's named insured Innovative, negligently performed the construction of the Mirasol project causing latent construction defects, property damage, and other damages for which the underlying plaintiffs sought remedies.

### D.　　Indian Harbor's Federal Declaratory Judgment Action Against KB

KB sought additional insured coverage from Indian Harbor pursuant to the terms of the AIE. Indian Harbor did not contribute to KB's defense but instead filed this federal action seeking a declaration that it does not owe KB a defense. Indian Harbor's petition against KB was filed two weeks after this district issued a carrier-favorable decision (as fully discussed in Section III(D)(1)(b)

---

[6] See concurrently filed RJN, Exhibit No. 22 thereto.
[7] See concurrently filed RJN, Exhibit Nos. 4 through 10 thereto. KB also requests that the Court take judicial notice of the *SAHA* First and Second-Amended Petitions attached as Exhibit Nos. 2 and 3 to the concurrently filed RJN.  While KB does not rely upon these petitions for purposes of this opposition and cross-motion, KB requests judicial notice of these documents in the interest of providing the Court with a complete record of the petitions in the Underlying Action.
[8] Throughout the course of the underlying litigation, SAHA relinquished and eventually assigned its claims as to 66 homes to the *Arias* homeowners, which claims were gradually transferred from the *SAHA* Action to the *Arias* Action. The *Arias* and *SAHA* suits were consolidated for all discovery and trial purposes, and the defense of the entirety of the claims as alleged against KB was continuously handled as one case by the same counsel throughout the underlying litigation.
[9] See concurrently filed RJN, Exhibit No. 11 thereto.
[10] See concurrently filed RJN, Exhibit Nos. 12 through 20 thereto.

at pp. 39-44 herein below), and asserts, for the first time, that the Contractual Liability Exclusion analyzed in this recent decision applies to preclude coverage for KB.

Indian Harbor's Motion for Summary Judgment sets forth several other unsupported defenses to coverage, which motion represents the carrier's attempt to escape its obligations by "throwing" numerous and unmeritorious arguments "against the wall to see if any will stick." None do. KB will show that Indian Harbor was obligated to defend KB pursuant to the terms of its policy.

KB herein opposes Indian Harbor's Motion for Summary Judgment and brings a Cross-Motion for Summary Judgment against Indian Harbor, seeking judgment in its favor as a matter of law that Indian Harbor was legally required to defend KB as to the *SAHA* and *Arias* lawsuits pursuant to the terms of the Policy.

## II.  LEGAL STANDARDS

### A.  The Summary Judgment Standard

A motion for summary judgment is properly granted "when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 334 (5th Cir.), cert. denied, 119 S. Ct. 161 (1998). Once the movant shows that there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), cert. denied, 521 U.S. 1112, 117 S. Ct. 2497 (1997). The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

**B.**     <u>**Texas Law Applies to This Case.**</u>

It is undisputed that the substantive law of Texas applies to this federal diversity action. *Lowe v. Hearst Communs., Inc.*, 487 F.3d 246, 252 (5th Cir. Tex. 2007) citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

**C.**     <u>**The Duty to Defend**</u>

Whether an insurer in a liability policy is obligated to defend the insured is a question of law to be decided by the court. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.-Fort Worth 1996, writ denied).   In Texas, an insurer's duty to defend its insured is determined by the eight-corners rule, which requires that a reviewing court compare the allegations in the petition filed against the insured with the coverage afforded by the insurance policy. *Lamar Homes, Inc. v. Mid Continent Cas. Co.,* 242 S.W.3d 1, 8 (Tex. 2007).   Under the eight-corners rule, the duty to defend arises if the complaint, taken as true and construed broadly, asserts a claim within the policy terms. *Nat'l. Union Fire Ins. Co. v Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997).   The determination of coverage is based on an examination of the petition in the underlying action without regard to the truth or falsity of the allegations asserted therein. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.3d 22, 24 (Tex. 1965).   The allegations are presumed to be true and all doubts concerning whether the petition states covered claims are resolved in the insured's favor. *Merchants Fast Motor Lines,* 939 S.W.2d at 141.   "The purported facts that give rise to the alleged actionable conduct, not the legal theory, control in determining the duty to defend." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997).

An insurer is required to defend its insured in any case in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Lincoln General Ins. Co.*

*v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005). "If a claim falls partially within and partially outside of a coverage period, the insurer's duty is to provide its insured with a complete defense. This is because the contract obligates the insurer to defend its insured, not to provide a pro rata defense." *Texas Prop. & Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 606 (Tex. App. Austin 1998).

To avoid a defense obligation, the insurer bears the burden of showing that the claim asserted is not even potentially within the policy's affirmative grant of coverage. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). If there is doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

## III.    ARGUMENTS AND AUTHORITIES

As the bases for its motion, Indian Harbor disclaims any defense obligation to KB on essentially four grounds:

(A)    There are no allegations of a covered "occurrence" in the underlying *SAHA* and *Arias* petitions; and similarly, the Expected or Intended Injury Exclusion in the Indian Harbor policy precludes coverage for KB;

(B)    There are no allegations of "property damage" occurring during the Indian Harbor policy period;

(C)    The Additional Insured Endorsement to the Policy precludes coverage for KB; and

(D)    The Policy's "Contractual Liability Exclusion" precludes coverage.

As fully set forth herein, these coverage defenses fail on all fronts. KB will clearly demonstrate that the facts and law required Indian Harbor to provide KB with a defense.

## A.    A Simple Reading of the Allegations in the Underlying Action Shows Claims Which Are Covered by the Policy.

Indian Harbor erroneously contends that:

(1)    There are no allegations of an "occurrence," defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions;" and asserts a similar line of argument that

(2)     The exclusion for "Expected or Intended Injury" (hereinafter "Intended Injury Exclusion," which purportedly precludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured") applies to preclude coverage to KB for its defense of the Underlying Action.

Indian Harbor's position with regard to both of the foregoing coverage defenses is predicated on a multitude of egregiously misleading, and grossly inaccurate, contentions regarding the allegations in the Underlying Action.[11]   In making these numerous misrepresentations to the Court, Indian Harbor:

(1)     **Fails to discuss the numerous earlier iterations of the petitions;**
(2)     **Grossly misrepresents the allegations in the underlying matters to the Court;**
(3)     **Ignores a carrier's clear duty to defend mixed allegations of negligent and intentional conduct; and**
(4)     **Applies questionable and inapplicable authority to reach its conclusion.**

Based upon the foregoing, Indian Harbor's coverage defenses on these grounds are wholly improper and therefore should be rejected, as both a matter of law and fact.  Indeed, **KB defeated the exact same coverage defense—based upon the allegations of intentional conduct in the underlying petitions**—argued in a Motion for Summary Judgment brought by one of Indian Harbor's co-additional insuring carriers in the Underlying Action, Essex Insurance Company ("Essex"), in a state-court declaratory judgment action filed by Essex against KB.  The "Intended Injury Exclusion" arguments raised by Essex in its MSJ mirror those asserted by Indian Harbor here (and are likewise equivalent to Indian Harbor's "no 'occurrence' defense").  In issuing an ruling

---

[11] Indian Harbor's Motion for Summary Judgment (hereinafter "Indian Harbor MSJ") states:
"[T]he *Arias* and *SAHA* petitions are replete with factual allegations of intentional and fraudulent intent to deceive and conspiracy on the party of KB…" *Id.* at 16.
"The factual allegations of fraud, conspiracy, misrepresentation, and breach of contract are extensive and pervasive throughout the *SAHA* and *Arias* petitions." *Id.* at 17
"In fact, 'negligence' is only mentioned once throughout the entire *SAHA* petition where the plaintiffs alleged 'negligent misrepresentation'; however, no factual allegations are made that would suggest an accident. Instead the allegation of 'negligent misrepresentation' is based on the same factual allegations of intentional deception and fraud." *Id.* at 18
"The same is true of the *Arias* petition, which only mentions 'negligence' in its claim for damages." *Id.*
"[T]here are no allegations of accidental conduct [in the *SAHA* and *Arias* petitions] that could constitute an 'occurrence' that would trigger coverage." *Id*
"There are no factual allegations of accidental conduct, as the allegations clearly state KB intended to misrepresent the quality of the homes to be built and intended to create substandard housing in order to make a higher profit." *Id.* at 25.
"As it is alleged KB expected or intended the property damage at issue in the underlying lawsuit, the Expected or Intended Injury exclusion applies to preclude coverage for KB as a matter of law." *Id.* at pp. 25-26.

that Essex was obligated to defend KB, the state court did not agree with Essex that the allegations of intentional conduct in the underlying petitions precluded Essex's obligation to provide KB with a defense.[12]

### 1. The *Lamar Homes* Decision Requires Indian Harbor to Defend.

KB agrees with Indian Harbor that the Supreme Court of Texas' holding in *Lamar Homes, Inc. v. Mid Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007) applies to this case. However, contrary to Indian Harbor's position that "the allegations against KB in the Underlying Lawsuit are the very kind of allegations of intentional conduct and injury as described by the Court in…*Lamar Homes* that fail to constitute an 'occurrence,'" the holding of *Lamar Homes* required Indian Harbor to defend KB against the Underlying Action.[13] The *Lamar Homes* court found that "a deliberate act, performed negligently, is an accident if the effect is not the expected or intended result; that is, the result would have been different had the deliberate act been performed correctly." *Id.* at 8. "The determination of whether an insured's faulty workmanship was intended or accidental is dependant on the facts and circumstances of the particular case." *Id.* at 9. The *Lamar Homes* court further held that:

> The duty to defend must be determined under the eight-corners rule rather than by the labels attached to the underlying claims. **The proper inquiry is whether an 'occurrence' has caused 'property damage'**… An 'occurrence' depends on the fortuitous nature of the event, that is, whether the damage was expected or intended from the standpoint of the insured. 'Property damage' consists of physical injury to tangible property and includes the loss of use of tangible property. Thus, we agree with the Fifth Circuit that **'claims for damage caused by an insured's defective performance or faulty workmanship' may constitute an 'occurrence' when 'property damage' results from the 'unexpected, unforeseen or undesigned happening or consequence' of the insured's negligent behavior**."

*Id.* at 15-16 (internal citations omitted) (emphasis added).

---

[12] See concurrently filed RJN, Exhibit No. 23 thereto, a certified copy of Essex Insurance Company's Motion for Summary Judgment against KB; and Exhibit 24, a certified copy of the Notice of Ruling.
[13] Indian Harbor MSJ, p. 16.

Based upon the Supreme Court of Texas' holding quoted above, Indian Harbor was obligated to defend KB against factual claims of "property damage" caused by an "occurrence," regardless of the causes of action the underlying plaintiffs assigned to those claims. Because the facts alleged in a petition, and not the legal theories presented, determine the duty to defend (*Cowan*, 945 S.W.2d at 829), the threshold question in evaluating Indian Harbor's duty to KB is whether the underlying petitions allege that KB and/or Innovative committed negligent acts which caused the claimed damages. As set forth below, a reasonable examination of the allegations in the underlying litigation shows initial and continuous claims of negligence, which unquestionably gave rise to Indian Harbor's duty to defend.

2.      **Indian Harbor Ignores the Fact That There Are 17 Relevant Petitions, Not Just the Two Discussed in Its Motion.**

Indian Harbor's motion blatantly disregards critical facts that the Court must consider when evaluating Indian Harbor's coverage duty under the well-established eight-corners rule. Specifically, Indian Harbor's motion only discusses two selective petitions in the underlying matters: the *SAHA* Ninth-Amended Petition and the *Arias* Eighth-Amended Petition, both of which were filed only 11 months ago, in February 2011. Moreover, the *Arias* plaintiffs also filed a Ninth-Amended Petition on October 17, 2011 which did not contain any allegations of intentional conduct. Indian Harbor chooses not to disclose this final *Arias* petition to the court.

The original *SAHA* action was originally filed nearly four years prior, in April 2007. For its part, KB was first implicated in the *SAHA* Third-Amended Petition filed over three and a half years ago, in July 2008. Thus, there are **17 relevant petitions** to Indian Harbor's defense duty,[14] yet Indian Harbor's motion **only discusses two carefully selected ones**. Indian Harbor provides absolutely no legal authority to support the proposition that a petition filed nearly four years into a

---

[14] The 17 relevant petitions are the *SAHA* third through ninth-amended (seven petitions); and the *Arias* original through ninth-amended (10 petitions).

lawsuit retroactively controls the duty to defend claims that existed throughout the long course of the litigation. The allegations asserted in each of the 17 underlying petitions belie Indian Harbor's defenses based upon (1) the absence of an "occurrence;" and (2) the application of the Intended Injury Exclusion.

**3.** **All of the Underlying Petitions Assert Negligence Allegations.**

The factual allegations to support the tort claims set forth in the Original through Ninth-Amended *SAHA* Petitions, and the Original through Ninth-Amended *Arias* Petitions are **clearly based in negligence**—and not "fraud, conspiracy, misrepresentation" and intentional conduct as Indian Harbor would have this Court believe.[15]

To provide the Court with a summary of the allegations contained in the underlying petitions, the claims set forth in the first six *SAHA* petitions (the Original through Fifth-Amended) **were all based in negligence or breach of contract**. The first petition to name KB, the third-amended, stated causes of action for (1) breach of express and implied warranties; (2) breach of contract; (3) **negligence**; and (4) subrogation. **SAHA did not make any claims of intentional conduct relative to construction of the homes in its Third, Fourth, or Fifth-Amended Petition**. In these three petitions, fraudulent concealment of the alleged defects was pled merely as an alternative legal theory, to preserve SAHA's right to invoke the discovery rule in the event that time limitations applied to its claims.

Beginning with the *SAHA* Sixth-Amended Petition, the negligence allegations asserted in the *SAHA* Original through Fifth-Amended Petitions were supplemented with allegations of intentional conduct—primarily, claims of concealment and failure to disclose the negligent and defective construction and property damage. These allegations were duplicated in Seventh and Eighth-Amended *SAHA* Petitions. The Ninth-Amended Petition—filed nearly four years into the lawsuit—

---

[15] Indian Harbor MSJ, p. 17.

does complain of KB's intentional conduct in constructing the homes. However, these intentional conduct allegations are pled alongside negligence claims and do not defeat Indian Harbor's defense duty.

The *Arias* claimants then simply copied the *SAHA* allegations.

The intentional conduct claims arose only late in the litigation and **never superseded** the allegations of negligence as the primary cause of the plaintiffs' damages. Clearly, the allegations of negligent and defective construction are the initial, overriding and controlling allegations in the underlying petitions, which became the basis for the later, secondary claims of intentional conduct in failing to disclose the defects.

In order to illustrate the negligence claims pled throughout the course of the underlying actions, it is essential to closely examine the numerous pleadings.

    (a)    <u>The Allegations in the *SAHA* Third to Fifth-Amended Petitions Assert Claims of Negligence Which Indian Harbor Was Obligated to Defend.</u>

The *SAHA* Third-Amended Petition, filed on July 1, 2008, alleges that KB and its subcontractors negligently constructed the subject homes. Specifically, SAHA alleged that:

## V. FACTS
***

22. MAGI and **KB failed to exercise ordinary care in construction of the homes which was negligence and a proximate cause of damages to SAHA** at Hope. More specifically, MAGI and KB failed to:
(a) **Properly supervise and manage subcontractors** working on behalf of MAGI with regard to the work performed by those subcontractors;
(b) **Properly and appropriately install materials at the residences** so that the homes would not allow moisture intrusion; and
(c) **Properly and appropriately manage the work of other subcontractors** such that damage to other portions of the home did not occur as the result of improperly installed and/or applied construction materials.[16]
***
26. …Also, the construction defects listed in paragraphs [sic] 23 are construction defects that **would not occur in the absence of negligence** by the defendant responsible for the work. [17]

---

[16] See concurrently filed RJN, Exhibit No. 4 thereto: *SAHA* Third-Amended Complaint, paragraph 22 at p. 7.
[17] *Id.* at paragraph 26, pp. 8-9 (emphasis added).

SAHA also asserts a negligence cause of action in its Third-Amended Petition as follows:

## VI.     CAUSES OF ACTION
***

30.     As to all defendant parties**, the conduct described above constitutes negligence, which proximately caused SAHA damages**.[18]

SAHA further alleges that KB committed negligent acts in its Fourth and Fifth-Amended Petitions at Paragraph 14, which allegations are set forth with particularity in Appendix No. 1 hereto.  Based upon the negligence claims contained in the Third, Fourth and Fifth-Amended *SAHA* petitions, it is irrefutable that the claims against KB and its subcontractors originated in allegations of negligent conduct.

### (b)     The Allegations in SAHA's Sixth and Seventh-Amended Petitions Assert Claims of Negligence Which Indian Harbor Is Obligated to Defend.

The same negligence allegations asserted in SAHA's Third through Fifth-Amended petitions remained in the subsequently amended petitions in similar form. Specifically, the *SAHA* Sixth and Seventh-Amended Petitions make allegations against KB and Innovative which are expressly pled or sound in negligence at Paragraphs 22, 28, 30-33, 42-45, and 53, which allegations are set forth with particularity in Appendix No. 2 hereto.

Beginning with the Sixth-Amended Petition filed on August 11, 2009, SAHA asserted an additional, secondary legal theory of "intentional conduct." SAHA's new legal theory was added to its petition in August 2009, or just shortly before the mediation sessions which commenced in September and October 2009. Importantly, nearly all of the intentional conduct allegations relate to claims that the defendants knowingly concealed defects and delivered substandard homes—and not that KB and its subcontractors intended to build the homes with the alleged construction defects.

Indian Harbor essentially argues that it is entitled to summary judgment because a newly alleged claim of intentional conduct, when pled alongside specific allegations of negligence,

---

[18] *Id.* at paragraph 30, p. 9 (emphasis added).

retroactively relieves the carrier of any duty to defend. This theory fails under Texas law. It is clear that the claims in the *SAHA* Sixth and Seventh-Amended Petitions are based in negligence, and therefore Indian Harbor was obligated to defend KB against those claims.

**(c)** **The Allegations in SAHA's Eighth and Ninth-Amended Petitions Assert Claims of Negligence Which Indian Harbor Is Obligated to Defend.**

The Eighth and Ninth-Amended Petitions assert factual allegations of negligent conduct on the part of KB and Innovative Concrete which essentially mirror those stated in the prior pleadings, first alleged in the Third-Amended Petition, as well as a specific negligence cause of action—which fact is clearly contrary to Indian Harbor's assertion that the only mention of negligence in the *SAHA* Ninth-Amended Petition is "negligent misrepresentation."[19] The claims of negligence contained in the *SAHA* Eighth and Ninth-Amended Petitions as stated at Paragraphs 21, 27, 29-32, 41-44 and 53 are referenced in Appendix No. 3 hereto.

Based upon all of the foregoing, the claims asserted by SAHA are unquestionably based in negligence. The addition of intentional conduct allegations to certain of the *SAHA* petitions is irrelevant to Indian Harbor's duty under the terms of its policy.

**(d)** **The Allegations in the *Arias* Petitions Evolved from the *SAHA* Actions and Contain Claims of Negligence Which Indian Harbor Is Obligated to Defend.**

As stated above, SAHA initially brought claims as to all of the 246 Mirasol homes, but nearly two years into the *SAHA* litigation separate counsel was retained to represent the (*Arias*) homeowners as to those homes that SAHA had previously sold. Thirty-three original *Arias* homeowner plaintiffs filed a petition on May 28, 2009. Nine subsequent, amended petitions were filed ending with the Ninth-Amended Petition dated October 17, 2011. Eventually, claims for 66 of

---

[19] Indian Harbor MSJ at p. 18.

the 246 homes were transferred from the *SAHA* Action to the *Arias* Action.[20] SAHA ultimately relinquished and assigned its claims for those homes to the individual homeowners.

From a basic review and comparison of the allegations, it is clear that the *Arias* claims are purely derivative of the *SAHA* claims -- up to and including the eventual dismissal of all intentional conduct allegations—and were simply transferred from the *SAHA* plaintiff to the *Arias* homeowners. In fact, each of the *Arias* petitions alleges the same construction defects as the *SAHA* petitions.[21] The various *Arias* petitions also contain many of the same factual allegations which had been previously asserted in *SAHA*.[22] Further,

- The *Arias* **Original** and **First-Amended** Petitions make factual allegations which constitute claims of negligence. Section VI, Paragraph 6.6 of the Original and First-Amended Petitions are set forth with particularity in Appendix No. 4 hereto;

- The *Arias* **Second-Amended Petition** also alleges an express claim of negligence against KB and Innovative. Section VI(C), Paragraphs 6.1, 6.6–6.10, 6.20, and 6.22–6.23 of the Second-Amended Petition are set forth with particularity in Appendix No. 5; hereto;

- The *Arias* **Third, Fourth, and Fifth-Amended Petitions** allege the same negligence causes of action and facts as the Second-Amended *Arias* petition. Section VI(C), Paragraphs 6.1, 6.6–6.11, 6.21–6.23, and 6.25 of the Third, Fourth, and Fifth-Amended Petitions are set forth with particularity in Appendix No. 6 hereto; and

---

[20] As indicated above, the *SAHA* and *Arias* matters were consolidated for all purposes, and the defense of the entirety of the claims as alleged against KB was continuously handled by the same counsel throughout the underlying litigation.
[21] See *SAHA*
  - Third-Amended Petition (Exhibit No. 4 to concurrently filed RJN), Paragraph 23;
  - Fourth and Fifth-Amended Petitions (Exhibit Nos. 5 and 6 to concurrently filed RJN), Paragraph 15;
  - Sixth and Seventh-Amended Petitions (Exhibit Nos. 7 and 8 to concurrently filed RJN), Paragraph 34; and
  - Eighth and Ninth-Amended Petitions (Exhibit Nos. 9 and 10 to concurrently filed RJN), Paragraph 33.
See also *Arias*
  - Original and First-Amended Petitions, (Exhibit Nos. 11 and 12 to concurrently filed RJN), Paragraph 6.7;
  - Second-Amended Petition (Exhibit No. 13 to concurrently filed RJN), Paragraph 6.14;
  - Third, Fourth, and Fifth-Amended Petitions (Exhibit Nos. 14, 15 and 16 to concurrently filed RJN), Paragraph 6.15; and
  - Sixth, Seventh, and Eighth-Amended Petitions (Exhibit Nos. 17, 18 and 19 to concurrently filed RJN), Paragraph IV(g); and
  - Ninth-Amended Petitions (Exhibit No. 20 to concurrently filed RJN), Paragraph IV(f).
[22] For example, the same language that "MAGI and KB failed to…: (a) Properly supervise and manage… (b) Properly and appropriately install materials…; and… (c) Properly and appropriately manage the work of other subcontractors..." appears in various forms in the *SAHA* petitions, Third-Amended through Ninth-Amended, and in all of the *Arias* petitions.

- The *Arias* **Sixth, Seventh, Eighth and Ninth-Amended Petitions** make factual allegations which constitute claims of negligent conduct at Sections V(a), V(b), and V(d) which are set forth with particularity in Appendix No. 7 hereto.[23]

The *Arias* plaintiffs continued to assert the negligence allegations originally brought by SAHA, and initially added, but later dismissed, an intentional conduct theory. However, the additional legal theory did not change the fact that the *Arias* plaintiffs have always sought redress for negligently constructed homes.

**4.    The Intentional Conduct Claims Were Dismissed from the *SAHA* and *Arias* Petitions**

The fact that the claims of intentional conduct were of secondary importance is clearly evidenced by the fact that **SAHA dismissed its fraud and conspiracy claims on August 4, 2011, leaving only allegations sounding in negligence and breach of contract**.[24] Moreover, **the *Arias* Ninth-Amended Petition dismisses all intentional conduct claims entirely, and allege only breach of contract, breach of warranty, and negligence including vicarious liability**. Such dismissal leaves no doubt that the driving and primary allegations in the underlying actions were of negligence, not intentional conduct, as the *SAHA* plaintiff was content to initiate, pursue, and conclude its action without any significant allegations of fraud at all.

Irrespective of the dismissal of the fraud and conspiracy allegations, clear and repeated claims of negligent conduct were alleged in all of the relevant underlying petitions. Indian Harbor's motion cites selective language from the *SAHA* Ninth-Amended Petition and *Arias* Eighth-

---

[23] It is of no consequence that the *Arias* plaintiffs pled facts which constitute claims of negligence against KB and the subcontractors under a breach of contract cause of action in certain of their petitions. "The purported facts that give rise to the alleged actionable conduct, not the legal theory, control in determining the duty to defend." *Cowan*, 945 S.W.2d at 829; *Great Am. Lloyds Ins. Co. v. Mittlestadt*, 109 S.W.3d 784, 786-87 (Tex. App.--Fort Worth 2003, no pet.). "The proper inquiry is whether an 'occurrence' has caused 'property damage,' not whether the ultimate remedy for that claim lies in contract or in tort." *Lamar Homes*, 242 S.W.3d at 16. Moreover, the *Arias* plaintiffs were not privy to the contract between KB and MAGI, or MAGI and SAHA, which lack of privity places further importance on the need to examine the factual allegations and not the cause of action tied to the claim.

[24] See concurrently filed RJN, Exhibit No. 21 thereto.

Amended Petition **only,** in an attempt to exaggerate and highlight the intentional conduct allegations asserted in these petitions.  In doing so, Indian Harbor asserts that it is entitled to summary judgment on the basis that only recently and secondarily alleged intentional conduct claims, when pled alongside clearly covered claims of negligence, somehow, and retroactively, relieves the carrier of its duty to defend.

Indian Harbor cannot provide any sound basis for its legal and factual contention that the *SAHA* and *Arias* plaintiffs asserted a "mere" allegation of negligence which does not trigger a duty to defend when coupled with claims of intentional conduct.[25]  The carrier's position is clearly contrary to Texas law and therefore must fail.

5. <u>**The Cases Cited by Indian Harbor Only Support KB's Position that Indian Harbor Was Legally Obligated to Defend KB.**</u>

Indian Harbor cites to two cases which it claims support its position: a memorandum opinion in *KB Home v. Employers Mutual Casualty Co.* (2008 WL 281530, 2008 Tex. App. LEXIS 771);[26] and *Freedman v. Cigna Ins. Co. of Tex.*, 976 S.W.2d 776 (1998).  A review of *Employers Mutual* and *Freedman* shows that these cases in no way support Indian Harbor's position in this regard.

(a) <u>**In *Employers Mutual,* All of the Claims Involved Intentional Concealment of a Dangerous Condition.**</u>

Indian Harbor employs carefully selected language from the *Employer's Mutual* memorandum opinion without acknowledging the background or context of the case, and the reason for this glaring omission is clear: a brief examination of that case confirms it to be highly distinguishable from the case at bar.  The material allegation by the plaintiff homeowners in the case underlying the *Employers Mutual* matter stated that the builder knowingly built a residential product on land which had formerly served as a munitions testing ground.  Allegedly, as a result of

---

[25] Indian Harbor MSJ, pp. 17-18.
[26] In order to avoid confusion, KB will refer to this opinion as *Employers Mutual*.

the munitions testing, an unknown number of unexploded bombs existed within the property. The plaintiffs alleged that the builder knowingly graded and developed the property without consideration or regard to the possibility of live ordinances literally buried under the homes. *Employers Mutual*, Lexis 771 *17. The *Employers Mutual* court found that fraudulent conduct had been specifically alleged as the **primary** source of damages, while a barebones allegation of negligence was merely an elaboration of that fraudulent conduct and thus it was insufficient on its own to establish a duty to defend *Id.* at *20-21. The *Employers Mutual* court held:

> I]t is axiomatic that artful pleading cannot change the character of a lawsuit. In the vernacular, calling a duck a chicken does not make it so. The essence of the complaint made by the plaintiffs is that KB misrepresented and fraudulently concealed material facts surrounding the sales of its homes.

*Employers Mutual*, Lexis 771 at *16.

Importantly, allegations in *Employers Mutual* contained none of the initial, primary and repeated claims of negligence contained in the multiple petitions in this case and which drove all of the claims asserted by the *SAHA* and *Arias* plaintiffs. Consistent with the *Employers Mutual* holding above, the secondarily, later-pled allegation of fraud **did not convert the original and consistent claims of negligence into intentional torts**. If anything, *Employers Mutual* serves to obligate Indian Harbor to defend the original and continuous negligence allegations, notwithstanding the incidental claim of intentionally substandard construction added to the last petition.[27]

---

[27] The other cases cited by Indian Harbor in support of its "no covered occurrence" argument also draw a helpful distinction between a fraud claim with incidental negligence allegations, and the negligence-based claim presented here. For example, in *Huffhines v. State Farm Lloyds*, 167 S.W. 3d 493 (Tex. App. – Houston [14th Dist.] 2005, no pet.), the primary allegation made by the plaintiff homebuyers in the underlying suit was that the previous homeowners (appellants) had actual knowledge of various defects on the subject property, but signed a disclosure statement claiming they knew of no such defects. *Id.* at 495-496. Appellants' alleged negligence in failing to make repairs on the concealed defects was only pled as an incidental cause of action. *Id.* at 496. As such, the court found no duty to defend. Further, Indian Harbor cites *Zurich Am. Ins. Co. v. Nokia, Inc.* 268 S.W.3d 487 (Tex. 2008) for the prospect that claims for contractual liability do not trigger a duty to defend. *Nokia*, however, is again highly distinguishable from the present case. In *Nokia*, the Supreme Court of Texas began by establishing that **any** inclusion of claims which **might** be covered would trigger a duty to defend. To quote the court:

> The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered. HOLMES' APPLEMAN ON

***Freedman v. Cigna Ins. Co. of Tex* Did Not Involve "Mixed Claims" of Negligence and Intentional Conduct.**

The *Freedman* case is similarly distinguishable, and also supports KB's claim for defense. The underlying plaintiffs in *Freedman* alleged failure to disclose property defects at time of sale as the basis of a fraud claim. The court declined to find for a duty to defend because the primary claim was based in **fraud**. The court stated unequivocally, "The Freedmans' failure to make disclosures about the roof was the basis of the Marxes' lawsuit. On the face of the Marxes' pleadings, the event for which the Freedmans sought coverage was an intentional act, and not an 'accident.'" *Id*. at 779.

Indian Harbor contends that *Freedman* stands for the proposition that an "insurer ha[s] no duty to defend where the facts alleged fraudulent statements and representations."[28] This is a gross misrepresentation of the holding in *Freedman*, as that case does not stand for nearly as broad of a principle. In fact, *Freedman* is very similar to *Employers Mutual*, in that the primary factual allegations were of deliberate misrepresentation, with negligence pled only as an alternate theory. The *Freedman* court was very direct in stating the basis for its holding: "The Marxes did not sue the Freedmans for the collapse of the roof. They sued for misrepresentations regarding the condition of the roof." *Id.* at 779.

(c)     **In the Present Case, the Underlying Claims All Derive from Allegations of Negligent Workmanship.**

The instant case presents a scenario opposite to *Freedman* and *Employers Mutual*: The *SAHA* and *Arias* plaintiffs sued KB for "the collapse of the roof" (property damage). Contrary to the fact pattern in the *Employers Mutual* and *Freedman* cases, SAHA (and later the individual

---

INSURANCE 2D § 136.4(B) (noting that "[t]o excuse the duty to defend, the complaint must unambiguously exclude coverage under the policy") *Id.* at 495-496.

The *Nokia* court then explained that the claimants in that case had initially made covered claims, but then completely eliminated such claims in its operative pleading, leaving no triggering occurrence available. *Id* at 499. As thoroughly demonstrated hereinabove, allegations of covered claims and potentially covered claims were consistent throughout the course of the *SAHA* and *Arias* actions. By citing *Nokia*, Indian Harbor once again uses highly selective source material in its attempt to avoid a clear defense duty.

[28] Indian Harbor MSJ, pp. 17-18.

---

homeowners) initially and continuously alleged that they incurred damages as a result of negligently performed construction. The *SAHA* and *Arias* plaintiffs later added a claim of intentional conduct as a strategy to hasten and increase a settlement with the defendants in the underlying matters. Therefore, Indian Harbor's statement that "In this case, as in *Employers Mutual and Freedman,* the mere allegation of negligence does not control the duty to defend, and is nothing more than a reconstituted allegation of the same intentional conduct **complained of throughout the Underlying Lawsuit**"[29] is not only entirely unsupported by the facts, but it serves as one of many patent and egregious misrepresentations made by Indian Harbor to this Court.

**6.    Despite the Addition of the Intentional Conduct Claims, an Insurer Has a Duty to Defend Against Mixed Claims.**

Texas law is clear that an insurer has an obligation to defend an insured if the petition alleges at least <u>one</u> cause of action within the policy's coverage. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*99 F. 3d 695, 701 (5th Cr. Tex. 1996). Once coverage has been found for any portion of a suit, an insurer must defend the entire suit. *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.--Austin 1999, pet. denied) (emphasis added). An insurance contract obligates the insurer to defend its insured, not to provide a partial defense. *Id.* Where there is doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Merchants Fast Motor Lines*, 939 S.W.2d at 141. Here, there is no doubt that the underlying petitions state a covered claim of negligence but assuming *arguendo* that there was any question, Indian Harbor nevertheless owed KB a defense.

**Alternative allegations of intentional and even malicious conduct will not defeat the duty to defend if combined with allegations that would otherwise trigger a potential for**

---

[29] Indian Harbor MSJ, p. 17 (emphasis added).

coverage.  *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 729 (Tex.App.—Austin 2000, no pet.).

In *Stumph*, the court held that even where an underlying suit does not specifically reference negligence or include the word "accident" in asserting claims for defective concrete work, a liberal reading of the allegations did not preclude the claim from coverage.  *Id.*  In the present case, a liberal reading is not even necessary—rather, a plain reading of the allegations shows **clear claims of negligence** which are covered under the Indian Harbor policy.  Allegations of intentional conduct arose only late in the litigation, and those allegations never superseded the covered allegations of negligence as the primary cause of plaintiffs' damages.  Based upon all of the foregoing, Indian Harbor, whose refusal to defend has been in ***bad faith*** throughout the Underlying Action, cannot now rely on secondary, and subsequently dismissed claims of intentional conduct to escape its defense duty to KB.

**B.**     **Specific Allegations That "Property Damage" Occurred During the Policy Period Are Not Required to Trigger Indian Harbor's Defense Obligation.**

Indian Harbor next argues that "KB is not entitled to coverage under the Policy because it cannot show that the alleged property damage occurred during the Indian Harbor policy period."[30] By this statement, Indian Harbor is attempting to impose a much higher burden upon KB to obtain coverage than what is required by the insured under Texas law, in an effort to escape its defense obligations. Simply put, KB need not "show that the alleged property damage occurred during the Indian Harbor policy period" to receive the benefit of a defense to which KB was entitled.

**1.**     **The *SAHA* and *Arias* Petitions Do Not Allege That the Property Damage Occurred Outside of the Policy Period.**

KB was first implicated by the *SAHA* Third-Amended Petition, filed on July 1, 2008. Neither the third-amended nor any of the subsequently filed *SAHA* or *Arias* petitions make any factual allegations that the claimed property damage occurred outside of the Indian Harbor policy

---

[30] Indian Harbor MSJ, p. 20.

period. In fact, the underlying plaintiffs make no allegations whatsoever as to the original timing of the "occurrence" of property damage. Rather, all of the relevant underlying petitions allege that the construction defects and property damage were latent in nature and, as an alternative pleading under the discovery rule, that "[u]ntil SAHA or other homeowners knew or by exercising reasonable diligence should have known of the specific facts giving rise to the claims and injuries governed by the discovery rule, the injury was difficult to discover or alternatively inherently undiscoverable and objectively [un]verifiable".[31] In fact, as KB will establish below, Indian Harbor defended its named insured Innovative against these allegations of undiscoverable defects.

Starting with the *SAHA* Sixth-Amended Petition filed on August 11, 2009 and continuing in every *SAHA* petition thereafter, the allegations regarding the specific defects include the years that the various defects were first observed by SAHA (2007 and 2008). There are no allegations that the property damage occurred outside of the Indian Harbor policy period of October 18, 2000 to October 18, 2001 in the *SAHA* Sixth through Ninth-Amended Petitions. The Fourth through Ninth-Amended *Arias* Petitions copied the allegations regarding the observation of the property damage in 2007 and 2008 contained in the *SAHA* Sixth through Ninth-Amended Petitions. [32]

---

[31] See *SAHA*
- Third-Amended Petition (Exhibit No. 4 to concurrently filed RJN), Paragraph 38;
- Fourth and Fifth-Amended Petitions (Exhibit Nos. 5 and 6 to concurrently filed RJN), Paragraph 28; and
- Sixth, Seventh, Eighth and Ninth-Amended Petitions (Exhibits Nos. 7 through 10 to concurrently filed RJN), Paragraph 60;

See also *Arias*
- Original, First, Second, Third, Fourth and Fifth-Amended Petitions (Exhibit Nos. 11 through 16 to concurrently filed RJN), Paragraph 12.1;
- Sixth, Seventh and Eighth-Amended Petitions (Exhibits Nos. 17, 18 and 19 to concurrently filed RJN), Paragraph XII(a), and
- Ninth-Amended Petition (Exhibit No. 20 to concurrently filed RJN), Paragraph X(a).

[32] See *SAHA*
- Sixth and Seventh-Amended Petitions (Exhibit Nos. 7 and 8 to concurrently filed RJN), Paragraph 34; and
- Eighth and Ninth-Amended Petitions (Exhibit Nos. 9 and 10 to concurrently filed RJN), Paragraph 33.

See also *Arias*
- Fourth and Fifth-Amended Petitions (Exhibit Nos. 15 and 16 to concurrently filed RJN), Paragraph 6.15; and
- Sixth, Seventh, and Eighth-Amended Petitions (Exhibit Nos. 17, 18, and 19 to concurrently filed RJN), Paragraph IV(g); and
- Ninth-Amended Petitions (Exhibit No. 20 to concurrently filed RJN), Paragraph IV(f).

Texas law is clear that an insured is not required to "show that the alleged property damage occurred during the…policy period"[33] to trigger a defense obligation as Indian Harbor wrongfully contends. Because the petitions do not allege that property damage occurred outside of the policy period, Indian Harbor is obligated to defend.

**2.      The Applicable Texas Authority Holds That KB Was Entitled to a Defense.**

In *Gehan Homes, Ltd. v. Emplrs Mut. Cas. Co*., 146 S.W.3d 833 (Tex. App. Dallas 2004, pet. denied), the Dallas Court of Appeals found a carrier is obligated to defend when the petitions are silent as to the timing of the alleged property damage.[34]

The *Gehan* holding was very recently upheld by the Houston Court of Appeals in *GEICO Gen. Ins. Co. v. Austin Power Inc.*, 2012 Tex. App. LEXIS 60 (Tex. App. Houston 14th Dist. Jan. 5, 2012). In *GEICO*, the underlying lawsuit alleged asbestos injury but did not state the date that the claimed injury occurred. The GEICO policy at issue was effective several decades prior to the time that the underlying suit was initiated. The *GEICO* court declined to follow the carrier's reasoning, which partially relied upon a case also cited by Indian Harbor in support of its argument,[35] that "because there is no specific date of injury in the [underlying] petition[,] it failed to allege a claim that potentially is covered under the terms of the policy." *Id.* at 7. GEICO further contended that the allegations were devoid of any suggestion that the claimant was injured during the policy period

---

[33] Indian Harbor MSJ, p. 20.
[34] The *Gehan* court found that:
> To be covered, the property damage must occur during the policy period. As previously discussed, the duty to defend is determined under the "eight corners" rule, and a court cannot look outside the pleadings to determine when the injury manifested itself. See *Merchs. Fast Motor Lines*, 939 S.W.2d at 142. Construing the pleadings liberally in favor of Gehan, **we cannot conclude that appellees established as a matter of law that no claims were alleged during the policy period.** The Larsons filed suit against Gehan in May of 2001 and claimed that they suffered "past" bodily injuries and property damages **without identifying when in the past this occurred**. In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. *Id.* at 141; *Pro-Tech*, 897 S.W.2d at 890. **We conclude that the insurers did not establish as a matter of law that there was no allegation of a potential occurrence within the policy coverage period**.

*Id.* at 845 (emphasis added).
[35] The case is *Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.,* 2010 U.S. Dist. LEXIS 27066 (S.D. Tex. Mar. 22, 2010) and is more fully discussed below.

and attempted to distinguish the facts of its case from *Gehan*, on the basis that the underlying allegations did not state that the claimed injury occurred in the "past" which was expressly alleged in the *Gehan* case.  GEICO argued that the use of the word "past" allowed the *Gehan* court to infer that the claimant's injury occurred during a previous time period, which inference was not allegedly made possible by the claims in the underlying petition examined by the *GEICO* court. The Court of Appeals disagreed, finding that

> As in *Gehan Homes*, the claimants in this case also alleged that the injury occurred before the petition was filed. Although they did not use the word "past," they used the past tense in alleging that Weldon Bradley "*has suffered* injuries" from asbestos exposure (emphasis added). They also alleged numerous exposures and that a conspiracy had existed for many decades. [Internal citations omitted.] Finally, we know that it can take years of exposure to produce asbestos-related diseases. **In effect, the Bradleys alleged that Weldon was injured sometime before the petition was filed. Nothing in the pleadings negates the possibility that the injury occurred between December 31, 1969 and December 31, 1970. Construing the pleadings liberally and resolving any doubts in the insured's favor, we agree with the trial court that this is an allegation of a potential occurrence within the policy's coverage period**. See *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *Gehan Homes*, 146 S.W.3d at 846.

Id. at 8-9 (emphasis added).

Here, the underlying petitions allege that MAGI and KB entered into a subcontract agreement to build the Mirasol homes on February 24, 2000[36] and as demonstrated in Section III(B)(1) at p. 24 hereinabove, the later *SAHA* and *Arias* petitions alleged that that the defects were discovered in 2007 and 2008. As Indian Harbor itself admits, the *Arias* and *SAHA* petitions are

---

[36] See *SAHA*
- Third-Amended Petition (Exhibit No. 4 to concurrently filed RJN), Paragraph 18;
- Fourth and Fifth-Amended Petitions (Exhibit Nos. 5 and 6 to concurrently filed RJN), Paragraph 10;
- Sixth and Seventh Amended Petitions (Exhibit Nos. 7 and 8 to concurrently filed RJN), Paragraph 24;
- Eighth and Ninth-Amended Petitions (Exhibit Nos. 9 and 10 to concurrently filed RJN), Paragraph 23(B);

See also *Arias*
- Original and First-Amended Petitions (Exhibit Nos. 11 and 12 to concurrently filed RJN), Paragraph 6.3;
- Second-Amended Petition (Exhibit No. 13 to concurrently filed RJN), Paragraph 6.2;
- Third, Fourth, and Fifth-Amended Petitions (Exhibit Nos. 14, 15 and 16 to concurrently filed RJN), Paragraph 6.2(B);
- Sixth, Seventh and Eighth Amended Petitions (Exhibit Nos. 17, 18 and 19 to concurrently filed RJN), Paragraph IV(d); and
- Ninth-Amended Petition (Exhibit No. 20 to concurrently filed RJN), Paragraph IV(c).

silent as to when the property damage actually occurred.[37] In light of the foregoing, it is possible that the claimed property damage occurred between February 2000 and 2008, which is within the Indian Harbor October 18, 2000 to October 18, 2001 policy period.

Based upon the above facts and clearly consistent with the Court of Appeals holdings in *Byrne*, *Gehan* and *GEICO*, Indian Harbor's attempt to deny coverage based upon a lack of allegations as to the timing of the claimed property damage is wholly improper and contrary to Texas law.

### 3.     The Authority Cited by Indian Harbor Is Inapplicable.

The cases cited by Indian Harbor in support of its unsuccessful argument that the petitions must allege an occurrence of property damage within the policy period to trigger a defense obligation are factually distinguishable from the instant dispute, and clearly do not control the determination to be made this Court regarding the sufficiency of factual allegations as to the timing of property damage under the eight-corners rule.

### (a)     Don's Building Supply v. OneBeacon Ins. Co.

First, Indian Harbor states that *Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008) stands for the proposition that "Texas courts have held that coverage is triggered under a [CGL] policy **only** when the underlying lawsuit alleges property damage that occurred during the policy period."[38] Contrary to Indian Harbor's statement, this was not the holding of *Don's Building*.

The Supreme Court of Texas was asked by the Fifth Circuit to decide two questions: (1) when property damage actually "**occurs**" for purposes of an occurrence-based CGL policy (i.e., which trigger rule applies); and (2) whether an insurer's duty to defend is triggered by allegations that (a) **property damage occurred during the policy period**, and (b) such property damage did

---

[37] Indian Harbor MSJ at p. 20.
[38] Indian Harbor MSJ, p. 20 (emphasis added).

not manifest until after the policy period.[39] The Supreme Court of Texas answered "yes" to both questions, holding that an "injury-in-fact" rule (as opposed to manifestation, exposure, or continuous injury theories which were all examined by the court) applies when determining coverage. "[T]he key date is when the injury happens, not when someone happens upon it." *Id.* at 22. As to the second question, the court found that a duty to defend exists when the petitions allege that the property damage actually occurs—as opposed to manifests—during the policy period.[40]

It is critical to consider that the underlying allegations at issue in *Don's Building*, as well as the numerous decisions upon which the opinion relies, explicitly alleged the timing of the occurrence of the claimed property damage. The *Don's Building* court's primary focus was on whether it was the actual property damage; or manifestation of the property damage; or exposure to the cause of injury; or some other event which served as an "occurrence" of "property damage" under the terms of the policy, and which various events **were alleged** to occur either within or outside of the policy period.

Indian Harbor's representation to this Court that *Don's Building* states, and therefore stands for the proposition that "the insurer's duty to defend depends on whether the homeowner's pleading alleges property damage that occurred during the policy term" is disingenuous at best.[41] *Don's Building* in no way holds that unless a claimant makes an express allegation of property damage occurring within the policy period, a carrier is not obligated to defend.

---

[39] The homeowner claims at issue in *Don's Building* stated that the property damage "'actually began to occur on the occasion of the first penetration of the moisture behind' the EIFS, which [the homeowners said] was 'within six months to one year after the application of EIFS.'" *Id.* at 22 (emphasis added).

[40] The *Don's Building* opinion states:

> Based on our answer to the first certified question [that an injury-in-fact trigger applies], [OneBeacon's] duty to defend DBS depends on whether the homeowners' pleadings [analyzed in *Don's Building*] allege property damage that occurred during the policy term. Under the actual-injury rule applicable to this policy, a plaintiff's claim against DBS that any amount of physical injury to tangible property occurred during the policy period and was caused by DBS's allegedly defective product triggers OneBeacon's duty to defend. [Footnote omitted.] This duty is not diminished because the property damage was undiscoverable, or not readily apparent or "manifest," until after the policy period ended…

*Id.* at 31 (emphasis added).

[41] Indian Harbor MSJ, p. 19.

(b)     <u>Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.</u>

To further support its position that the eight-corners rule is not satisfied without explicit claims that the alleged property damage occurred within the policy period, Indian Harbor relies upon a Southern District opinion *Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.,* 2010 U.S. Dist. LEXIS 27066 (S.D. Tex. Mar. 22, 2010). *Amerisure* should not be followed because it misconstrues *Don's Building*; and moreover, as recently as January 5, 2012, a **Court of Appeals of Texas rejected the holding of *Amerisure* as persuasive authority on this very point** as mentioned above.

In *Amerisure*, the underlying allegations stated that "[d]uring the course of construction, a substance was applied to the roof deck by [the insured]…that had the apparently unintended result of exacerbating the effect of moisture on the steel and accelerating corrosion of the deck…" *Id.* at 4-5. The allegations also stated that the subject property was completed in March 2004, and that problems were observed in December 2006. *Id.* Because there was no allegation of when the actual property damage occurred, the *Amerisure* court found that "under *Don's Building Supply*, in order to satisfy the eight corners rule, the underlying complaint must allege that harm occurred during the term of the insurance coverage (as opposed to an event that may later cause harm or discovery of the harm)." *Id.* at 16.

As clearly set forth in the preceding section**,** *Don's Building* simply does not stand for the proposition that formed the basis for the *Amerisure* ruling. The *Amerisure* court improperly construed the holding in *Don's Building*—that coverage is triggered when the claims allege **actual property damage** within the policy period—to decide that **in order to satisfy the eight-corners rule**, the claims **must** allege that actual property damage occurred within the policy period. *Amerisure*'s application of *Don's Building* is overreaching and improper, and cannot be followed on these grounds. Indeed, the Fourteenth Court of Appeals of Texas in *GEICO Gen. Ins. Co.,* 2012

Tex. App. LEXIS 60 **expressly disapproved of the *Amerisure* opinion on this exact same issue and based upon same, *Amerisure* is not persuasive under Texas law.**[42]

It is clear that Indian Harbor cannot rely upon *Amerisure* to disclaim a defense obligation to KB because *Don's Building* does not stand for the proposition upon which *Amerisure* relies and further, Texas courts have disapproved of its holding. On this basis, Indian Harbor's motion should be denied. Moreover, since KB has satisfied its burden to show that the alleged property damage **potentially** occurred within the policy period, KB's Motion for Summary Judgment should be granted on this basis as a matter of fact and law.

**C.      The Additional Insured Endorsement Provides Coverage to KB.**

As indicated herein above, the Policy contains an ISO form no CG 2026 1185 AIE which provides coverage to "all…organizations where required by written contract between such…organization and [Innovative]…but only with respect to liability arising out of [Innovative's] operations…"[43] In its motion, Indian Harbor states to this Court that coverage is not triggered because the underlying petitions are "completely devoid of allegations of or implications relating to Innovative's work. In fact, not only were there no allegations regarding Innovative's work, but both the *SAHA* and *Arias* plaintiffs ultimately dismissed Innovative from the lawsuit. Because KB is considered an insured only for liability arising from Innovative's work, and since the petitions in the Underlying Lawsuit contain no allegations of liability arising from Innovative's work, KB has no coverage under the Policy as a matter of law."[44] In support of this argument, Indian Harbor cites to the Houston Court of Appeals of Texas decision in *D.R. Horton—Texas, Ltd. v. Markel Int'l. Ins.*

---

[42] "To the extent that cases [including *Amerisure*] cited by GEICO conflict with *Gehan Homes*, we find them unpersuasive." *Id.* at 11.

[43] See Exhibit "A" hereto, a true and correct copy of the Indian Harbor policy disclosed by Indian Harbor in this action, identified by Bates nos. IHIC 1 to IHIC 40, at IHIC 19.

[44] Indian Harbor MSJ, pp. 21and 22 (emphasis in original).

*Co, Ltd.,* 300 S.W.3d 773, (Tex. App. – Houston [14th Dist.] Jan. 26, 2006), *modified on other grounds,* 300 S.W.3d 740 (Tex. 2009).

*D.R. Horton* held that under the eight-corners rule, a liability insurer was not obligated to defend an additional insured builder because **the underlying petition did not allege that the subcontractor named insured's work caused the damage complained of**, **nor was the named insured identified as a defendant in the underlying lawsuit**:

> The plain language of the additional insured endorsement limits Markel's liability to those claims arising out of the work [the subcontractor] performed for [the homebuilder]. **[1] The [underlying] petition does not list [the subcontractor] as a defendant, [2] does not make any reference to [the subcontractor], and [3] <u>does not allege the [homeowners] were damaged by the acts or omissions of any person or entity other than [the homebuilder]</u>**. Given their most liberal interpretation in favor of coverage, the factual allegations in the [homeowners'] petition cannot be interpreted as stating a claim for damages arising out of [the subcontractor's] work.

*Id.* at 779 (emphasis added).

Unlike the facts forming the basis of the *D.R. Horton* decision, **Indian Harbor's named insured was expressly or impliedly implicated by allegations contained in the 17 relevant underlying *SAHA* and *Arias* petitions**, which:

    (1)     Allege problems with the concrete;
    (2)     Name Innovative Concrete as a defendant;
    (3)     Allege that the plaintiffs were damaged by the negligent acts or omissions of KB's subcontractors, including Innovative; and/or
    (4)     Seek to hold KB liable for these damages.

A summary of the allegations contained in the relevant underlying petitions regarding the Mirasol subcontractors, which allegations "state a claim for damages arising out of" Innovative's work under the eight-corners rule, are set forth with particularity in Appendix Nos. 8 through 11 hereto relative to the *SAHA* Action; and Appendix Nos. 12 through 15 hereto relative to the *Arias* Action. Directly contrary to the facts forming the basis of the *D.R. Horton* decision, the *SAHA* and *Arias* petitions make clear and repeated allegations that KB's subcontractors were responsible for

their damages. Indian Harbor's position that *D.R. Horton* applies to preclude KB's claim for defense since "the petitions in the Underlying Lawsuit contain no allegations of liability arising from Innovative's work" is clearly defeated by the plain fact that the underlying petitions seek to hold KB liable for its subcontractors' (including Innovative's) work.

Moreover, Indian Harbor's point that "both the *SAHA* and *Arias* plaintiffs ultimately dismissed Innovative from the lawsuit" is entirely irrelevant. Again, the allegations implicating Innovative and seeking to hold KB liable for damages arising from same were present in each of the relevant 16 underlying petitions throughout the course of the underlying actions. These allegations clearly triggered Indian Harbor's defense duty, regardless of whether or not the particular petition named Innovative as a defendant.[45] Further, Innovative's dismissal from the *SAHA* matter did not occur until December 14, 2011.[46]

It is also important to consider that Indian Harbor defended Innovative against the underlying lawsuits, and paid toward Innovative's $125,000.00 settlement of its liability for the damages sought by the *SAHA* and *Arias* plaintiffs.[47] While Indian Harbor contends that the underlying plaintiffs' claims are "completely devoid of allegations of or implications relating to Innovative's work"[48] as a basis to deny coverage to its additional insured, this statement is belied by Indian Harbor's defense and indemnification of the named insured—not to mention the fact that the underlying petitions implicated Innovative's work and sought damages from KB for same.

Based upon all of the foregoing, Innovative's "operations" were clearly implicated by the *SAHA* and *Arias* matters under the eight-corners rule. The facts of *D.R. Horton* are entirely

---

[45] KB notes that while Innovative was non-suited by the *Arias* plaintiffs on September 15, 2010, the subsequent petitions (the seventh and eighth-amended) continued to complain of Innovative and identify them as an *Arias* defendant. These factual allegations satisfy the eight-corners rule and therefore trigger Indian Harbor's defense duty to KB.
[46] See concurrently filed RJN, Exhibit No. 22 thereto.
[47] See Declaration of Roger D. Kirstein filed concurrently herewith.
[48] Indian Harbor MSJ, pp. 21 and 22 (emphasis in original).

distinguishable and wholly inapplicable and on this basis, Indian Harbor's argument that the AIE does not provide coverage to KB fails and its motion on this ground should be denied.

By contrast, KB has demonstrated that the *SAHA* and *Arias* claims sufficiently implicated Innovative and sought to hold KB responsible for the alleged damages caused by Innovative's work at Mirasol. On this basis, KB's Motion for Summary Judgment should be granted as a matter of law and fact.

**D.      The Contractual Liability Exclusion Does not Apply to KB's Claim**

Following its argument that the *SAHA* and *Arias* claims against KB are based in intentional tort, Indian Harbor then contends that the one of the policy's "business risk" exclusions, the Contractual Liability Exclusion, applies to preclude coverage for KB because "the damages for which KB is sought to be held responsible are economic damages arising out of its contract and are not the type of damages for which a CGL policy is designed to cover."[49]  Notwithstanding Indian Harbor's failure to provide any factual support for this statement, and the carrier's apparent inability to decide whether the claims against KB in the underlying actions were solely based in intentional tort, or solely based in contract, Texas authority does not support Indian Harbor's position that the underlying claims against KB are precluded from coverage under the Contractual Liability Exclusion.

**1.      The *Gilbert* and *Ewing* Holdings Do Not Support Indian Harbor's Disclaimer of Coverage.**

**(a)      *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010)**

Indian Harbor wrongfully contends that pursuant to the Supreme Court of Texas's ruling in *Gilbert,* it is not obligated to defend KB.

---

[49] Indian Harbor MSJ, p. 25.

In *Gilbert*, a general contractor ("Gilbert") contracted with Dallas Area Rapid Transit Authority ("DART") to build a light rail system. The contract required Gilbert to protect the work site and surrounding property, and to repair or pay for damage "resulting from a failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work." *Id.* at 127. A building adjacent to the construction site was flooded by heavy rain. The building's owner, RT Realty ("RTR"), sued DART and Gilbert under various theories of liability including violations of the Texas Transportation Code and the Texas Water Code; nuisance; trespass; and breach of the Gilbert-DART contract as a third-party beneficiary. Gilbert brought an MSJ asserting that as DART's contractor, it had governmental immunity. The trial court agreed and dismissed RTR's tort claims against Gilbert, leaving only the breach of contract claim. Gilbert settled the breach of contract claim with RTR and sought indemnification for the settlement from its general liability carrier, Underwriters at Lloyd's London ("Underwriters'").

As is found in the Indian Harbor policy, the standard ISO-form insurance policy at issue in *Gilbert* contained a Contractual Liability Exclusion which when "[c]onsidered as a whole…provide[s] that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except for enumerated, specific types of contracts called 'insured contracts' and except for instances in which the insured would have liability apart from the contract." *Id.* at 126.[50] The Supreme Court of Texas declined to follow Gilbert's reasoning that the phrase "assumption of liability" solely applied to the insured's assumption of a third party's liability, as in an indemnification or hold-harmless agreement. The *Gilbert* court also found that the second exception to the exclusion applied when the insured's liability was not strictly limited to that arising from a

---

[50] The language of the Contractual Liability Exclusion found in the Indian Harbor policy is slightly, but not substantively, different than the provision analyzed in *Gilbert*.

contractual obligation:

> [T]he exclusion does not say it is limited to the narrow set of contracts by which the insured assumes the liability of another person; the exclusion's language applies without qualification to liability assumed by contract except for two situations: (1) specified types of contracts referred to as "insured contracts," including indemnity agreements by which the insured assumes another's tort liability, and (2) **situations in which the insured's liability for damages would exist absent the contract**--in other words, situations in which the insured's liability for damages **does not depend solely on obligations assumed in the contract**.

*Id.* at 128 (emphasis added).

The court held that the Contractual Liability Exclusion applied to Gilbert's claim, and the second exception was not invoked because Gilbert **had no liability to DART outside of the contract.**[51]

Based upon the foregoing holding by the Supreme Court of Texas, the Contractual Liability Exclusion applies when the insured's liability is the result of contractually assumed obligations only, and which obligations **exceed** those required under general law principles.

> (i) **The Question Before the *Gilbert* Court Involved the Duty to Indemnify, Which Standard for Coverage Is Much Higher Than the Duty to Defend.**

Contrary to Indian Harbor's misguided assertions, **the *Gilbert* decision is entirely inapplicable to the instant dispute**. First, and which important distinction was acknowledged by the Supreme Court of Texas, the *Gilbert* case involved the duty to indemnify, which is determined by the facts established in the underlying suit. The instant matter involves the duty to defend, which

---

[51] "Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property, **and absent its immunity it could be liable for damages it caused by breaching its duty.** In its contract with DART, however, **Gilbert undertook a legal obligation** to protect improvements and utilities on property adjacent to the construction site, and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract *or* failure to exercise reasonable care in performing the work" (emphasis added). The latter obligation--to exercise reasonable care in performing its work--mirrors Gilbert's duty to RTR under general law principles. The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" **extends beyond Gilbert's obligations under general law** and incorporates contractual standards to which Gilbert obligated itself. The trial court granted summary judgment on all RTR's theories of liability other than breach of contract, so **Gilbert's only potential liability remaining in the lawsuit was liability in excess of what it had under general law principles.** Thus, RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion." *Id.* at 127 (KB's emphasis added in bold).

is determined by the eight-corners rule.[52]  In *Gilbert*, it was clear that the insured's claim against Underwriters' was for its settlement of RTR's breach of contract claim, which settlement occurred after all of the tort-based claims against Gilbert were dismissed due to Gilbert's governmental immunity. A carrier's **duty to defend** is not determined by anywhere near the same burden of proof—the pleadings only need to allege a potentially covered claim to trigger a defense obligation.

(ii)     <u>The Supreme Court of Texas Has Held That the Contractual Liability Exclusion Is not a "Breach of Contract" Exclusion.</u>

Contrary to the body of Texas case law, Indian Harbor argues that CGL policies "are not designed to cover…claims arising out of contract"[53] and "the clear intent and purpose of a CGL policy [is] to provide coverage for fortuitous tort liability."[54]  Once again, Indian Harbor's position is not supported by *Gilbert* and the cases cited therein. The Supreme Court of Texas stated in *Gilbert*:

> We **do not hold** that the exclusion in Coverage A **precludes liability for all breach of contract claims**. We hold that it means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract or when the insured would be liable absent the contract or agreement.

*Id.* at 128 (emphasis added).

The Supreme Court of Texas also discusses its holding in *Lamar* that a breach of contract claim can qualify as an occurrence under a CGL policy for purposes of the duty to defend.[55]  In

---

[52] "Whether a claim triggers an insurer's duty to defend and whether a claim eventually is covered or excluded for purposes of indemnity are different questions. See *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (observing that "the duty to defend and the duty to indemnify 'are distinct and separate duties'") (quoting *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)). In *Lamar Homes*, we did not address the duty to indemnify, but rather the separate duty to defend. An insurer's duty to defend is determined under the eight-corners doctrine, while the duty to indemnify is determined by the facts as they are established in the underlying suit. *Id.* at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009))." *Id.* at 132-133.

[53] Indian Harbor MSJ, p. 23.

[54] Indian Harbor MSJ, p. 24.

[55] "In *Lamar Homes*, we said a breach of contract can constitute an occurrence that causes property damage, thus bringing some breach of contract claims within the general grant of coverage for purposes of determining a duty to defend. *Lamar Homes*, 242 S.W.3d at 13. We explained that 'the label attached to the cause of action--whether it be

light of the foregoing, Indian Harbor's attempt to characterize the Contractual Liability Exclusion as a pure "breach of contract exclusion" plainly runs afoul of Texas law.

### (iii)     KB Faced Liability Which Was Not Based on the Contract with MAGI.

Third, KB did not enjoy any form of immunity from the underlying plaintiffs' tort claims and as set forth in Section III(A)(3) at pp. 13-18 herein above, the *SAHA* and *Arias* plaintiffs asserted claims of negligent conduct against KB in each of their petitions. Indian Harbor's statement that "the damages for which KB is sought to be held responsible are economic damages arising out of its contract," and its contention that coverage under the policy is precluded based upon same,[56] ignores the repeated and numerous claims of negligent conduct against KB throughout the course of the underlying actions. Unlike Gilbert, KB's "liability for damages **does not depend solely on obligations assumed in the contract**" to build the Mirasol project as the *Gilbert* decision says it must for the Contractual Liability Exclusion to apply. *Id.* at 128 (emphasis added). Accordingly, the exception to the exclusion which provides coverage for liability that would be imposed in the absence of a contract applies to provide KB with a defense under the Indian Harbor policy.

### (iv)     KB Defended Claims of Vicarious Liability for Innovative's Work.

Fourth and last, in support of its argument that the Contractual Liability Exclusion precludes KB's claim for defense, Indian Harbor states that "KB seeks coverage under the Policy for **its** defective work" and "the Policy does not provide coverage for defective work because even if the allegations fell within the insuring agreement of the Policy, they are excluded by the [Contractual Liability Exclusion] which [is] specifically designed to preclude coverage for the very type

---

tort, contract, or warranty--does not determine the duty to defend' and that 'any preconceived notion that a CGL policy is only for tort liability must yield to the policy's actual language.'" *Gilbert*, 327 S.W.3d at 132.
[56] Indian Harbor MSJ, p. 25.

of…**contract-based liability** asserted against KB."[57] An examination of the facts which underlie KB's claim for a defense shows that once again, Indian Harbor's position is not supported by the facts.

KB has established herein that the underlying petitions expressly allege negligence as against KB and its subcontractors. Moreover, Indian Harbor provides no support for its contention that "KB seeks coverage for its defective work," because there are no facts to support this position. To the contrary, it is clear that KB seeks a defense from Indian Harbor pursuant to the terms of the form 2026 1185 AIE, the instrument which adds KB to the policy, and which provides that KB is an insured for "liability arising out of [Innovative's] work." Under Texas law, a contractor "may be liable for the negligence of its subcontractor if it retains the right or power to control the manner in which the subcontractor performs its work but fails to exercise reasonable care in supervising the contractor." *Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*, 188 S.W.3d 805, 816 (Tex. App. Fort Worth 2006), *reversed on other grounds*, 248 S.W.3d 171 (Tex. 2008). Moreover, "[t]he common-law principles that define when there will be vicarious liability are designed to assign liability for injury to third parties to the party who was directing the details of the negligent actor's conduct when that negligence occurred." *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 146 (Tex. 2003). The underlying petitions repeatedly allege that KB was responsible for supervising its negligent subcontractors, including Innovative (which allegations are set forth with particularity in Appendix No. 17 hereto). Vicarious liability obviously sounds in tort, not contract, and for this further reason the Contractual Liability Exclusion does not apply to KB's claim for a defense from Indian Harbor. Because Texas law requires a carrier to fully defend an insured if any one claim potentially falls within the policy's grant of coverage, Indian Harbor owes KB a complete defense.

---

[57] Indian Harbor MSJ, p. 24 (emphasis added).

In sum, the facts of KB's claim do not fit within the *Gilbert* holding. The *Gilbert* court clearly recognized the unique factual circumstances that formed the bases of its decision and implicitly cautioned against the over-application of its holding.[58] Based upon all of the foregoing, Indian Harbor cannot rely on *Gilbert* as a basis to deny a defense obligation to KB.

**(b)** ***Ewing Constr. Co. v. Amerisure Ins. Co.*, 2011 U.S. Dist. LEXIS 45827, (S.D. Tex. Apr. 28, 2011)**

Indian Harbor's defense to coverage in this matter heavily relies on an unpublished opinion from the Southern District issued two weeks before Indian Harbor filed this case against KB, which decision is **currently on appeal to the U.S. Court of Appeals for the Fifth Circuit with a pending unopposed motion to certify questions to the Supreme Court of Texas**.

In *Ewing*, the insured contractor ("Ewing") was sued by the Tuloso-Midway School District ("School District") for deficient construction of contracted-for tennis courts, which allegedly started to crack and show other problems shortly after construction was completed. Ewing sought a defense against the School District's claims from its liability carrier, Amerisure.

The School District's petitions asserted both breach of contract and negligence causes of action. The *Ewing* court held that the breach of contract claims sufficiently alleged that Ewing assumed liability for its own defective work, such that the claims fell under the Contractual

---

[58] The Supreme Court of Texas stated:

> We understand Gilbert's concerns [about potential far-reaching ramifications of the court's interpretation], but speculation about coverage of insurance policies based on surmised factual scenarios is a risky business because small alterations in the facts can warrant completely different conclusions as to coverage. It is proper that we await a fully developed, actual case to decide an issue not presented here.
>
> ***
>
> The exception for liability for damages Gilbert would have in the absence of the DART contract is inapplicable where, as here, the insured has governmental immunity and liability is based on its contract. If particular relationships of the parties, their contracts, and applicable legal principles create unusual circumstances, as they do here, it is incumbent on the parties to take those relationships, circumstances, and applicable legal principles into account when entering into contracts and insurance agreements.

*Id.* at 135.

Liability Exclusion. The *Ewing* court further held that the "liability in the absence of the contract" exception to the exclusion did not apply to allow for Ewing's defense.

### (i)     The *Ewing* Decision Contradicts Texas Case Law.

The *Ewing* court acknowledged that the exception to the Contractual Liability Exclusion applied if the insured would have liability in the absence of a contract, but agreed with Amerisure's position that despite the tort claims, the School District's "claims sound solely in contract, and there is no liability in the absence of the contract between the parties." *Id.* at 26. In so holding, the *Ewing* court applied the economic loss rule to negate the underlying claimant's negligence causes of action for purposes of determining the duty to defend—a decision which is in direct contravention of the Supreme Court of Texas's decision in *Lamar Homes*, 242 S.W.3d 1. The *Lamar Homes* court expressly stated that the economic loss rule was "not a useful tool for determining insurance coverage" and declined to follow the very same line of reasoning utilized by the *Ewing* court to reach its anomalous decision. *Id.* at 13.

The *Ewing* decision therefore contradicts Texas law. It is a well-settled principle that, when considering state law questions in a diversity action, the federal court must defer to the governing state law. As the court in *Crisalli v. ARX Holding Corp.* explains:

> When exercising diversity jurisdiction over a question based upon state law, federal courts should apply the substantive law of that state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72 (1938). Contract law is an area of state law. *Doctor's Ass., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) ("States may regulate contracts . . . under general contract law principles.").

*Crisalli v. ARX Holding Corp.*, 177 Fed. Appx. 417, 419 (5th Cir. Tex. 2006). Based upon all of the foregoing, Ewing holds no precedential value and should not be followed.

### (ii)    A Court Is Not Permitted to Make Determinations on Liability Claims and Defenses Pending Before A Different Court.

Moreover and importantly, in holding that the economic loss rule[59] applied to the negligence causes of action in the underlying case, the *Ewing* court **impermissibly** evaluated and negated the merits of the negligence claims in determining that the carrier did not owe a duty to defend against them, despite the fact that these claims had not yet been adjudicated. ("This analysis necessarily leads to the conclusion that Tuloso-Midway's claims against *Ewing* in the Underlying Lawsuit sound only in contract, not tort…" *Id.* at 37.) Under *Ewing*, a coverage court would be allowed to apply the economic loss rule or make other determinations regarding liability defenses that are pending in a different court in the underlying liability case against the insured—a situation in direct contravention of Texas law against courts issuing advisory opinions. *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993); *Employers Ins. of Wausau v. Burlington N. & Santa Fe Ry. Co.*, 336 F. Supp. 2d 637, 641 (E.D. Tex. 2003).

The Court of Appeals of Texas in *Gehan,* 146 S.W.3d 833 explained the rule prohibiting a coverage court from evaluating the merits of a separate liability case:

> **The insurers ask this court to ignore the negligence allegations in the underlying statement of claims.** However, Texas courts will not look beyond the pleadings and determine facts when the issue is **duty to defend**, as opposed to duty to indemnify. [Footnote omitted.] **There is a vast difference between a court analyzing pleadings to determine whether there is a claimed "occurrence" on the face of the pleadings and a court conducting an evaluation of the merits of the underlying claim.** Texas cases do not direct us to ignore pleadings or to elevate one part of the pleadings over the other. In this case, **the allegations of negligence are more than simply bare-bones allegations**. However, as the insurers point out, they are also tied to an underlying contractual relationship. **If we were to hold that there is no duty to defend, we would be doing precisely what Texas courts have long held we cannot do--evaluate the merits of the claim and ignore the facts alleged.** [Footnote omitted.] Instead, we must liberally interpret the pleadings to determine whether an occurrence is potentially claimed.

---

[59] The economic-loss rule is a court-developed doctrine that limits claims for economic damages to a contract cause of action. It is a liability defense which preserves the distinction between contract and tort law, and prevents parties to a contract from avoiding agreed-upon contract remedies and seeking broader remedies under tort theory than the contract would have permitted.

*Id.* at 842-843 (emphasis added).

In accordance with the binding Texas authority set forth in *Gehan*, the negligence claims against KB cannot simply be recast by Indian Harbor as breach of contract claims as a means to avoid its defense obligation and on that basis, *Ewing* does not apply.

(iii)     <b><u>The Authority Upon Which <i>Ewing</i> Relies Is Also Factually Distinguishable.</u></b>

Notwithstanding that the *Ewing* decision contradicts the seminal holding by the Supreme Court of Texas in *Lamar Homes*, it relied on Fifth Circuit precedent in *Century Surety Co. v. Hardscape Construction Specialties, Inc.*, 578 F.3d 262, 267 (5th Cir. 2009) to do so. As with *Ewing*, the facts of *Hardscape* are also wholly distinguishable from those which comprise KB's claim for a defense from Indian Harbor.

The allegations in *Hardscape* related to problems with swimming facilities which were the subject matter of a contract. Importantly, the question before the *Hardscape* court involved the duty to indemnify, not the duty to defend which is in dispute here. The *Hardscape* court found that the "allegations sound in contract because the damage occurred only to the subject matter of the [Hardscape] contract…" *Id.* at 270.

The *Ewing* court notably emphasized the finding in *Hardscape* that "[a] **different result might obtain if, for example, Hillwood had alleged that the faulty pool construction damaged its business interests or adjacent property, but that is not the case.**" *Id.* (citations omitted; emphasis in original). Here, the *SAHA* and *Arias* plaintiffs alleged damage to subject matter other than the Mirasol Homes, such as personal property and goods; and the loss of revenue and the loss of use of such lost revenue. The allegations of damages to subject matter other than the Mirasol homes contained the 17 relevant underlying petitions are set forth with particularity in Appendix No. 18 (relative to the *SAHA* petitions) and Appendix No. 19 (relative to the *Arias* petitions) hereto.

Furthermore, under the terms of the 2026 1185 AIE, KB is an insured "with respect to liability arising out of [Innovative's] operations…" As also set forth in Appendix Nos. 18 and 19 hereto, the *SAHA* and *Arias* Plaintiffs also alleged "damage to other portions of the homes" and loss of use of the homes as a result of Innovative's concrete work. These allegations constitute damages to property beyond the scope of the KB/Innovative subcontract (i.e., damage to "other portions of the home" and loss of use of the home is not the same as damage to the concrete or loss of use of the concrete) for which KB was allegedly and vicariously liable. This vicarious (tort-based) liability is covered under the Indian Harbor policy by virtue of the terms of the 2026 1185 AIE which provides coverage to KB for "liability arising out of [Innovative's] operations." [60]

### (iv) *Ewing* Improperly Extends the Rule for Determining the Duty to Indemnify to the Duty to Defend.

*Ewing* takes the extraordinary step of examining the coverage analysis used in *Gilbert* for purposes of determining the **duty to indemnify**, and extends that analysis to a determination of the **duty to defend**. *Ewing*, 2011 U.S. Dist. LEXIS 45827 at 23-24. Again, the duty to defend is triggered when a petition states a potentially covered claim, whereas the duty to indemnify is determined by the facts established at trial. On this further ground, *Ewing's* application of *Gilbert* to the duty to defend is improper.

The *Ewing* decision represents a significant departure from binding Texas case law and for this reason it should not serve to relieve Indian Harbor of its defense obligations. Indian Harbor's reliance on a decision which (1) contravenes Texas law; (2) is currently on appeal to the Fifth Circuit and the Supreme Court of Texas; and (3) has no precedential value should not be allowed to

---

[60] Another case relied upon by the *Ewing* court and also cited in Indian Harbor's MSJ, a memorandum opinion issued by the Northern District of Texas captioned *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*, 720 F. Supp. 2d 781, 785 (N.D. Tex 2010) aff'd, 10-10432, 2011 WL 365279 (5th Cir. 2011), is also factually distinguishable in that it too analyzed the Contractual Liability Exclusion relative to the **duty to indemnify**, which is based upon proven facts; whereas the duty to defend is based upon the allegations. Moreover, the claims at issue in *Lewis Builders* did not involve damage to property other than the subject home; additional insured policy terms; or damage to property other than the subject matter of the named insured's work.

permit the carrier to escape its defense obligation to KB. In the event the Court is inclined to rely upon the *Ewing* opinion in deciding the present motions by KB and Indian Harbor, KB respectfully requests that the Court abstain from issuing a ruling until Fifth Circuit and the Supreme Court of Texas have an opportunity to weigh in on the following questions presented by Ewing in its Appeal Brief:

I. Does a general contractor that enters into a contract in which it agrees to perform its construction activities in a good and workmanlike manner "assume liability" within the meaning of the Contractual Liability Exclusion?

II. Did the Supreme Court of Texas' holding in *Gilbert*, 327 S.W.3d 118 (Tex. 2010), with respect to the Contractual Liability Exclusion in the indemnity context, extend to the duty to defend?

III. If the Answer to Question II is "Yes," do tort allegations in the underlying lawsuit fall within the exception in the Contractual Liability Exclusion for "liability that would exist in the absence of the contract"? Or, is the judge in the coverage case permitted to evaluate the merits of the other claims (such as applying the "economic loss" rule to negligence allegations) in determining the duty to defend?

A decision supported by *Ewing* may be in error if the courts of appeal overturn any aspect of its holding.

Because Indian Harbor has not provided any applicable authority to support its position that the Contractual Liability Exclusion applies to preclude KB's claim for coverage, its motion should be denied on this ground as a matter of law and fact. Conversely, KB has established that the underlying petitions state a claim for liability against KB which is not solely based in contract and on this basis, KB's Motion for Summary Judgment should be granted.

**E.** **The "Duty to Defend" and "Duty to Indemnify" Are Separate and Independent Obligations.**

As its last argument for summary judgment, Indian Harbor proclaims that "[s]ince the allegations…do not trigger a duty to defend, there is no possibility that Indian Harbor will ever have a duty to indemnify."[61] Indian Harbor then cites two cases to support this proposition: *Utica Nat'l*

---

[61] Indian Harbor MSJ, p. 27.

*Ins. Co. v. Am. Indem. Co.,* 141 S.W.3d 198, 201 (Tex. 2004) and *Farmers Tex. County Mut. Ins.*

*Co. v. Grifin,* 955 S.W.2d 81, 84 (Tex. 1997).

However, the precedent cited here by Indian Harbor is no longer good law and is thus

unpersuasive and not citable. The Supreme Court of Texas recently clarified the two separate,

independent obligations owed under a commercial general liability policy and found that a carrier

may have a duty to indemnify even when the allegations do not create a duty to defend:

> We hold that even if [Indian Harbor] has no duty to defend [KB Home], it may still
> have a duty to indemnify [KB Home] as an additional insured under [Innovative's]
> CGL insurance policy. That determination hinges on the facts established and the
> terms and conditions of the CGL policy.
> ***
> These duties are independent, and the existence of one does not necessarily depend
> on the existence or proof of another.

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744-745 (Tex. 2009)

While KB has not yet made a demand for indemnification from Indian Harbor, and is not

seeking a judicial determination on that obligation by way of this Opposition and Cross-Motion for

Summary Judgment, the *D.R. Horton* ruling dispelled the widely held assumption that where a

carrier had no duty to defend, it also had no duty to indemnify. While the former is determined by

the allegations, **the latter is determined by the facts proven at trial**. Therefore, even if Indian

Harbor is successful in its attempts to escape its defense obligations to KB Home, this would not on

its own relieve Indian Harbor of its duty to indemnify KB for any damages paid by KB to plaintiffs

for property damage arising out of Innovative's operations.

## IV.   CONCLUSION

Indian Harbor clearly fails to satisfy the legal requirements for each of the four bases of its

Motion for Summary Judgment.  First, KB has fully demonstrated that each of the petitions in the

underlying *SAHA* and *Arias* matters state independent, standalone claims of negligence which

constitute an "occurrence" as that term is defined by the policy. Based upon same, KB is entitled to

summary judgment as a matter of law. Because Indian Harbor fails to establish that all of the underlying claims fall within Intended Injury Exclusion, Indian Harbor is subject to a duty to defend as a matter of law.

Second, Texas law does not require the insured to forego coverage when a petition fails to allege the timing of the claimed property damage, when such silence creates the potential for a covered claim. On that basis, Indian Harbor's Motion for Summary Judgment fails as a matter of law, whereas KB is entitled to judgment regarding Indian Harbor's duty to defend on this ground.

Third, each of the 17 relevant underlying petitions assert allegations that KB's subcontractors, which includes Innovative, were responsible for the claimed defects and damages. Indian Harbor fails to establish that the Additional Insured Endorsement precludes a defense for KB under this set of facts and therefore its motion should be denied as a matter of law. Conversely, KB has demonstrated to this Court that Texas law requires Indian Harbor to defend KB when the allegations state a potential claim for damages arising out of Innovative's work and therefore, KB's Motion for Summary Judgment should be granted as a matter of law.

Fourth and last, Indian Harbor has failed to show that KB's alleged liability to the *SAHA* and *Arias* claimants is the sole result of contractually assumed obligations, which obligations **exceed** those required under general law principles. Moreover, because KB was charged with tort-based liability (negligence, vicarious liability), the Contractual Liability Exclusion does not relieve Indian Harbor of its duty to defend. Indian Harbor's contention that all of the numerous claims relating to the construction of the 246 Mirasol homes pled against KB and its subcontractors (including Innovative) in the Underlying Action are based solely in contract or intentional tort, and in no way negligent conduct, is not supported the allegations or common sense. Indian Harbor's motion on this ground should be rejected.

Defendant KB respectfully requests of the Court as follows: (1) For an order denying Indian Harbor's Motion for Summary Judgment; (2) For an order granting KB's Motion for Summary Judgment by making a determination that Indian Harbor was legally required to defend KB with regard to the *SAHA* and *Arias* actions; (2) For an award of reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.009; (4) For an award of prejudgment interest; and (5) For a penalty of 18% per annum pursuant to Tex. Ins. Code § 542.051 *et seq.*

DATED: January 20, 2012

*/s/ Erik D. Buzzard*

By _____
Erik D. Buzzard
*Attorney-in-charge*
Texas State Bar No. 24067954
Southern District Bar No. 1171053
Palumbo Bergstrom LLP
17901 Von Karman Ave., Suite 500
Irvine, CA 92614
Telephone:  (877) 882-1979
Facsimile: (877) 251-1331
**ATTORNEYS FOR DEFENDANTS KB Home, Inc. also known as KB Home; KB Home Lone Star, Inc.; KB Home of San Antonio; and KB Home Lone Star LP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of January, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Gary N. Schumann, Esq.
Camille Johnson, Esq.
Jessica Marcoux Hall, Esq.
Scott B. Herlihy, Esq.
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
*Attorneys for Plaintiff*
*Indian Harbor Insurance Company*

*/s/ Erik D. Buzzard*
_____
Erik D. Buzzard