IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

INDIAN HARBOR INSURANCE COMPANY,§
                          §
        Plaintiff,    §
                          §
VS.                  §   CIVIL ACTION H-11-CV-1846
                          §
KB LONE STAR, INC. f/k/a LONE  §
STAR, L.P. f/k/a KAUFMAN & BROAD§
LONE STAR, L.P.,        §
                          §
        Defendant.    §

**OPINION AND ORDER OF PARTIAL SUMMARY JUDGMENT**

The above referenced declaratory judgment action seeks a determination of Plaintiff Indian Harbor Insurance Company's ("Indian Harbor's") rights, status, and obligations regarding defense and indemnification in two underlying lawsuits for purported "Additional Insured" Defendants KB Home Lone Star, Inc., KB Home Lone Star L.P., KB Lone Star, Inc., Lone Star, L.P., and Kaufman & Broad Lone Star, L.P. (collectively, "KB")[1] under a liability insurance policy ("the policy")[2] issued to their subcontractor, Innovative Concrete Construction ("Innovative"). Pending before the Court are cross motions for summary judgment filed by Plaintiff Indian Harbor (instrument #11) and KB (#27), and KB's motion for summary judgment regarding application of the Texas

---

[1] The Court refers to all KB related entities as "KB."

[2] Citations to IHIC App. are to Indian Harbor's Appendix (#12).  A copy of the policy, AIL022000044, is attached as Ex. 1, IHIC App. 1-40.

Insurance Code § 542.051-.061 (#42).  The last motion becomes ripe only if the Court, in ruling on the cross motions for summary judgment, determines that Indian Harbor owed KB a duty of defense and indemnification in the underlying suits.

Also pending is Indian Harbor's motion for more definite statement (#51) regarding KB's counterclaim (#40).  Because on May 8, 2012 KB filed an amended counterclaim (#56) and Indian Harbor has not contested the adequacy of the amended pleading, the Court finds that the motion for more definite statement (#51) is moot.

After careful review of the pleadings and their attachments, the insurance policy in dispute, the briefs, and the applicable law, for the reasons indicated below, the Court concludes that Indian Harbor's motion for summary judgment should be granted as to the duty to defend but denied as to the duty to indemnify.  Until the latter issue is resolved, KB's motion for summary judgment regarding application of the Texas Insurance Code § 542.051-.061 (#42) is not ripe for decision.

## Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment

as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744,

752 (5th Cir. 2006).   Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'"   *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).   Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996); *Adams Family Trust v. John Hancock Life Ins. Co.*, 424 Fed. Appx. 377, 81 & n.11 (5th Cir. May 11, 2011).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion.   *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).   Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment.   *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

"'On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th

Cir. 2010), *quoting Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## Background

Pursuant to KB's subcontract with Innovative, KB claims it was an "additional insured" under a Blanket Additional Insured endorsement to Innovative's commercial general liability ("CGL") policy[3] for a one-year term of October 18, 2000 through October 18, 2001, issued by Indian Harbor.[4]   KB served as the general contractor for the construction of a 246 single-family, government-subsidized housing development, known as "Mirasol," in San Antonio, Bexar County, Texas.   In two underlying suits, which were consolidated for trial, KB and Innovative were sued for alleged construction defects and property damage at the Mirasol homes.  *San Antonio Housing Authority v. MAGI Realty, et al.,* Bexar County District Court Case No. 2007-CI-05258, filed in the 408th Judicial

---

[3] Innovative was the named insured under the policy in dispute.  Indian Harbor's complaint states that "Innovative did work as a concrete subcontractor for KB at various times and on various projects spanning multiple year periods."  #1, ¶ 6.

[4] KB explains that it built the Mirasol homes pursuant to a contract between the San Antonio Housing Authority ("SAHA"), a public agency, and Magi Realty, Inc., the project manager, and a joint venture agreement between Magi Realty, Inc. and KB.   KB contracted with Indian Harbor's named insured, Innovative, for work at Mirasol.   Innovative entered into subcontract agreements dated January 18, 2000 and February 12, 2001, which applied to Innovative's flatwork and concrete foundation work at Mirasol.   KB maintains that under the terms of the subcontract, Innovative agreed to add KB as an additional insured to its CGL policies.  #27 at 1-2.

District Court of Bexar County, Texas on April 9, 2007 ("the *SAHA* action"), and *Arias, et al. v. KB Home, et al.*, Bexar County District Court Case No. 2009-CI-05175, filed in the 408th Judicial District Court of Bexar County, Texas on May 28, 2009 ("the *Arias* action"). After the cases were consolidated on January 7, 2010 for discovery and trial purposes, the parties reached a settlement in mid-2011. The underlying litigation was dismissed on December 14, 2011.

In the instant lawsuit Indian Harbor seeks a declaration that it owes no duty to defend or to indemnify KB for the claims against KB in the underlying consolidated lawsuit.

### The Policy

The CGL policy in dispute covers "Bodily Injury and Property Damage Liability" and provides,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

#12, IHIC App. at 6, Section I,,A,1,a.  Section I,A,1,b, states,

> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage  territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

"Property damage" is defined in Section V,15, IHIC App. at p. 17, as

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Additional Insured endorsement (an ISO form no. 20 26 11 85) provides coverage to "all . . . organizations where required by written contract between such . . . organization and the named insured." IHIC App. 19. The Additional Insured endorsement states in relevant part, "WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you." IHIC App. 19. The policy defines "you" and "your" as referring to the Named Insured in the Declarations and states that "'insured' means any person or organization qualifying as such under Section II—Who is an Insured." IHIC App. 6. The policy Declarations reference only Innovative as the Named Insured. Under Section V,19,

"Your work" means:
a. Work or operations performed by you or on your behalf, and
b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and
b. The providing of or failure to provide warnings or instructions.

**Relevant Substantive Texas Law**

Because this declaratory judgment is in federal district court pursuant to diversity jurisdiction, the substantive law of the forum state, including choice of law rules, and federal procedural law govern.  *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009).  Since Texas is the forum state, Texas' substantive and choice-of-law rules apply.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Texas Insurance Code article 21.42 ("Texas Law Governs Policies")[5] provides a choice-of-law rule which requires that Texas law applies where (1) the insurance proceeds are payable to a citizen or inhabitant of Texas, (2) the policy issued pursuant to the contract must be issued by a company doing business in Texas, and (3) the policy is issued in the course of the insurance

---

[5] Article 21.42 provides,

Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State, relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State or at the home office of the company or corporation issuing the same.

-8-

company's Texas business. *Scottsdale Ins. Co. v. National Emergency Services, Inc.*, 175 S.W. 3d 284, 292 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). As reflected in the pleadings in the underlying suits, the insured, Innovative, is a Texas corporation, and KB Lone Star is identified in the complaint seeking declaratory judgment as "a Texas Corporation authorized and doing business in Texas (#1 at ¶ 2). Moreover, because the parties have not briefed any other state's law except that of Texas, they have waived any alternative choice-of-law argument. *Arthur W. Tifford, PA*, 562 F.3d at 705 n.2, *citing Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987).

The construction of an insurance policy is a question of law. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W. 3d 722, 729 (Tex. App.--Austin 2000), *citing Coker v. Coker*, 650 S.W. 2d 393-94 (Tex. 1983). When the terms of a contract are unambiguous and the facts underlying a contract claim are undisputed, whether coverage exists under the contract is a question of law. *State Farm Fire and Cas. Co. v. Lange*, 2012 WL 2547105, *4 (5th Cir. July 3, 2012), *citing Fidelity & Cas. Co. of N.Y. v. Lott*, 273 F.2d 500, 502 (5th Cir. 1960).

Under Texas law, insurance policies are construed under the usual principles of contract law. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998), *citing Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir.

1996); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W. 3d 547, 551 (Tex. 2003). The court's primary role is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of America*, 972 S.W. 2d 738, 741 (Tex. 1998), *citing State Farm Life Ins. Co. v. Beaston*, 907 S.W. 2d 430, 433 (Tex. 1995). In defining the scope of coverage, the court examines the entire policy to determine the true intent of the parties. *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W. 3d 198, 202 (Tex. 2004). The court must read the policy as a whole and give effect to each of its contractual provisions so that none is rendered meaningless. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003). The terms of a contract are given their plain, ordinary, generally accepted meaning unless the contract itself redefines those terms. *Bituminous Cas. Corp. v. Maxey*, 110 S.W. 3d 203, 208-09 (Tex. App.--Houston [1st Dist.] 2003, pet. denied), *citing W. Reserve Life Ins. v. Meadows*, 152 Tex. 559, 261 S.W. 2d 554, 557 (1953).

A court construes an unambiguous policy as a matter of law. *Building Specialties, Inc. v. Liberty Mutual Fire Ins. Co.*, 712 F. Supp. 2d 628, 635 (S.D. Tex. 2010). When a contract is clear and unambiguous, i.e., when it can be given a definite or certain legal meaning, the court enforces it as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W. 2d 517, 520 (Tex. 1995). Where the contract's language can be given two or

more reasonable interpretations, it is ambiguous. *Id.  See also Building Specialties*, 712 F. Supp. 2d at 635 ("if a policy provision is uncertain or doubtful or is susceptible to more than one reasonable interpretation, it is ambiguous."). "[T]he fact that the parties disagree as to coverage does not create an ambiguity." *Gilbane Building Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011), *citing Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004).

In an insurance policy, if a provision, especially in an exclusionary clause, is ambiguous, the court must resolve the ambiguity in favor of the insured. *Sink*, 107 S.W. 3d at 551; *see also Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)("In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern."). "Where an ambiguity involved an exclusionary provision of an insurance policy, [the court] 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran*, 972 S.W. 2d at 741, *quoting Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W. 2d 552, 555 (Tex. 1991).  *See also Sczepanik v. State Farm Fire and Cas. Co.*, 211 F.3d 256, 257 (5th Cir. 2000)("the Texas rule of law [is] that ambiguity involving an exclusionary provision of

-11-

an insurance policy must be resolved in favor of the insured's construction provided the construction is reasonable").

"Under Texas law, an insurer may have two responsibilities relating to coverage--the duty to defend and the duty to indemnify." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (Tex. 2011), *citing D.R. Horton-Tex., Ltd v. Markel Int'l Ins. Co.*, 300 S.W. 3d 740, 743 (Tex. 2009).  In Texas the duty to defend and the duty to indemnify are distinct and separate duties of the insurer.  *Trinity Universal Ins. Co. v. Cowan*, 945 S.W. 2d 819, 821-22 (Tex. 1997).

Usually under Texas law, pursuant to what is called the "eight-corners rule" or the "complaint-allegation rule," when an insured is sued by a third party, an insurer's duty to defend is determined by examining only the complaint or petition filed in the underlying lawsuit by the third-party plaintiff and the terms of the insurance policy.  *GuideOne Elite Insurance Company v. Fielder Road Baptist Church*, 197 S.W. 3d 305, 308 (Tex. 2006); *King v. Dallas Fire Ins. Co.*, 85 S.W. 3d 185, 187 (Tex. 2002).  The duty to defend is determined by reviewing the latest amended pleading in the underlying suit(s), here the *Arias* Plaintiffs' Eighth Amended Petition (IHIC App. 41-64) and the *SAHA* Plaintiffs' Ninth Amended Petition (IHIC App. 65-96).  *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (Tex. 2004); *Guaranty Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (Tex. 1998) ("An amended

-12-

pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading."). The court must focus on the facts alleged that show the origin of the damages in the most recent complaint of the underlying litigation, and not on the legal theories or conclusions asserted. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W. 2d 139, 141 (Tex. 1997); *Evanston Ins. Co. v. Legacy of Life, Inc.*, ___ S.W. 3d ___, No. 11-0519, 2012 WL 2476935, *2 (Tex. June 29, 2012). Even where easily discovered, facts outside the pleadings are ordinarily immaterial to the decision. *GuideOne*, 197 S.W. 3d at 308. The truth or falsity of the complaint's allegations is not relevant, and the allegations against the insured are liberally construed in favor of coverage. *Id., citing Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W. 2d at 141.

Some lower Texas courts have recognized, and the Fifth Circuit in an *Erie* guess has opined, that in the "unlikely situation that the Texas Supreme Court were to recognize an exception" to the strict eight-corners rule to permit extrinsic evidence, it would be in very limited circumstances, specifically "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *GuideOne*, 197 S.W. 3d at 308-09, citing various Texas court

decisions and *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 530-31 (5th Cir. 2004)(discussing unsettled Texas law on the question of using extrinsic evidence).  In *GuideOne*, the Texas High Court acknowledged it was aware of the Fifth Circuit's *Northfield* exception but did not apply it to the case before it but observed that the extrinsic evidence before it was "relevant both to coverage and the merits and thus does not fit the above exception to the rule." *Id.* at 309.  The Texas Supreme Court still has not applied the *Northfield* exception to the eight-corners rule, but the Fifth Circuit has done so in several cases.  *Interstate Fire and Cas. Co. v. Southern Tank Leasing, Inc.*, Civ. A. No. H-10-4908, 2012 WL 1231738, *2 (S.D. Tex. April 12, 2012).  Regardless, the exception does not apply where a court can determine from an eight-corners analysis whether the underlying complaint potentially states a covered claim.  *Id., citing Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 498 (Tex. 2008), and *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612-13 (5th Cir. 2012)(Under Texas law, "'[t]he scope of the duty to defend is interpreted broadly:  'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy'")(*quoting Nat'l Union Fire Ins. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)).  "If an insurer has a duty

to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit." *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W. 3d 450, 455 (Tex. App.--Houston [14th Dist.] 2008, pet. denied). *See also Dallas Nat. Ins. Co. v. Sabic Americas, Inc.*, 355 S.W. 3d 111, (Tex. App.--Houston [1st Dist.] 2011)("If potential coverage exists 'for any portion of the suit, and insurer must defend the entire suit.'"), *quoting Stumph*, 34 S.W. 2d at 133-34.

While the duty to defend is limited by the eight-corners rule, the duty to indemnify is controlled not by the pleadings, but by the facts proven at trial in the underlying litigation. *Gilbane Bldg.*, 664 F.3d at 601, *citing Pine Oak Builders Inc. v. Great American Lloyds Ins. Co.*, 279 S.W. 3d 650 (Tex. 2009). The Texas Supreme Court has held, "[T]he duty to indemnify is not dependent on the duty to defend and . . . an insurer may have a duty to indemnify its insured even if the duty to defend never arises." *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W. 3d at 741. *See also Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011)(recognizing as erroneous the conclusion of many courts that because the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify absent a duty to defend)(citing *D.R. Horton-Texas*). Having a duty to defend means that the insurer will defend the insured in a suit that "alleges and seeks damages for an event

-15-

potentially covered by the policy," while the duty to indemnify means the insurer will "pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d at 252-53 (5th Cir. 2011), *quoting D.R. Horton-Texas*, 300 S.W. 3d at 743.  "The difference between the two is a matter of timing." *Id.*

> The distinction between the duty to defend and the duty to indemnify is based upon the time when the duties are determined.  The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined.  In contrast, the duty to indemnify arises only once liability has been conclusively determined.  In other words, because the duty to defend arises whenever an insurer ascertains facts that give rise to the possibility or the potential liability to indemnify, the duty to defend must be assessed at the very outset of a case, unlike the duty to indemnify, which arises only when the insured's underlying liability is established.

*Id., quoting* 14 *Couch on Insurance* § 200:3.  Therefore the duty to indemnify usually is not justiciable until after the underlying litigation is resolved because coverage may turn on facts that are proven even if they are not pled. *Ewing Constr. Co. v. Amerisure Ins. Co.*, ___ F.3d ___, No. 11-40512, 2012 WL 2161134, *7 (5th Cir. June 15, 2012), *citing D.R. Horton*, 300 S.W. 3d at 745.  Under Texas law, the insured bears the burden of establishing the insurer's duty to indemnify by presenting sufficient facts to demonstrate coverage under the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 532 F.3d 398, 401 (5th Cir. 2008).  The duty to defend is broader that the duty to indemnify, which in turn is

triggered only by the actual facts establishing the insured's liability in the underlying litigation. *Continental Cas. Co v. Consolidated Graphics, Inc.*, 656 F. Supp. 2d 650, 657 (S.D. Tex. 2009).

"Where the liability in the underlying litigation is resolved before trial without an opportunity to develop the facts, 'additional evidence--not relevant to the issue of liability but essential to coverage--may be introduced during the coverage litigation to establish or refute the duty to indemnify.'" *Mount Vernon Fire Ins. Co. v. Boyd*, Civil Case No. H-11-3785, 2012 WL 1610745, *4 (S.D. Tex. May 8, 2012)(granting summary judgment as to the duty to defend, but denying it without prejudice as to the duty to indemnify because given the settlement of the dispute, there is currently an inadequate record to determine whether Boyd's liability was based on facts that would give rise to a duty to indemnify"), *quoting Colony Ins. Co.*, 647 F.3d at 254. *See also Building Specialities*, 712 F. Supp. 2d at 636 ("Typically, the court considering the coverage dispute will consider additional evidence needed to establish whether there was coverage in the underlying case, particularly if the underlying case is resolved without a trial on the merits. . . . The trial court is authorized to make factual findings necessary to resolve coverage."), *citing Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008)(holding that the trial court can

-17-

consider evidence regarding facts required to determine coverage that were not adjudicated in the underlying litigation). Furthermore, if the court determines that "the insurer has no duty to defend, . . . [if] the same reasons negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," the insurer owes no duty to indemnify. *Farmers Tex. County Mutual Ins. Co. v. Griffin*, 955 S.W. 2d 81, 84 (Tex. 1997)(when). The *Griffin* rule "cannot be construed . . . broadly" because it is only an exception to the general rule that the underlying suit must be resolved before indemnification is justiciable and only applies when there is "no conceivable set of facts" in the underlying suit that would support a finding of a duty to indemnify. *D.R. Horton-Texas,* 300 S.W. 3d at 745. An insurer has no duty to indemnify its insured if the policy at issued does not provide coverage for the claims made against the insured. *Western Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 315 (5th Cir. 1993).

The insured bears the burden of showing that a claim against him is within the policy's scope of coverage; but when the insurer relies on the policy's exclusions to preclude coverage, the insurer bears the burden of proving that one or more of those exclusions applies. *Trinity Universal Ins. Co. v. Employer Mut. Cas. Co.*, 592 F.3d 687, 691-92 (5th Cir. 2010), *citing Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). If

-18-

the insurer shows that an exclusion applies, the burden shifts again and the insured must show that an exception to the exclusion brings the claim back within coverage. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W. 3d 118, 124 (Tex. 2010). In other words, "[i]f the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id.* In determining whether an exclusion applies, the court, again pursuant to the eight-corners rule, looks at the pleaded facts giving rise to the alleged actionable conduct and not at the legal theories or labels (whether tort, contract or warranty") asserted for recovery. *Adamo v. State Farm Lloyds Co.*, 853 S.W. 2d 673, 676 (Tex. App.-- Houston [14th Dist.] 1993, writ denied), *cert. denied*, 511 U.S. 1053 (1994), *citing Holmes v. Employers Casualty Co.*, 699 S.W. 2d 339, 340 (Tex. App.--Houston [1st Dist.] 1988, writ ref'd n.r.e.); *Gilbert Texas Const.*, 327 S.W. 3d at 132.

As for the Contractual Liability exclusion, in *Gilbert Texas Construction*, 327 S.W. 3d 118, the Texas Supreme Court found that a CGL's contractual liability exclusion excluded coverage for property damage when "the insured assumes liability for . . . property damage by means of a contract . . . ." *Id.* at 132. Regardless of whether the breached promise was implied (implied

promises are included in every contract) or express, the promise was of a contractual nature and therefore the exclusion excluded coverage. *Id.* Relying on *Gilbert*, the plaintiff's complaint in *Ewing Constr. Co.*, 2012 WL 2161134, *3-5, alleged that the insured, Ewing, assumed liability for defective construction by agreeing in a contract to complete a construction project, specifically to build tennis courts. The insurer argued in opposition that a CGL policy "is designed to cover fortuitous events that are beyond the insured's control" and that it did not cover "contractual liability that the insured voluntarily assumes." Applying the plain language of the same Contractual Liability exclusion at issue here and affirming the "longstanding principle that a CGL policy is not protection for the insured's poor performance of a contract," the Fifth Circuit panel found that the complaint alleged damage to the subject matter of the contract, i.e., the tennis courts, and therefore the plaintiff's claim sounded in contract even though the plaintiff labeled it negligence. *Id.* at *5. Therefore under the Contract Liability exclusion the panel concluded that Amerisure owed no duty to defend Ewing in the underlying litigation. *Id.*

Under the policy at issue here, Indian Harbor is obligated to indemnify an insured for "property damage" that is "caused by an occurrence." In the CGL policy in dispute here, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." #12, IHIC

-20-

App. at 17 (Section V, 12).  Generally we understand an "accident"
to be "a fortuitous, unexpected and unintended event."  *Lamar
Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 8 (Tex.
2007), *citing* 1A John Alan Appleman, *Insurance Law and Practice* §
360 at 449 (1981)("something unforeseen, unexpected, and
unpremeditated."), and 2 Alan D. Windt, *Insurance Claims & Disputes*
§ 11.3 at 296 (4th ed. 2001)("[I]t is that which occurs not as the
result of natural routine, but as the culmination of forces working
without design, coordination, or plan.").  In *Lamar Homes*,
"occurrence" was defined in the policy in part as an accident, but
accident was not otherwise defined in the policy.  *Id.*  "Terms
that are not defined in a policy are given their generally accepted
or commonly understood meaning.  *Id., citing W. Reserve Life Ins.
V. Meadows*, 152 Tex. 559, 261 S.W. 2d 554, 557 (Tex. 1953).
Furthermore the Texas Supreme Court opined that "an intentional
tort is not an accident and thus not an occurrence regardless of
whether the effect was unintended or unexpected.  But a deliberate
act, performed negligently, is an accident if the effect is not the
intended or expected result; that is, the result would have been
different had the deliberate act been performed correctly."  *Id.*
Whether an insured's faulty workmanship was intended or accidental
depends on the facts and circumstances of each case.  *Id.* at 9.
"Thus, a claim does not involve an accident or occurrence when
either direct allegations purport that the insured intended the

injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id.* at *9. Whether faulty workmanship is an accident for the purpose of triggering a duty to defend depends on the facts and circumstances alleged in the underlying petition. *Id.* *In accord, Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 532 F.3d 398, 401-02 (5th Cir. 2008)("In Texas, deliberate acts may constitute an accident unless: (1) the resulting damage was 'highly probable' because it was 'the natural and expected result of the insured's actions,' (2) 'the insured intended the injury,' or (3) the insured's acts constitute an intentional tort, in which case, the insured is presumed to have intended the injury."), *citing Lamar Homes*, 242 S.W. 3d at 8-9.

"Under Texas law, additional insureds are strangers to an insurance policy and must bear the burden of proving additional insured status." *Rep. Waste Servs. of Texas, Ltd. v. Empire Indemnity Ins. Co.*, 98 Fed. App'x 970, 971 (5th Cir. 2004), *citing Rep. Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W. 2d 76, 80 (Tex. App.-Dallas 1968, writ ref'd n.r.e.).

**Allegations in the Underlying *Arias* and *SAHA* Petitions**

***Arias* Petition**

Plaintiffs' Eighth Amended Petition (#12, IHIC App. 41-64) asserts that beginning in May 1999, SAHA sought to contract with

numerous developers and contractors to design and build 308 affordable single family homes for low income residents in the Mirasol subdivision in San Antonio, Texas, which was part of the federally funded Mirasol Hope VI Revitalization Program.  KB, Magi Realty, and other Defendants entered into a joint venture (the "Joint Venture") to pursue the contract collectively.  During negotiations and bidding, Defendants represented to SAHA that (1) KB was a national homebuilder with the financial capability to finance the entire project; (2) the homes would be built by KB under the management and supervision of the Joint Venture; and (3) Magi Realty would provide the primary oversight and supervision because it purportedly had project management experience.  On December 9, 1999, SAHA and the Joint Venture signed a "Lump Sum Agreement Between Owner and Design/Builder ("Design/Build Contract"), pursuant to which the Joint Venture agreed to assume responsibility for designing and building the homes.  On February 24, 2000 the Joint Venture entered into the "Contract Between Design/Builder and Contractor" ("Contractor Agreement") with KB, in which KB assumed responsibility for actually constructing the homes.  The complaint identifies the part of the construction each Defendant as a subcontractor was assigned under the Contractor Agreement by KB.  For purposes of the instant declaratory judgment action, the one relevant here is that Innovative was to perform "flatwork and foundation work at the project."

After the Project was completed, litigation arose and numerous investigations were undertaken that revealed numerous latent defects including the following:  (1) the exterior doors to the kitchens and the windows were improperly installed with insufficient nails, flashing and calking to guard against moisture intrusion (discovered in 2007); (2) the temperature and pressure release valve drains used to protect against excessive build up of pressure from the hot water heaters were not plumbed out above grade as required by the building code (discovered in 2007); (3) inadequate numbers of roofing nails were used and/or were placed incorrectly to secure the shingles to the roofs (discovered in October and November of 2008); (4) the incorrect gauge and length of roofing staples were used to affix the roof sheathing to the trusses, which construction defect was discovered in October and November of 2008; (5) the framing lumber used as bottom plates for the exterior walls was not made of pressure preservative treated lumber and the framing lumber used for the bottom plates of the interior and exterior walls was not properly affixed to the foundation (discovered in October and November of 2008); (6) the black felt membrane beneath the exterior siding was installed improperly, failing to establish an effective moisture barrier (discovered in October and November of 2008); (7) the exterior brick veneers were improperly constructed to prevent their collapse and their entrapment of moisture (discovered in October and

November of 2008); and (8) the driveways and sidewalks were not properly constructed, and the rebar embedded within them was not placed at the proper depth (discovered in October and November of 2008).  Given the number of homes examined with the consistent presence of these defects, the plaintiffs assert that there is a reasonable probability that such construction defects are present in all of the houses

In 2007 the Mayor of San Antonio directed SAHA to set up and participate in the "Mirasol Task Force," which included representatives of SAHA, KB, some of the Joint Venture members, and some of the Mirasol residents, to investigate, repair and resolve the construction defects.  The costs to repair and rehabilitate the homes was born by SAHA.

The petition asserts several causes of action.  Relating to breach of express and implied warranties the *Arias* plaintiffs assert three claims.  First, the Joint Venture, its members and KB expressly and impliedly warranted that the homes would (1) be built in a good and workmanlike manner; (2) be built to a condition suitable for human habitation; (3) comply with all applicable building codes; (4) be constructed according to the terms of the Design/Builder Contract and the Contractor Agreement; and (5) be constructed under proper supervision.  Second, the Subcontractors expressly and impliedly warranted that all work would be performed (1) in a good an workmanlike manner; (2) in accordance with all

terms of the  Design/Builder Contract and the Contractor Agreement;
(3) under proper supervision; and (4) in accordance with all
applicable building codes.  Third, the conduct and latent defects
described in the complaint constitute a breach of the express and
implied warranties described in (1) and (2), which proximately
caused the plaintiffs' damages.

For the second cause of action, breach of contract, *inter alia*
the complaint alleges that members of the Joint Venture (which
would include KB) breached provisions of the Design/Builder
Contract and specifies the paragraphs and provisions in the
contract that were breached.  It further alleges against KB, alone,
the breach of a number of specified paragraphs and provisions of
the Contractor Agreement.

The third cause of action for fraud charges that the Joint
Venture and KB never intended to build the homes according to the
terms of the contracts, but from the outset conspired to materially
deviate from these agreements and build lower quality homes than
require to maximize their profits.  They allegedly concealed
information from Plaintiffs to induce them to purchase the homes.
They also purportedly engaged in fraudulent real estate
transactions in violation of the Tex. Bus. & Com. Code §§ 27.01 *et
seq.*, by making intentional misrepresentations to entice the
plaintiffs into purchasing the homes.

Conspiracy is the fourth cause of action brought against the Joint Venture members, both collectively and individually, KB, and others to defraud the plaintiffs and fraudulently induce SAHA to enter into the contracts even though Defendants knew they had no intention of building the homes according to the terms of the agreements, applicable building codes and other laws.   The Subcontractors allegedly purposefully furthered the conspiracy by agreeing to perform the work in a substandard manner in exchange for being awarded their subcontracts.

Fifth, the plaintiffs sue KB for vicarious liability for the conduct of its KB entities and the Joint Venture for the conduct of each of its members.[6]

**SAHA Petition**

The Ninth Amended Petition and First Amended Counterclaim (IHIC App. 65-96) of the SAHA plaintiffs was filed after the consolidation of the *Arias* and *SAHA* actions and asserts that around May 7, 1999 SAHA issued a request for qualifications seeking qualified persons or entities to design and build 370 affordable

---

[6] The Court observes that these underlying action plaintiffs fail to state a claim against KB for vicarious liability.  Not only do they not provide a single fact about the conduct of KB's entities and contractors, many not identified, but they fail to allege any facts showing that KB retained some control over the manner in which the contractor performed the work that purportedly caused damage to the Mirasol project.  *See generally Fifth Club, Inc. v. Ramirez*, 196 S.W. 3d 788, 791-92 (Tex. 2006).  "[W]e will not read facts into the petition . . . or imagine factual scenarios which might trigger coverage."  *D.R. Horton-Texas*, 300 S.W. 3d at 778.

single family homes in San Antonio, Texas to be constructed under the Federal government's new Hope VI Revitalization Program. Defendants responded that KB and Magi with other joint venture members entered into a joint venture known as the "Mirasol Joint Venture Team" to seek the award of the contract for the development of the Mirasol subdivisions and the design and construction of the homes (the "Project"). Defendants represented to SAHA that (1) KB was a national homebuilder with the financial capability to finance the entire project; (2) the homes would be built by KB based on the contract documents to be specifically prepared for the Project; (3) the homes would be built by KB under the management and supervision of their joint venture entity, in particular Magi, which, in order to get the contract for the Project, they falsely represented had project management experience; (4) the homes would be built under the specification attached to the Lump Sum Agreement with Magi. They did not disclose that they intended to ignore the contract specifications and not build with materials and methods required by applicable codes, cheapen the houses, falsely represent that the houses were in compliance with the licensed architect's required specifications and drawings, fail to supervise subcontractors, and falsely represent that they would select experienced subcontractors and supervise and inspect their work. As a result Defendants "knowingly delivered the homes in substandard condition, built them with shoddy construction practices, and left in them numerous

-28-

construction defects that resulted from their lack of proper supervision of the construction work and their substantial deviations from the Contract documents, applicable building codes, good and workmanlike building practices, and the customary standards of quality in the building industry. The Defendant Parties' conduct was undertaken intentionally and fraudulently to conceal their shoddy workmanship and to maximize their profits."

On or about December 10, 1999, SAHA and the Defendants' Joint Venture executed a contract for Defendants' Joint Venture to develop the Project and to design and build the houses. Among its provision were that Defendants were responsible for correcting nonconforming work; Defendants would verify that the work was performed in a good and workmanlike manner; and Defendants would protect SAHA against defects and deficiencies in the execution and performance of the work.

In another agreement, "Contract Between Design-Builder and Contractor, third-party Defendant KB agreed with the Joint Venture that KB as contractor would, *inter alia*, build the homes, perform the work in accordance with the contract documents, applicable laws, statutes, ordinances, building codes, and rules and regulations; to supervise and direct the work; to warranty to SAHA that the homes would be of good quality; and to promptly correct defective work. KB also expressly warranted each of the houses.

The petition identifies each of the subcontractors and the nature of the work performed, including Innovative for flatwork and foundation work at the Project, and asserts that all operated under the supervision, direction, and control of the Defendants' Joint Venture.

The pleading asserts that Defendants breached their representations, warranties, and promises.  After investigations arising during the underlying litigation, SAHA discovered the latent construction defects described in the *Arias* petition (see pp. 16-18 of this Opinion and Order).  It also discusses the actions of the Mirasol Task Force, as did the *Arias* pleading.

As causes of action based on the conduct described above, the *SAHA* plaintiffs sue for breach of contract, breach of express and implied warranties, fraud (fraud in the inducement, common law fraud, legal fraud, statutory fraud, fraud by concealment), and negligent misrepresentation.

### Indian Harbor's Motion for Summary Judgment (#11)

Indian Harbor argues that it is entitled to a declaration of no coverage for the following reasons:    (1) there are no allegations of property damage caused by an "occurrence" that occurred during the policy period[7]; (2) there are no allegations of

---

[7] As noted earlier, Section I,1.,b. of the policy states,

This insurance applies to "bodily injury" and "property damage" only if
    (1) The "bodily injury" or "property damage"

"property damage" during the policy period; (3) KB is not entitled to coverage as an "additional insured" because there are no allegations of liability arising out of Innovative's work, and thus the Additional Insured endorsement is not triggered; (4) even if coverage existed, it is precluded by the Expected or Intended Injury exclusion[8] as a matter of law; and (5) the alleged damages are based in contract and are excluded by the Contractual Liability exclusion[9] as a matter of law.

-----

> is caused by an "occurrence" that takes place in the "covered territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy" period.

"Property damage" is defined in Section V.15. as

> a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.  Loss of use of tangible property that is not physically injured.  All such loss or use shall be deemed to occur at the time of the "occurrence" that caused it.

*See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 428 F.3d 193

[8] Section I, 2. ("Exclusions"),a. of the policy states in relevant part and excludes from coverage

> **Expected or intended injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[9] Section I, 2.,b. excludes from coverage, as one of the policy's "business risk" exclusions,

> **Contractual Liability**
> "Bodily injury" or "property damage" for which the

Indian Harbor contends that a CGL policy is designed to provide coverage for liability arising from property damage caused by an accident.  The underlying lawsuit at issue here was based solely on construction defects and deficiencies in the Mirasol project, which resulted from KB's failure to perform its contractual obligations, and thus as a matter of law were not covered by the CGL policy.

Indian Harbor further maintains that even if they had been covered, the policy's conditions, limitations, and exclusions

---

insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

> (1) That the insured would have in the absence of the contract or agreement; or

> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

>> (a) Liability to such party for, or the cost of that party's defense has also been assumed in the same "insured contract"; and
>> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute proceeding in which damages to which this insurance applies are alleged.

foreclose any coverage to KB, so the insurer owes no duty to defend or indemnify KB as a matter of law.

Regarding Indian Harbor's first reason, Indian Harbor insists that there is no coverage under the policy because the alleged defective work was not caused by an "occurrence" as defined under the Policy, which applies only to "property damage" if that "property damage" was caused by an "occurrence" that takes place in the "coverage territory."   IHIC App. 6.   The policy defines "occurrence" as "an accident, including continuous or repeated exposures to substantially the same general harmful conditions." *Id.* at p. 17 (Section V, 13.).

In *Trinity Universal Ins. Co. v. Cowan*, 945 S.W. 2d 819, 820 (Tex. 1997), addressing a CGL policy with a definition of "occurrence" similar to that in the Indian Harbor policy, the Texas Supreme Court held that an insured's intentional tort that resulted in unintended injuries was not an "accident" and thus not an "occurrence."   In that case the insured, a photo lab clerk working at H.E.B., Gregory Gage, developed extra copies of revealing photographs of Nicole Cowan that had been brought in for developing. *Id.* at 820.   The clerk showed them to friends and left them with one of the friends, whom he told to throw the prints away. *Id.* at 820-21.   That friend showed them to someone else, who told Cowan about the clerk's acts.   Cowan sued Gage and H.E.B. for

negligence[10] and gross negligence and sought damages for severe mental pain, loss of privacy, humiliation, embarrassment, fear, frustration and mental anguish.  Citing *Republic Nat. Life Ins. v. Heyward*, 536 S.W. 2d 549 (Tex. 1976), the Texas Supreme Court held that the clerk's conduct was not an "accident" because he did precisely what he intended to do when he deliberately copied the photographs and showed them to friends.[11]  *Id.* at 827-28.  Because

---

[10] This Court observes that in *Cowan,* the Texas Supreme Court noted that in *Heyward,* which construed a homeowner's policy that covered an "occurrence," the Texas Supreme Court had defined coverage in terms of the **insured's** perception of the triggering event, not the intent of the actor.  It held that whether the murder of the insured, Bernie Heyward, who was shot and knifed multiple times, was "accidental is determined from the viewpoint of the insured, that is, whether the deceased should have reasonably anticipated that his conduct would probably bring about his own death," and not from the viewpoint of the killer.  945 S.W. 2d at 827, *citing Heyward*, 536 S.W. 2d at 554.  The *Heyward* court had applied the holding of *Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 557, 251 S.W. 491, (1923) and its inverse:  "[I]njuries are 'accidental' and within the coverage of an insurance policy . . . if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by the insured, or would not ordinarily follow from the action or occurrence which caused the injury. [*sic*]"  536 S.W. 2d at 557.  "'Accidental means are those which produce effects which are not their natural and probable consequences.'"  *Heyward*, 536 S.W. 2d at 555.

In *Cowan*, it is key that Gage, the clerk, was not only the insured, but also the actor, and because he intended to do what he did, the high court found there was no coverage under the insurance policy. 945 S.W. 2d at 820-21, 826.

[11] This Court notes that the high court in *Cowan* stated that the clerk's "conduct was not an 'accident' because the injury to Cowan, the invasion of her privacy, is of a type that 'ordinarily follow[s]' from [the clerk's] conduct and the injuries could be 'reasonably anticipated from the use of the means, or an effect' that [the clerk] can 'be charged with . . . producing.'"  *Id.* at

it made no difference that the clerk did not expect nor intend Cowan to learn of his conduct, the Texas Supreme Court concluded that there was no "accident" and no coverage under the policy for damages caused as a result of the clerk's actions.

Moreover, also finding in *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 9 (Tex. 2007), that there must be an "accident" alleged in the complaint to have an "occurrence", the Texas Supreme Court opined,

> [A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional torts) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.

Thus Indian Harbor claims that allegations of false and fraudulent statements and promises, misrepresentations, and intent to deceive are not accidental in nature and do not constitute an "occurrence." *See. e.g., Huffines v. State Farm Lloyds*, 167 S.W. 3d 496, 499 (Tex. App.--Houston [14th Dist.] 2005, no pet.); *Allstate Ins. Co. v. Hicks*, 134 S.W. 3d 304, 313 (Tex. App.--Amarillo 2004, no pet.)(misrepresentations and failures to disclose do not give rise to a duty to defend under the policy because they "are not accidents, and any resulting damage was thus not the result of an occurrence"); *Freedman v. Cigna Ins. Co.*, 976 S.W. 2d 776, 778 (Tex. App.--Houston [1st Dist.] 1998, no pet.)("An accident is

827-28.

-35-

commonly defined as an unexpected happening without intention or design. . . . [A] voluntary and intentional act does not constitute an accident. . . . As a matter of law, fraudulent promises, misrepresentations, and untrue statements do not fall within the plain meaning of the definition of an occurrence."). Indian Harbor points to the *Arias* and *SAHA* petitions and quotes a number of allegations of intentional and fraudulent intent to deceive, conspiracy, and breach of contract in plaintiffs' claims that KB purposefully and intentionally built substandard housing in order to maximize profits; there was no "accident" or "occurrence" to invoke coverage under the policy.

In addition, maintains Indian Harbor, the fact that there are also allegations of negligence does not put the claims against KB back within coverage. In *KB Home f/k/a Kaufman and Broad Home Corp. v. Employers Mutual Cas. Co.*, a case also involving allegations by a number of homeowners alleging fraud and misrepresentation against KB, the Fort Worth Court of Appeals wrote,

> [I]t is axiomatic that artful pleading cannot change the character of a lawsuit. In the vernacular, calling a duck a chicken does not make it so. The essence of the complaint made by the plaintiffs is that KB misrepresented and fraudulently concealed material facts surrounding the sales of its homes. The purported facts that give rise to the alleged actionable conduct, not the legal theory, control in determining the duty to defend.

*Id.*, No. 2-06-383-CV, 2008 WL 281530, *6 (Tex. App.--Fort Worth Jan. 31, 2008, no pet.); *see also Freedman*, 976 S.W. 2d at 778-79

(stating the mere allegation of negligence does not control the issue of the duty to defend and holding that the insurer has no duty to defend where the facts alleged fraudulent statements and misrepresentations). Indian Harbor asserts that the allegation of negligent misrepresentation in the underlying lawsuit is based on the same facts as the assertions of intentional deception and fraud. Plaintiffs' Eighth Amended Petition, IHIC App. at p. 59.

Coverage under a CGL policy is triggered only when the underlying lawsuit alleges property damage that occurred within the relevant policy period. *Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W. 3d 20, 31 (Tex. 2008).[12] Indian Harbor argues that an insurance carrier's duty to defend is not triggered if the underlying pleadings fail to mention the alleged date of actual harm. *Amerisure Mut. Ins. Co. v. Travelers Lloyds*, Civ. No. H-09-662, 2010 WL 1068087, *6 (S.D. Tex. March 22, 2010)(failure to allege that the harm occurred within the policy's period of coverage, "in conjunction with the underlying pleading's failure to mention the alleged date of actual harm, establishes that Amerisure has not satisfied its burden under the eight corners rule of 'show[ing] that a claim against the [insured] is potentially within

---

[12] This Court notes that in *Don's Building Supply*, under a policy with provisions addressing "occurrence," "accident," and "property damage" virtually identical to those in this suit, the Texas Supreme Court held that property damage occurred when actual physical damage to the property occurred, not the date when it is or could have been discovered. 267 S.W. 3d at 24.

the scope of coverage under the policies . . . .'"), *citing inter alia Don's Building Supply*, 267 S.W. 3d 20.   Indian Harbor claims that the pleadings in the underlying lawsuits contain no dates of alleged actual harm, only that the damage was first discovered in 2007, six years after the policy term.   IHIC App. 49 and 76.   Thus KB is not entitled to coverage under the policy and Indian Harbor has no duty to defend or indemnify KB as a matter of law.

The Court disagrees with Indian Harbor here.   KB insists that it does not need to show that the alleged property damage occurred during the policy period.   All the underlying petitions assert that the defects and property damage were latent in nature and that plaintiffs alternatively pleaded the discovery rule.   Texas courts have held that a carrier is obligated to defend when the underlying petitions are silent about the time of the damage.   *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W. 3d 833, 845-46 (Tex. App.--Dallas 2004, pet. denied)(where date of damage is not identified in underlying pleadings, court (1) construed pleadings liberally in favor of the insured and resolved any doubt in favor of the insured, plaintiff Gehan Homes, (2) found that "[n]othing in the pleadings negates the possibility that the injury occurred" during the policy period, and (3) inferred that the litigant's injury potentially occurred during the policy period"); *GEICO Gen. Insurance Co. v. Austin Power, Inc.*, 357 S.W. 3d 821, 824-25 (Tex.

App.--Houston [14th Dist.] 2012)(following *Gehan*).[13]  Here, because
it is possible that the property damage in the underlying
litigation occurred during the policy period, this Court does the
same.  KB argues that *Don's Building* only required that the injury
occur during the policy period, not that the plaintiff must
expressly allege the date within the policy period when it
happened.  KB further contends that *Amerisure* should not be
followed because it misconstrues *Don's Building*.  This Court agrees
that there has been rejection of Indian Harbor's argument that the
date of the injury within the policy period must be pleaded, based
on the principle that allegations are to be construed in favor of
the insured.  *See GEICO General Ins. Co. v. Austin Power Inc.*, 357
S.W. 3d at 825-26 & n.2("To the extent that cases cited by GEICO
conflict with *Gehan Homes*,[14] we find them unpersuasive.")(and cases
cited therein)(a plaintiff only needs to allege that the injury
potentially occurred during the policy period to trigger insurer's
duty to defend the suit).  *See also Mid-Continent Cas.. Co. v.
Academy Development, Inc.*, Civ. A. No. H-08-21, 2010 WL 3489355, *7

---

[13] *See also Williams Consolidated I, Ltd./BSI Holdings, Inc.
v. TIG Ins. Co.*, 230 S.W. 3d 895 (Tex. App.--Houston [14th Dist.]
2007)("Because potentially plaintiffs' claims in underlying suit
were within the coverage of the CGL policy, the appellate court
concluded that as a matter of law TIG had a duty to defend Williams
against the plaintiffs' claims).

[14] *Gehan Homes* held that the insurers did not establish as a
matter of law that the complaint did **not** allege any claims during
the period that the policy was in effect so as to preclude the duty
to defend.

(S.D. Tex. 2010), *aff'd*, No. 11-20219, 2012 WL 1382459 (5th Cir. Apr. 20, 2012), in which the petition in the underlying suit did not state when the lakes were damaged, but mentioned letters sent in subsequent years, references to a lawsuit begun in 2002, and plaintiffs' awareness that water was leaking from the lakes into adjacent properties upon which Plaintiffs' homes were located when they sold their homes, from which the court inferred that the lakes were leaking prior to 2002.  It construed the petition liberally and resolved all doubts in favor of coverage and found the allegations sufficient to trigger the duty to defend.  The Court agrees with KB that the insurer, Indian Harbor, has not met its burden to establish as a matter of law that the property damage did not happen during the policy period and that KB has pleaded sufficient facts to raise the inference that it occurred within the policy period.

Indian Harbor further asserts that it has no duty to defend or indemnify KB as a matter of law under the plain and unambiguous language of the Additional Insured endorsement (an ISO form no. 20 26 11 85), which provides coverage to "all . . . organizations where required by written contract between such . . . organization and the named insured." IHIC App. 19.  The Additional Insured endorsement, which states in relevant part, "WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with

respect to liability arising out of your operations or premises owned by or rented to you." IHIC App. 19. The policy defines "you" and "your" as referring to the Named Insured in the Declarations and states that "'insured' means any person or organization qualifying as such under Section II--Who is an Insured." IHIC App. 6. The policy Declarations reference only Innovative. KB qualifies as an "insured," but coverage is restricted under the Additional Insured endorsement to " only with respect to liability arising out of your operations or premises owned by or rented to you." IHIC App. 19. Therefore, insists Indian Harbor, KB is only entitled to coverage regarding liability arising out of Innovative's operations. Indian Harbor charges that KB is now trying to convert this limited additional insured endorsement into a much broader grant of coverage that is not supported by the terms of the policy. The underlying lawsuits are devoid of allegations of or implications relating to Innovative's work (so KB has no coverage under the policy as a matter of law), and both the *SAHA* and *Arias* plaintiffs ultimately dismissed Innovative from their suits. *See D.R. Horton-Texas, Ltd.*, 300 S.W. 3d 773, 778-81 (Tex. App.-Houston [14[th] Dist.] 2006)(holding that the insurer has no duty to defend the additional insured because the underlying petition did not allege that the work of the named insured caused the damage, nor was the named insured named as a

party in the underlying lawsuit), *aff'd in part and rev'd in part on other grounds*, 300 S.W. 3d 740 (Tex. 2009).[15]

Indian Harbor also contends that the Expected or Intended Injury exclusion applies to preclude coverage for KB as a matter of law.  The underlying lawsuits allege that KB intended the property damage injury in order to maximize its profits.  There are no claims of accidental conduct; rather the plaintiffs claimed that KB intended to misrepresent the quality of the homes to be built and to create substandard housing in order to make more money.

Indian Harbor argues that CGL policies are designed to provide coverage for fortuitous accidents beyond the insured's control, not to cover risks relating to repair or replacement of an insured's faulty or defective work or to insure defendants in that work or its product or to cover intentional acts or claims arising out of contract.  The policy's "business risk" exclusions, including the Contractual Liability exclusion, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss that occurs because the product or completed work was not that for which the other party bargained.  *See T.C. Bateson Const. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W. 2d 692, 694-95 (Tex. App.--Houston [14th Dist.] 1989, writ denied).  As expressed in *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*,  720 F.

---

[15] *See also Roberts, Taylor & Sensabaugh, Inc. v. Lexington Ins. Co.*, Civ. A. No. H-06-2197, 2007 WL 2964445 (S.D. Tex. Oct. 9, 2007).

Supp. 781, 785 (N.D. Tex. 2010), *aff'd*, No. 10-10432, 2011 WL 365279, 410 Fed. App'x 787 (5th Cir. Feb. 7, 2011):

> [A]s a general proposition, the purpose of liability insurance coverage for a builder is to protect the insured from liability from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product. . . . [I]f an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to "enable a contractor to receive initial payment from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work." Ordinarily this is not the intended function of liability insurance. And, as the Fifth Circuit [has] explained in . . . . a case involving the scope of liability insurance coverage for a builder, "[a] comprehensive general liability policy does not cover [the] cost of doing business."

The Texas Supreme Court opined in *Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 500 (Tex. 2008),

> Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained. Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured or loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

Indian Harbor argues that even if the allegations fell within the policy's insurance agreement, the Contractual Liability exclusion would preclude coverage for the exact type of non-

-43-

fortuitous, contract-based liability asserted against KB. *See Nokia*, 268 S.W. 3d at 500. *See also Gilbert Texas Construction, L.P.*, 327 S.W. 3d at 128, 132 (holding that the contractual liability exclusion "excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract[16] or when the insured would be liable absent the contract or agreement" and also excludes indemnity claims); *Ewing Constr. Co.*, 814 F. Supp.2d 739, 2011 WL 1627047 (extending *Gilbert* through the economic loss doctrine to apply the contractual liability exclusion to breach of contract claims and to negligence claims where the nature of the damages arises out of the subject of the contract). Indian Harbor contends that in the underlying litigation, the allegations against KB arise out of and are the subject of the construction contract and are based on the same factual allegations as the breach of contract claims. Thus the damages are excluded by the Contractual Liability exclusion since there are no allegations except damage to the homes, all of which are the subject matter of the contract.[17]

---

[16] An "'insured contract' is a commonly used term of art in Texas Insurance law, usually defined by the insurance policy to mean a separate contract that acts as insurance." *Gilbane Building Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011), *citing Gilbert Texas Construction*, 327 S.W. 3d at 124-25 (policy in dispute defined "insured contract" as seven types of insurance contracts, including one to assume tort liability of another to pay damages because of "bodily injury" or "property damage").

[17] This Court agrees with Indian Harbor that this is the law in the Fifth Circuit, which binds this Court.

Finally Indian Harbor claims that it owes no duty to indemnify KB because the allegations do not trigger a duty to defend KB. *Utica Nat'l Ins. Co. v. Am. Indemnity Co.*, 141 S.W. 3d 198, 201 (Tex. 2004), *citing Farmers Tex. County Mutual Ins. Co. v. Griffin*, 955 S.W. 2d 81, 84 (Tex. 1997)(when "the insurer has no duty to defend, . . . [if] the same reasons negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," the insurer owes no duty to indemnify).[18]

**KB's Opposition and Summary Judgment Cross-Motion (#27)**

KB claims that the basis of the underlying suits is that KB and its various subcontractors, including Innovative, negligently performed the construction of the Mirasol project and thereby caused latent construction defects, property damage, and other damages for which the underlying plaintiff homeowners sought remedies. Indian Harbor did not contribute to KB's defense under the Additional Ensured endorsement, but filed this action seeking

---

[18]   This Court notes that in fact-specific *Griffin*, 955 S.W. 2d at 84, the Texas Supreme Court explained in that case that "[n]o facts can be developed in the underlying tort suit that can transform a drive-by shooting into an 'auto accident'" for coverage under an automobile insurance policy. Thus under the facts pled in a suit by the victim of the shooting, there was no way the shooting could be an "accident," Farmers had no duty to defend and for the same reasons had no duty to indemnify. *Id.*

If there is no set of facts in the pleadings that give rise to a duty to defend, there might still be a duty to indemnify because the two duties are independent and the existence of one does not necessarily depend on the existence or proof of the other. *D.R. Horton Texas*, 300 S.W. 3d at 745. *See also Burlington Northern and Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W. 3d 217, 219-20 (Tex. 2011).

a declaratory judgment that it does not owe KB a defense and asserting for the first time that the Contractual Liability exclusion applies to preclude coverage for KB.

First KB contends that the Texas Supreme Court's decision in *Lamar Homes*, 242 S.W. 3d at 8 ("a deliberate act, performed negligently, is an accident if the effect is not the expected or intended result; that is, the result would have been different had the deliberate act been performed correctly"), requires Indian Harbor to defend KB. Indian Harbor was obligated to defend KB against factual claims of "property damage" caused by an "occurrence" regardless of the label that the plaintiffs assigned to them. KB maintains that the allegations show initial and continuous claims of negligence that gave rise to Indian Harbor's duty to defend. KB further argues that Indian Harbor discussed only two of the seventeen petitions relevant to Indian Harbor's duty to defend, which also belie Indian Harbor's defenses that there was no "occurrence" and that the Intended Injury exclusion applies. KB insists that these petitions are clearly grounded in negligence, and not in fraud, conspiracy, misrepresentation and intentional conduct, which causes of action were only asserted late in the litigation and which did not supersede the negligence claims. Furthermore the intentional conduct claims were ultimately dismissed from the *SAHA* and *Arias* petitions, indicating that the primary allegations were of negligence. Moreover, even if

underlying plaintiffs have alleged a mixture of negligence and intentional torts, Indian Harbor has a duty to defend if even one cause of action is within the scope of coverage. *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701. Even if there is doubt whether the allegations against the insured state a cause of action within the coverage of the policy, that doubt should be resolved in favor of the insured. *Merchants Fast Motor Lines*, 939 S.W. 2d at 141.

This Court disagrees with KB regarding consideration of all the petitions filed in the underlying lawsuit. As noted *supra*, the duty to defend is determined by reviewing the **latest** amended pleading, here the *Arias* Plaintiffs' Eighth Amended Petition (IHIC App. 41-64) and the *SAHA* Plaintiffs' Ninth Amended Petition (IHIC App. 65-96). *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d at 528. "An amended pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading." *Guaranty Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (Tex. 1998).[19]  Moreover it is obvious from the Court's summary of the most recent petitions that the vast majority of the claims are not grounded in negligence, but in intentional torts.

Regarding Indian Harbor's charge that the additional insured endorsement is not triggered because there are no allegations regarding Innovative's work and because KB is insured only for

---

[19] Furthermore, Indian Harbor states that it "referenced the last live pleadings which contained the allegations typical in all the pleadings." #30 at p. 5 n.1.

liability arising from Innovative's work, KB responds that the seventeen underlying petitions[20] expressly or impliedly refer to Defendant and Named Insured Innovative and allege problems with the concrete, allege plaintiffs were damaged by the negligent acts or omissions of KB's subcontractors, including Innovative, and seek to hold KB liable for these damages.  KB also maintains that the fact that Plaintiffs in *SAHA* and *Arias* dismissed their claims against Innovative is "entirely irrelevant."   #27 at p. 29.   Indian Harbor's defense and indemnification of Innovative (payment toward Innovative's $125,000.00 settlement, #27-21, Declaration of Roger D. Kirstein) demonstrate that Indian Harbor is wrong about claims against Innovative and coverage of KB.

KB further insists that the Contractual Liability exclusion does not apply to, nor preclude, KB's claim for defense.  Indian Harbor does not provide any factual support for its claim that the exclusion precludes coverage for KB because "the damages for which KB is sought to be held responsible are economic damages arising out of its contract and not the type of damages for which a CGL

---

[20] The Court reiterates that the law limits review under the eight-corners rule to the policy provisions and the **most recent pleading** in *SAHA* and *Arias*, which supersede all earlier pleadings. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d at 528; *Guaranty Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d at 194; *King v. Dallas Fire Ins. Co.*, 85 S.W. 3d 185, 187 (Tex,. 2002)("An amended pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading.").  Thus the Court considers only the allegations in the *Arias* Plaintiffs' Eighth Amended Petition (IHIC App. 41-64) and the *SAHA* Plaintiffs' Ninth Amended Petition (IHIC App. 65-96).

policy is designed to cover."  Nor does Texas law support Indian Harbor's claim that it does preclude coverage for KB.

KB argues that *Gilbert Tex. Constr.*, 327 S.W. 3d 118, 126, 128, 132 (Tex. 2010)(holding that a CGL's contractual liability exclusion excludes coverage for property damage when the insured assumes liability for the property damage by means of contract, except for enumerated "insured contracts" and for instances in which the insured would have liability apart from the contract[21]), with its unique factual circumstances, does not apply to the instant dispute.  First, *Gilbert* involved the duty to indemnify, which is determined by a higher standard (i.e., facts established in the underlying suit) than the duty to defend, while this case involves the duty to defend (for which the standard is potentially covered claims, determined by the eight-corners rule).  Second, KB does not have any kind of immunity from the underlying plaintiffs' tort claims so its liability is not dependent solely on

---

[21] In *Gilbert*, the third party owner of the building sued Gilbert in tort and was the third party beneficiary of the contract between the general contractor Gilbert and the Dallas Area Rapid Transit Authority ("DART").  That contract required Gilbert to protect the work site and surrounding property and to repair or pay for damage "resulting from a failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work."  The tort claim was dismissed on governmental immunity grounds, so only the breach of contract claim remained.  The Texas Supreme Court found that the Contract Liability exclusion applied, and because all claims except the breach of contract claim had been dismissed on summary judgment, the second exception to the exclusion was not invoked and coverage for Gilbert was precluded by the Contract Liability exclusion. *Id.* at 127.

"obligations assumed in contract." Therefore the second exception to the Contractual Liability exclusion applies to provide KB with a defense under the insurance policy. Third, Indian Harbor asserts that the policy does not offer coverage sought by Gilbert for defective work on a theory of vicarious liability. Under Texas law, a contractor "may be liable for the negligence of its subcontractor if it retains the right or power to control the manner in which the subcontractor performs its work but fails to exercise reasonable care in supervising the contractor." *Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*,188 S.W. 3d 805, 816 (Tex. App.--Fort Worth 2006), *rev'd on other grounds*, 248 S.W. 3d 171 (Tex. 2008). The underlying petitions reiterate that KB was responsible for supervising its negligent subcontractors, including Innovative. Moreover vicarious liability sounds in tort, not contract, another reason why the Contractual Liability exclusion does not apply to KB's claim for a defense from Indian Harbor. Furthermore because the law requires an insurer to fully defend an insured if any one claim potentially falls within the scope of coverage of the policy, Indian Harbor owes KB a total defense.

Before the appeal to the Fifth Circuit of the district court's opinion in *Ewing Constr. Co.* was resolved, KB contended that in holding that the economic loss rule applied to negligence claims in the underlying litigation, the district court in *Ewing Constr. Co.* impermissibly evaluated and negated the merits of the negligence

claims in determining that the carrier did not owe a duty to defend against them, even though the claims had not been adjudicated in the underlying litigation. 814 F. Supp. 2d 739. KB relied on the Texas Supreme Court's pronouncement in *Lamar Homes*, 242 S.W. 3d at 12-13, that the economic loss doctrine was "not a useful tool for determining insurance coverage," that in operation the doctrine restricts contracting parties to contractual remedies for such economic losses even when the breach might reasonably be viewed as the consequence of a contracting party's negligence, and its refusal to follow the same line of reasoning used in *Ewing*.

This Court notes that the Court in *Lamar Homes* is clear that whether there is property damage under a policy and what is the measure of damages are distinct issues. 242 S.W. 3d at 12 (the economic loss rule "generally precludes recovery in tort of economic losses resulting from the failure of a party to perform under a contract," focuses "on determining whether the injury is to the subject of the contract itself," and "is a liability defense or remedies doctrine, not a test for insurance coverage," which is determined by the terms of the policy and the allegations in the complaint.). This Court would point out that without resort to the economic loss rule, Judge Jack did the proper analysis pursuant to the eight-corners rule, comparing allegations in the pleadings to language in the insurance policy and construing all doubts in favor of the insured construction company, in determining whether

Amerisure had a duty to defend Ewing in the underlying suit against it by the school district for deficient construction of a tennis facility. 814 F. Supp. 2d at 744-45.   She found that the allegations in the petition stated a claim potentially covered by a CGL policy for purposes of finding a duty to defend because the pleading alleged specific and undisputed property damage (serious cracking and flaking problems, chunks of the surfaces becoming loose, making the tennis courts unusable for competitive events) resulting in loss of use of the property, because allegations of negligent construction were sufficient to constitute an "occurrence" under *Lamar Homes*, 242 S.W. 3d at 16 ("[C]laims for damage caused by an insured's defective performance or faulty workmanship may constitute an occurrence when property damage results from the unexpected, unforeseen or undesigned happening or consequence of the insured's negligent behavior"), and because the alleged wrongful conduct occurred while the policy was in effect. *Id.*   She further stated that the insurer Amerisure "appears to concede that the Underlying Lawsuit falls within the general coverage of the policy." *Id.* at 744.

Judge Jack then noted and applied the shifting burden of proof in a duty-to-defend analysis (where the insurer refuses to defend based on a policy exclusion such as the Contractual Liability exclusion, the insurer bears the burden to show the complaint's allegations trigger the exclusion; if the insurer succeeds, the

insured must then show an exception to the exclusion to bring the claim back within coverage).  814 F. Supp. 2d at 743-44.

The Contractual Liability exclusion in *Ewing Constr.,* followed by two exceptions, states that the insurance does not apply to

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> > (1) That the insured would have in the absence of the contract or agreement; or
> >
> > (2) Assumed in a contract or agreement that is an 'insured contract" . . . .

*Id.* at 746.

Ewing argued that the Contractual Liability exclusion did not bar coverage of the claims against it because there was no contractual "assumption of liability" by Ewing and because the underlying lawsuit alleged tort claims in addition to contract claims.[22]  The insurer, Amerisure, contended that a CGL Policy "is designed to cover fortuitous events that are beyond the insured's control," and not "contractual liability that the insured voluntarily assumes," 814 F. Supp. 2d at 745, and relied on the Contractual Liability exclusion to bar Ewing's claims.

---

[22] The contract claims included that the construction was not in accordance with the contract plans and specifications, that Ewing breached its implied duty of care, implied warranties of good workmanship, merchantable quality, and fitness for the intended purpose, and breach of express warranty that it would fully execute the work described in certain documents, etc.

Judge Jack quoted the Texas Supreme Court in *Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 500 (Tex. 2008):

> Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained.  Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself.  These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

814 F. Supp. 2d at 745.  She also cited *Gilbert Texas Constr.*, 327 S.W. 3d at 126, for its ruling that such an exclusion "[c]onsidered as a whole, . . . provide[s] that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except for enumerated, specific types of contracts called 'insured contracts' and except for instances in which the insured would have liability apart from the contract." *Id.* at 746.  She concluded that "*Gilbert*, therefore, stands for the proposition that the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed liability for its own performance under that contract." *Id.* at 747.

-54-

Judge Jack found that the nature of the allegations in the underlying suit indicated that Ewing had contractually assumed liability for its own defective construction work and therefore concluded that the contractual liability exclusion applied to preclude the negligence claims.[23]  She then looked to see if an exception applied to bring the negligence claims back into general coverage.  The contract stated there would be an exception to the

_____

[23] According to Judge Jack, citations to the record in that case omitted,

> The pleadings in the Underlying Lawsuit demonstrate that Ewing assumed liability with respect to its own work on the subject matter of the contract, the tennis courts, such that it would be liable for failure to perform under the contract if that work was deficient.  The original petition explained that "[p]rior to the execution of the contract, Plaintiffs' [the school district's] Superintendent . . . met with Ewing several times and, on one or more occasions, told them that Plaintiff wanted quality tennis courts that should last at least twenty-five years.  Ewing's representative never demurred and impliedly represented that they would meet that standard."  The original petition states, in its breach of contract claim, that "[t]he construction is not in accordance with the contract plans and specifications," that Ewing "breached its implied duty of ordinary care," "breached its implied warranty of good workmanship," "breached its implied warranty that the tennis courts in question would be suitable for their intended purpose," and "breached its express warranty that it would fully execute the work described in the Contract Documents."  The first and second petitions make similar claims, alleging that Ewing breached its contract with [the school district in the following respects:  "(a) [f]ailing to complete construction in accordance with the contract plans and specification, (b) [f]ailing to exercise ordinary care in the preparation, management and execution of the contract, (c) [f]ailing to perform in a good and workmanlike manner; and (d) [f]ailing to properly retain and supervise subcontractors."

Contract Liability exclusion for liability that "the insured would have in the absence of the contract or agreement," which she found was analogous to the form "insured contract" exception for "liability that would be imposed by law in the absence of any contract or agreement."  Ewing argued that the exception applied because the underlying suit charged Ewing with negligence, and liability for negligence exists regardless of the existence of a contract.  Judge Jack disagreed.  Judge Jack focused on the factual allegations about the source of Ewing's potential liability and the nature of the plaintiff's loss, rather than the labels that the school district used or the manner in which the cause of action was pleaded.  Disagreeing with Ewing, Judge Jack determined that the source of Ewing's potential liability was the contract because Ewing's duty to construct the tennis courts arose out of its contractual undertakings.  The damage alleged was damage to the tennis courts, not to any other property, and the tennis courts were the subject of the contract.  Therefore the school district's claim sounded in contract.  The exception did not apply because the liability was contractual, not a liability that would arise in the absence of the contract.  Judge Jack followed the precedent established in *Century Surety Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262 (5th Cir. 2009), in which Hillwood sued Hardscape for faulty design and construction that caused damage to the pool and its surroundings and in which the underlying petition asserted

both contract and negligence claims.  In the contract between the two there was an indemnity provision in which Hardscape agreed to hold Hillwood harmless against "any damage, liability or cause of action arising directly or indirectly out of or in connection with the performance of Contractor's services." *Ewing*, 814 F. Supp. 2d at 749, *citing Hardscape*, 578 F. 3d at 264.  The exclusion stated that the insurance did not cover "property damage for which this insured is obligated to pay damages by reason of the assumption of liability in the contract or agreement, but excepted from that exclusion certain contractual obligations to pay another party's tort liability." *Id.*, n.8, *citing Hardscape*, 578 F.3d at 266.  An "insured contract" exception to that exclusion would apply only if the Hillwood petition "properly alleges a tort cause of action against Hardscape under the 'eight-corners' rule" and makes factual allegations that could constitute liability that would be imposed by law in the absence of any contract or agreement. *Id.* at 749-50, *citing Hardscape*, 578 F.3d at 267.  Noting that Texas courts distinguish tort and contract by focusing on the source of liability and the nature of the plaintiff's loss, in the context of the duty to defend and the eight-corners' rule,[24] the Fifth Circuit in *Hardscape* held that when the only loss or damage is to the

---

[24] In *Hardscape* the Fifth Circuit was aware of the statement in *Lamar Homes* that the economic loss rule is not "a useful tool for determining insurance coverage" but noted that *Lamar Homes*' "discussion of coverage under the 'occurrence' term addressed no such tort/contract-based exclusion."  578 F. 3d at 266 n.4.

subject matter of the contract, the action usually sounds in contract, otherwise known as the economic loss doctrine. *Id.* at 750, *citing id.* at 267, *followed by David Lewis Builders, Inc.*, 720 Supp. 2d 781, 785-86 (N.D. Tex. 2010). Construing the allegations in the petition in favor of the insured, the *Hardscape* panel found the defective construction was an occurrence, but that the damages occurred only to the subject matter of the Hillwood-Hardscape contract, i.e., the swimming facility, and that there was no liability independent of the contract, so all the claims sounded in contract and the contractual liability exclusion excluded all claims since no exception was applicable. Judge Jack opined that had Hillwood alleged other damages, such as damage to its business interests or to adjacent property, "a different result might obtain." *Id.* at 751.

This Court notes that Judge Jack's opinion accords with the arguments of Indian Harbor, summarized on pages 40-41 of this Opinion and Order. Moreover the Court finds that KB's economic loss argument is further negated by the Fifth Circuit's affirmance of the district court's opinion, binding on this Court, in *Ewing Constr.*, as well as long established Texas law distinguishing tort and contract duties.[25] On appeal, the Fifth Circuit held that "the

---

[25] *See, e.g., Coffey v. Fort Wayne Pools*, 24 F. Supp. 2d 671, 687 (N.D. Tex. 1998)("It is well-settled in Texas law that a plaintiff cannot maintain a tort action against a defendant when his damages are only for economic losses caused by the failure to perform a contract.").

district court correctly interpreted the contractual liability exclusion and applied the exclusion with respect to the insurer's duty to defend the construction company." *Id.*, 2012 WL 2161134, at *1.[26] Thus KB's challenge regarding the improper application of the economic loss doctrine fails. Moreover, this Court notes that the Fifth Circuit's ruling is in accord with the established principle announced in *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W. 2d 493, 494 (Tex. 1991)(in a suit asserting both tort and contract claims when a party seeks damages for breach of a duty created under a contract rather than a [negligence] duty imposed by law, the claims sounds only in contract;). *See also Jim Walter Homes, Inc, v. Reed*, 711 S.W. 2d 617, 618 (Tex. 1986)("The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only economic loss to the subject of a contract itself the action sounds in contract lone.").

---

[26] Nevertheless, the appellate court further decided that the district court's determination that the insurer owed no duty to indemnify was "premature" and  that the absence of a duty to defend did not mean that ultimately there was no duty to indemnify: "some fact outside of the pleadings may arise in the course of the underlying lawsuit that would trigger the duty to indemnify, then the duty to indemnify cannot be determined by the pleadings and insurance policy alone." 2012 WL 2161134, at *7 (reversing in part and remanding). "[T]he mere absence of the duty to defend . . . does not mean that there ultimately could be no duty to indemnify." *Id., citing Colony Ins.*, 647 F.3d at 253-54.

KB argues that the damage alleged in the 17 underlying petitions is also to more than the subject matter of the contract, the Mirasol homes. The *SAHA* and *Arias* plaintiffs have also alleged damage to personal property and goods, loss of revenue and lost use of such lost revenue. They also claimed damage to and loss of the use of the homes caused by Innovative's concrete work, which is beyond the scope of the KB/Innovative subcontract. They maintain that this vicarious (tort-based) liability is covered under the policy by the Additional Insured endorsement.

**Indian Harbor's Summary Judgment Reply  and**

**Response to KB's Cross Motion for Summary Judgment (#30)**

Noting the numerous petitions and references to petitions attached to KB's motion as summary judgment evidence, Indian Harbor points out that it can only have a duty to defend if the petitions in the underlying suit allege facts that the named insured, Innovative, committed some tortious act that caused damage to other persons or property during the relevant policy period. Indian Harbor insists that no facts are stated in any of the underlying petitions that allege that the concrete work performed by Innovative caused any property damage at all or that any damage occurred during the single one-year policy period. Thus there is no coverage for KB. Moreover in its response and cross motion, KB has failed to counter the coverage defenses raised in Indian Harbor's motion for summary judgment.

Because KB can only claim covered status as an Additional Insured, the endorsement limits KB to coverage "only with respect to liability arising out of your [Innovative's] operations." IHIC App. 19.   Indeed KB acknowledges that point.   #27 at p. 27. Therefore there is no coverage for allegations of KB's sole negligence or for allegations regarding the negligence of other subcontractors.

### Indian Harbor's Reply (#65) to

### KB's Response (#27) and Sur-Reply (#44)

Objecting that Indian Harbor ignores the seventeen petitions in the underlying litigation and points only to two short paragraphs for the last petitions in the two underlying suits, KB argues that Innovative is implicated by all seventeen.   It is named as a responsible subcontractor in the *SAHA* Sixth through Ninth Amended Petitions and in each of the nine *Arias* petitions.   KB also claims that it has provided the Court with numerous allegations of misconduct by Innovative and allegations seeking to hold both KB and Innovative liable.

Indian Harbor claims that there is no coverage for KB's sole negligence.   Disagreeing, KB responds that not only do allegations seek to hold KB liable for its subcontractors' work, but the Texas Supreme Court has held that an additional insuring carrier is liable to cover the sole negligence of its additional insured, specifically that a carrier has a separate and distinct obligation

-61-

to insure liability on the part of the additional insured. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 51 Tex. Sup. J. 1018, 256 S.W. 3d 660 (Tex. Sup. 2008).   In *Evanston*, a subcontractor, Triple S, contracted with the business owner, additional insured ATOFINA.   Triple S's policies also named ATOFINA as an additional insured.   One of Triple S's employees drowned at ATOFINA's refinery and ATOFINA, as an additional insured, requested coverage from Triple S's umbrella insurer, Evanston.   Evanston, who denied the request in part on the grounds that in its service contract with Triple S, ATOFINA disclaimed any right of indemnity for losses "attributable to [its] concurrent or sole negligence." Evanston claimed that the accident was caused solely by ATOFINA's negligence, so the death did not "respect . . . operations performed by [Triple S].   The Texas Supreme Court opined, "Generally, an event 'respects' operations if there exists 'a causal connection or relation' between the event and the operations; we do not require proximate cause or legal causation." The Court concluded, "Although the pleadings in the underlying suit do not indicate whether or not Jones was performing a Triple S operation at the precise time of the accident, Jones was present at ATOFINA's facility for the purpose of Triple S's operations when the accident occurred.   As a result, even if ATOFINA's negligence alone caused Jones's injury . . . the Evanston policy provides direct insurance coverage to ATOFINA."

Here, argues KB, Indian Harbor's additional insured endorsement broadly extends coverage to "all person or organization where required by written contract . . . with respect to liability arising out of your operations. . . ."  Even though KB does not allege that KB was solely negligent for the alleged defects, even if it were, KB was alleged to be liable for Innovative's operations, so the analysis in *Evanston* applies here.

Indian Harbor, *citing KB Home f/k/a Kaufman and Broad Home Corp. v. Employers Mutual Cas. Co.*, No. 2-06-383-CV, 2008 WL 281530 (Tex. App.--Fort Worth Jan. 31, 2008, no pet.), asserts that there are no claims of an "accident", that the negligence claim is a legal theory label only and does not constitute a covered factual claim, that the gravamen of the claims in the underlying action is fraud, and that KB ignores that all the alleged facts go to intentional acts by KB.  KB maintains that unlike in *Employers Mutual*, in which the court found that fraudulent conduct was the primary source of damages, KB insists in this case "the initial, primary and repeated claims are not of intentional conduct or fraud" and that the underlying plaintiffs have pleaded negligence throughout the underlying litigation.  Furthermore, as indicated earlier, SAHA dismissed its fraud and conspiracy claims on August 4, 2011, leaving only allegations sounding in negligence and breach of contract, while the *Arias* plaintiffs' Ninth Amended Petition dismisses intentional conduct claims and alleges only breach of

contract, breach of warranty, and negligence/vicarious liability. Moreover KB insists that the later-pled allegation of fraud in this case did not convert the original and consistent claims of negligence into intentional torts. Alternative allegations of intentional and even malicious conduct will not defeat the duty to defend if combined with allegations that would otherwise trigger a potential for coverage. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W. 3d 722, 729 (Tex. App.-Austin 2000).

**Indian Harbor's Reply (#65) to KB's Response (#27) and**

**Response to KB's Sur-Reply (#44)**

Citing *Ewing Constr. Co. v. Amerisure Ins. Co.*, 814 F. Supp. 2d 739 (S.D. Tex. 2011), which relied on *Gilbert*, 327 S.W. 3d 118, as correctly applying the contractual liability exclusion to preclude both breach of contract claims and negligence claims because the defective construction claims arose out of the subject of the contract, Indian Harbor points out that the Fifth Circuit confirmed the district court's application of the exclusion in construction cases like the instant action. *Id.*, *aff'd in part, vacated in part, and remanded*, ___ F.3d ___, No. 11-40512, 21012 WL 2161134 (5th Cir. June 15, 2012). It argues that the facts in *Ewing* are indistinguishable from those in this suit and also arise out of and are the subject of the construction contract. Thus they sound in contract, as the only allegations of negligence are based on the same factual allegations asserted for the breach of contract claim,

and the damage alleged was the result of KB's failure to perform its contract.  Moreover its "bald" allegation of negligence, by itself, is insufficient to escape the contractual liability exclusion. *Ewing,* 21012 WL 2161134 at *5 (plaintiff's use of the label of "negligence" is not dispositive; court must look at the "source of the liability and the nature of the plaintiff's loss. . . . When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.").  The damages are excluded by the contractual liability exclusion as there are no allegations except damage to the homes, all the subject matter of the contract.  Indian Harbor notes that KB argues that there is damage to personal property and goods, loss of revenue, etc., but KB, as an additional insured, is not insured for damages arising out of its own work but only for damages arising out of Innovative's work.  There is no factual allegation in the underlying petitions that Innovative's concrete work caused any resulting damage, or for that matter, that the sidewalks and concrete work caused any damage to anything at all.  An allegation that the concrete work did not comply with specifications is clearly excluded by the contractual liability exclusion.

### KB's Consolidated Response (#69)

The Court addresses only that part of #69 relating to the issue of Indian Harbor's duty to defend, which must be resolved in the

affirmative before the motion for summary judgment on the Texas Prompt Payment statute becomes a ripe viable dispute.

KB argues that *Ewing* does not apply to the facts in this action.  In *Ewing* the school district's petition alleged only property damage to the tennis courts and to nothing else.  The Fifth Circuit's holding in *Hardscape* also found that the Contract Liability exclusion was triggered because there was no damage to anything other than the subject of the contract and the exception was not triggered by the negligence causes of action because the claims were solely based on the contract.   In this action the underlying petitions contain repeated damage to property not involving the KB-Magi contract.   KB claims that the underlying petitions assert claims for diminution in value, loss of appreciation and appreciation potential, stigma damages, loss of closing costs, relocation costs, real estate commissions, and loss of profits, all outside the scope of the Contract Liability exclusion.   These also fall into the exception to the exclusion, "liability for damages that the insured would have in the absence of the contract or agreement."   KB further contends that the underlying claims assert that the named insured, Innovative, is also responsible for these extra-contractual categories of damages. Therefore even if KB is not an insured for liability arising out of its own work under the policy (which KB denies), Indian Harbor is

-66-

obligated to provide KC with a defense based on the allegations against Innovative.

Nor does *Ewing* hold that all damages in any way related to the failure to perform a contract are excluded

### Court's Decision

After reviewing the parties briefs and documentary submissions and the applicable law, the Court agrees with Indian Harbor that it is entitled to summary judgment that it owes KB no duty to defend with respect to the underlying lawsuits.

As noted above, the Court focuses only on the most recent petitions in the underlying suits as they supersede all earlier pleadings as a matter of law.

Where the petition in the underlying suit(s) alleges that the defendant(s) acted intentionally rather than negligently, the insurer does not have a duty to defend. *Huffhines*, 167 S.W. 3d at 501. In the most recent underlying pleadings, the intentional tort claims, i.e., committing various types of fraud, conspiracy and intent to deceive, are not the result of an accident and thus not an "occurrence"; thus there is no coverage for them under the CGL policy and Indian Harbor has no duty to defend KB against them. Regardless of whether the plaintiffs in the underlying suits labeled KB's claims as negligence, the gravamen of their factual allegations is that KB intentionally misrepresented and fraudulently concealed

KB's defective construction of the Mirasol homes; the facts alleged for all causes of action are the same.

Moreover, the Court agrees with Indian Harbor that the Additional Insured endorsement limits KB to coverage for liability arising out of Innovative's operations and the most recent petitions in the underlying suits allege no facts showing that the concrete work performed by Innovative was defective or caused any property damage to the Mirasol project homes so as to trigger the Additional Insured endorsement. *D.R. Horton-Texas,* 300 S.W. 3d at 778-81 (holding that the insurer has no duty to defend the additional insured because the underlying petition did not allege that the work of the named insured caused the damage). Merely a conclusory statement that there was property damage to the homes caused by the concrete work will not support a claim for coverage of an Additional Insured. "[W]e will not read facts into the petition . . . or imagine factual scenarios which might trigger coverage." *D.R. Horton-Texas*, 300 S.W. 3d at 778. "The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be." *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W. 2d 633, 636 (Tex. 1973).

Moreover, even if the property damage were the result of an occurrence, Indian Harbor demonstrates that two exclusions would bar coverage of the claims. First, coverage would be precluded by the

expected or intended injury because the underlying plaintiffs alleged that KB intended the deficiencies in quality of materials and construction and deliberately ignored the standards contained in rules, codes, regulations, and its contract, and built substandard housing in order to maximize its profits.  Second coverage would be excluded by the Contract Liability exclusion.  All the alleged construction deficiencies are deliberate failures by KB to satisfy its contractual obligations, and, contrary to KB's charges, the only damages alleged in the most recent underlying pleadings are to the subject of the contract, the Mirasol project houses.

As for Indian Harbor's duty to indemnify, which rests on facts actually established in the underlying lawsuits, the underlying lawsuits never went to trial but were settled.  *D.R. Horton-Texas*, 300 S.W. 3d at 744.  The Court finds to be premature any attempt to apply the narrow exception to the general rule that the underlying suit must be resolved before indemnification is justiciable, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons . . . negate any possibility that the insurer will ever have a duty to indemnify." *Griffin*, 955 S.W. 2d at 83-84; *D.R. Horton-Texas*, 300 S.W. 3d at 745 (the duty to indemnify generally is not justiciable until after the underlying lawsuit is resolved because coverage may turn on facts that are

-69-

proven even if those facts were not pled).   Although the Court has concluded that Indian Harbor had no duty to defend, as noted, the duty to defend and the duty to indemnify are independent, and there may be a duty to indemnify even where there is no duty to defend. *D.R. Horton-Texas*, 300 S.W. 3d at 744.   As in *Ewing Constr.*, 684 F.3d at 521, in which the Fifth Circuit opined that "the School District might prove in the underlying lawsuit that Ewing's performance damaged property other than the tennis courts, thus triggering tort liability and the exception to the contractual liability exclusion," and thus to some extent restore coverage, this Court cannot rule out the possibility that KB could prove that its actions toward the *Arias* and *Saha* plaintiffs below were not intentional but negligent or that some damage beyond that to the Mirasol project houses was effected.   Thus this Court cannot grant summary judgment as to Indian Harbor's duty to indemnify.

## ORDER

    For the reasons stated above, the Court

    ORDERS that Indian Harbor's motion for more definite statement (#51) is MOOT.

    The Court further

    ORDERS that Indian Harbor's motion for summary judgment on the duty to defend (#11) is GRANTED but DENIED as to the duty to indemnify, with the reverse ruling regarding KB's cross-motion for summary judgment (#27).   The Court further

ORDERS that the parties either to inform the Court within ten days that the current docket call date of September 21, 2012, with trial to follow within the following two weeks, is feasible or to request an amended schedule for a trial on the merits regarding Indian Harbor's duty to indemnify.[27]  Finally, the Court

ORDERS that KB's motion for summary judgment regarding application of the Texas Insurance Code § 542.051-.061 (#42) is DENIED as premature,[28] but may be summarily reurged if Indian Harbor is determined to have a duty to indemnify.

**SIGNED** at Houston, Texas, this _4th_ day of _September_, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[27] The Court notes that at one point in the briefing KB stated that it has not yet made a demand for indemnification from Indian Harbor.  The Court requests an update on the status of that claim.

[28] *Ewing* Constr., 684 F.3d at 522, *citing Progressive Mutual Ins. Co. v. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005)("There can be no liability under article 21.55 if the insurance claim is not covered by the policy.").